**DAVID M.C. PETERSON**
California Bar No. 254498
**KRIS J. KRAUS**
California State Bar No. 233699
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
david_peterson@fd.org

Attorneys for Mr. Mendez-Lagunas

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE WILLIAM Q. HAYES)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal No. 08CR1626-WQH |
| Plaintiff, ) ) | Date: June 30, 2008<br>Time: 2:00 p.m. |
| v. ) ) | NOTICE OF MOTIONS AND MOTIONS TO: |
| MARTIN MENDEZ-LAGUNAS, ) ) ) | 1) COMPEL DISCOVERY;<br>2) PRESERVE EVIDENCE;<br>2) GRANT LEAVE TO FILE |
| Defendant. ) ) | FURTHER MOTIONS. |

TO: KAREN P. HEWITT. UNITED STATES ATTORNEY; AND
STEWART YOUNG, ASSISTANT UNITED STATES ATTORNEY:

**PLEASE TAKE NOTICE** that on Monday, June 30, 2008, at 2:00 p.m., or as soon thereafter as counsel may be heard, the accused, Martin Mendez-Lagunas, by and through his attorneys, David M.C. Peterson, Kris J. Kraus, and Federal Defenders of San Diego, Inc., will ask this Court to enter an order granting the motions listed below.

**MOTIONS**

Martin Mendez-Lagunas, the accused in this case, by and through his attorneys, David M.C. Peterson, Kris K. Kraus, and Federal Defenders of San Diego, Inc., pursuant to the Fourth, Fifth and Sixth Amendments to the United States Constitution, Federal Rules of Criminal Procedure, Rules 8, 12, 14 and 16, and all other applicable statutes, case law and local rules, hereby moves this court for an order:

1)     to compel further discovery;

2)     to preserve evidence; and,

3)     to grant leave to file further motions.

These motions are based upon the instant motions and notice of motions, the attached statement of facts and memorandum of points and authorities, and any and all other materials that may come to this Court's attention at the time of the hearing on these motions.

                                              Respectfully submitted,

Dated: June 9, 2008                           */s/ David M.C. Peterson*
                                                David M.C. Peterson
                                                Federal Defenders of San Diego, Inc.
                                                Attorneys for Mr. Mendez-Lagunas
                                                david_peterson@fd.org

**DAVID M.C. PETERSON**
California Bar No. 254498
**KRIS J. KRAUS**
California State Bar No. 233699
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
david_peterson@fd.org
kris_kraus@fd.org

Attorneys for Mr. Martin Mendez-Lagunas

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE WILLIAM Q. HAYES)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal No. 08CR1626-WQH |
| Plaintiff, ) | Date: June 30, 2008 |
| v. ) | Time: 2:00 p.m. |
| MARTIN MENDEZ-LAGUNAS, ) | STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS |
| Defendant. ) | |

**I.**

**STATEMENT OF FACTS[1]**

On April 26, 2008, Border Patrol Agent Bottcher was conducting line watch duties approximately one-half mile west of the Calexico Port of Entry. At approximately 12:01 a.m., a Remote Video Surveillance System ("RVSS") operator advised Agent Bottcher and unknown other agents of four individuals suspected of being illegal immigrants that were attempting to gain illegal entry into the United States by swimming or wading north through a river flowing from the United States into the Republic of Mexico. Agent Bottcher responded to the location where the RVSS operators had seen the four individuals. Upon seeing the individuals in the river, Agent Bottcher asked the individuals to exit the river. Upon doing

---

[1] Unless otherwise stated, the "facts" referenced in these papers come from government-produced documents that the defense continues to investigate. Mr. Mendez-Lagunas does not admit the accuracy of this information and reserved the right to challenge it at any time.

so, Agent Bottcher interrogated them as to their citizenship and nationality. One of the four subjects, later identified as Mr. Mendez-Lagunas, allegedly stated that he was a citizen and national of Mexico and that he did not have any immigration documents to allow him to be in, remain, or work in the United States legally. Mr. Mendez-Lagunas was then arrested and transferred to the Calexico Border Patrol Station.

At the border patrol station, it was determined that Mr. Mendez had a criminal history. At 7:40 a.m., seven-and-one-half hours after his arrest, Mr. Mendez-Lagunas was told he was being criminally prosecuted, was allegedly read his Miranda rights and made inculpatory statements.

On May 21, 2008, the January 2007 Grand Jury returned a true bill of indictment charging Mr. Mendez-Lagunas with one count of 8 U.S.C. § 1326 - attempted entry into the United States following deportation.

## II.

## MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE

Mr. Mendez-Lagunas moves for the production of the following discovery. His request is not limited to those items that the prosecutor knows of; it includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

To date, defense counsel has received ***thirty-one*** pages of discovery. Mr. Mendez-Lagunas respectfully requests that the government be ordered to produce additional discovery because Mr. Mendez-Lagunas has reason to believe that he has not received all the discoverable material in his case. Mr. Mendez-Lagunas specifically requests production of a copy of the taped proceedings and any and all documents memorializing the deportation proceedings allegedly held, and any other proceedings that the government intends to rely upon at trial. This requests includes discovery of materials known to the government attorney, as well as discovery of materials which the government attorney may become aware of through the exercise of due diligence. See Fed.R.Crim.P. 16.

Mr. Mendez-Lagunas has also not received a full copy of his A-file. Mr. Mendez-Lagunas intends to file a request for his A-file with the National Records Center pursuant to the Freedom of Information Act, however, he fears that his request will not be processed until after the completion of his trial. Thus, Mr. Mendez-Lagunas requests the documents memorializing the alleged deportation proceedings and any other

1 proceedings that the government intends to rely upon at trial.

2 Mr. Mendez-Lagunas additionally requests that the Court order the government to allow him the opportunity to inspect the A-file in its entirety. First, the A-file contains documentation concerning his alleged deportation. Part of Mr. Mendez-Lagunas' defense may be that his underlying deportation was invalid. The documents in the A-file would help illuminate the validity or futility of such a defense. For example, the A-file documents typically contain biographical information. Such information is essential to determining whether the Mr. Mendez-Lagunas' deportation was invalid.

8 Second, the government will likely try to show at trial that a government officer searched the A-file and did not find an application by Mr. Mendez-Lagunas for permission to enter the United States. Mr. Mendez-Lagunas anticipates that the government will attempt to admit a "Certificate of Non-Existence of Record" against him, arguing that if Mr. Mendez-Lagunas had ever applied for permission to enter the United States, such an application would be found in the A-file, and that because such an application is not in the A-file, Mr. Mendez-Lagunas must not have applied for permission to enter the United States.

14 Although such a certificate might be admissible, the question of the thoroughness of the search of the A-file conducted by the government is, and should be, open to cross-examination. United States v. Sager, 227 F.3d 1138, 1145 (2000) (error not to allow jury to "grade the investigation"). Mr. Mendez-Lagunas should be able to review his A-file in order to see whether any application for lawful admission exists. Moreover, Mr. Mendez-Lagunas should also be able to verify whether other documents that would ordinarily be in the A-file are "non-existent," or otherwise missing from his A-file. Mr. Mendez-Lagunas may assert a defense that his application for lawful entry was lost or otherwise misplaced by the government. He must be allowed the opportunity to review his A-file and the manner in which it is being and has been maintained by the government in order to present his defense. To that end, accompanying this motion is a proposed order emailed directly to chambers, ordering that counsel for defendant Martin Mendez-Lagunas be granted the opportunity by the United States Attorney's Office for the Southern District of California to view, inspect and copy the A-File of Mr. Martin Mendez-Lagunas, at a time and place that is amenable to government counsel and the custodian of the A-file.

27 In addition, Mr. Mendez-Lagunas moves for production by the government of the following discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all

discoverable material listed below that is in the custody, control, care, or knowledge of <u>any government agency</u>. See generally <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995); <u>Bryan</u>, 868 F.2d 1032.

(1) <u>Mr. Mendez-Lagunas' Statements</u>. The government must disclose to the defendant <u>all</u> copies of any written or recorded statements made by Mr. Mendez-Lagunas; the substance of any statements made by him which the government intends to offer in evidence at trial -- either in its case-in-chief or in rebuttal; <u>see id.</u>, any response by the defendant to interrogation; the substance of any oral statements which the government intends to introduce at trial and any written summaries of the defendant's oral statements contained in the handwritten notes of the government agent; any response to any <u>Miranda</u> warnings which may have been given to the defendant, including all video or audio recordings, as well as rough notes that the agent may have taken at the time of defendant's interrogation (see <u>United States v. McElroy</u>, 697 F.2d 459 (2d Cir. 1982); as well as any other statements by the defendant. Fed. R. Crim. P. 16(a)(1)(A).[2] The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal <u>all</u> records containing reference to the defendant's statements, whether oral or written, regardless of whether the government intends to use those statements. <u>United States v. Noe</u>, 821 F.2d 604, 607 (11th Cir. 1987) (reversing conviction for failure to provide statements offered in rebuttal -- government's failure to disclose statements made by the defendant is a serious detriment to preparing trial and defending against criminal charges).

(2) <u>Arrest Reports and Notes</u>. The defendant also specifically requests that the government turn over all arrest reports, notes and TECS records that relate to the circumstances surrounding his arrest or any questioning. This request includes, but is not limited to, any rough notes, records, reports, transcripts, referral slips, or other documents in which statements of the defendant or any other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A) and <u>Brady v. Maryland</u>. The government must produce arrest reports, investigators' notes, memos from arresting officers, sworn statements, and prosecution reports pertaining to the defendant. *See* Fed. R. Crim. P. 16(a)(1)(B) and (C), 26.2 and 12(I); <u>United States v. Harris</u>, 543 F.2d 1247, 1253 (9th Cir. 1976) (original notes with suspect or witness must be preserved); <u>see also</u> <u>United States v. Anderson</u>, 813 F.2d 1450, 1458 (9th Cir. 1987)

---

[2] Of course, any of Mr. Mendez-Lagunas's statements which are exculpatory must be produced as well. See <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

1  (reaffirming Harris' holding). Preservation of contemporaneous notes is specifically requested, whether or
2  not the government deems them discoverable at this time. **In addition, Mr. Mendez-Lagunas requests**
3  **copies of all video-surveillance of the area on the date of the arrest, as well as the location of all**
4  **permanent remote surveillance devices. Further, Mr. Mendez-Lagunas requests the names of all**
5  **temporary remote surveillance operators stationed at or near the Calexico Port of Entry.**

6  Arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, audio/video
7  recordings, sworn statements, and prosecution reports pertaining to the defendant are available under
8  Fed.R.Crim.P. 16(a)(1)(B) and (C), Fed.R.Crim.P. 26.2 and 12(I). Preservation of rough notes is specifically
9  requested, whether or not the Government deems them discoverable at this time.

10  (3) Brady Material. Mr. Mendez-Lagunas requests all documents, statements, agents' reports, and
11  tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the
12  government's case. Kyles v. Whitley, 514 U.S. 419 (1995). Under Brady, Kyles and their progeny,
13  impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the
14  accused. See also United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).
15  This includes information obtained from other investigations which exculpates Mr. Mendez-Lagunas.

16  (4) Any Information That May Result in a Lower Sentence Under The Guidelines. The government
17  must produce this information under Brady v. Maryland, 373 U.S. 83 (1963).

18  (5) The Mr. Mendez-Lagunas' Prior Record. Mr. Mendez-Lagunas requests disclosure of his prior
19  record. Fed. R. Crim. P. 16(a)(1)(B).

20  (6) Any Proposed 404(b) Evidence. To the extent that there is any such evidence, the government
21  must produce evidence of prior similar acts under Fed. R. Evid. 404(b) and "shall provide reasonable notice
22  in advance of trial . . . of the general nature" of any evidence the government proposes to introduce under
23  Fed. R. Evid. 404(b) at trial. See United States v. Vega, 188 F. 3d 1150, 1154-1155 (9th Cir. 1999). Mr.
24  Mendez-Lagunas requests that such notice be given **at least four weeks before trial** in order to give the
25  defense time to adequately investigate and prepare for trial.

26  (7) Evidence Seized. The defendant requests production of evidence seized as a result of any
27  search, either warrantless or with a warrant. Fed. R. Crim. P. 16(a)(1)(C).

28  (8) Request for Preservation of Evidence. The defendant specifically requests the preservation of

1  any and all physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody,

2  or care of the government and which relates to the arrest or the events leading to the arrest in this case. This

3  request includes the contemporaneous, or "rough notes" of any arresting and interrogating officers.

4        (9) <u>Henthorn Material</u>.  In addition, Mr. Mendez-Lagunas requests that the Assistant United States

5  Attorney assigned to this case oversee a review of all personnel files of each agent involved in the present

6  case for impeachment material.  <u>Kyles</u>, 514 U.S. at 419; <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir.

7  1991); see also <u>United States v. Jennings</u>, 960 F.2d 1488 (9th Cir. 1992) (AUSA may not be ordered to

8  personally conduct examination of records; appropriate government agency may review files and notify

9  AUSA of contents as long as AUSA makes the determination regarding material to be disclosed); <u>United

10  States v. Herring</u>, 83 F.3d 1120 (9th Cir. 1996) (accord).  In addition, the defendant requests that if the

11  government is uncertain whether certain information is to be turned over pursuant to this request, that it

12  produce such information to the Court in advance of the trial and the motion hearing for an <u>in camera</u>

13  inspection.

14        (10) <u>Tangible Objects</u>.  The defendant requests the opportunity to copy as well as test, if necessary,

15  all documents and tangible objects, including photographs, books, papers, documents, fingerprint analyses,

16  vehicles, or copies of portions thereof, which are material to the defense or intended for use in the

17  government's case-in-chief or were obtained from or belong to the defendant.  Fed. R. Crim. P. 16(a)(1)(E).

18        (11) <u>Expert Witnesses</u>.  The defendant requests the name, qualifications, and a written summary of

19  the testimony of any person that the government intends to call as an expert witness during its case in chief.

20  Fed. R. Crim. P. 16(a)(1)(E).  The defense requests that notice of expert testimony be provided at a

21  minimum of two weeks prior to trial so that the defense can properly prepare to address and respond to this

22  testimony, including obtaining its own expert and/or investigating the opinions and credentials of the

23  government's expert.  The defense also requests a hearing in advance of trial to determine the admissibility

24  of qualifications of any expert.  See <u>Kumho v. Carmichael Tire Co.</u> 119 S. Ct. 1167, 1176 (1999) (trial

25  judge is "gatekeeper" and must determine reliability and relevancy of expert testimony and such

26  determinations may require "special briefing or other proceedings . . . .").

27        (12) <u>Evidence of Bias or Motive to Lie</u>.  The defendant requests any evidence that any prospective

28  government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or

1 her testimony.

2 (13) <u>Impeachment Evidence</u>. The defendant requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to the defendant. See Fed. R. Evid. 608, 609 and 613; <u>Brady v. Maryland</u>.

(14) <u>Evidence of Criminal Investigation of Any Government Witness</u>. The defendant requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

(15) <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling</u>. The defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.

(16) <u>Witness Addresses</u>. The defendant requests the name and last known address of each prospective government witness. See <u>United States v. Cook</u>, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense counsel has equal right to talk to witnesses). The defendant also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will not be called as a government witness. <u>United States v. Cadet</u>, 727 F.2d 1453 (9th Cir. 1984). **Specifically, Mr. Mendez-Lagunas requests the names and last known addresses of the percipient witnesses to the crime charged, to wit, the other three individuals who were arrested along with Mr. Mendez-Lagunas.**

(17) <u>Statements Relevant to the Defense</u>. The defendant requests disclosure of any statement relevant to any possible defense or contention that he might assert. <u>United States v. Bailleaux</u>, 685 F.2d 1105 (9th Cir. 1982). This includes all statements by percipient witnesses. This also includes **grand jury transcripts that are relevant to Mr. Mendez-Lagunas' motion to dismiss the indictment.**

(18) <u>Jencks Act Material</u>. The defendant requests production in advance of trial of all material, including any tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500; Fed. R. Crim. P. 26.2. Advance production will avoid the possibility of delay at the request of the defendant to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an accurate account

1  of the witness' interview is sufficient for the report or notes to qualify as a statement under section
2  3500(e)(1). Campbell v. United States, 373 U.S. 487, 490-92 (1963); see also United States v. Boshell, 952
3  F.2d 1101 (9th Cir. 1991) (holding that where an agent goes over interview notes with subject interview
4  notes are subject to Jencks Act).

5       (19) Giglio Information. Pursuant to Giglio v. United States, 405 U.S. 150 (1972), the defendant
6  requests all statements and/or promises, express or implied, made to any government witnesses, in exchange
7  for their testimony in this case, and all other information which could arguably be used for the impeachment
8  of any government witnesses.

9       (20) Agreements Between the Government and Witnesses. In this case, the defendant requests
10  identification of any cooperating witnesses who have committed crimes but were not charged so that they
11  may testify for the government in this case. The defendant also requests discovery regarding any express
12  or implicit promise; understanding; offer of immunity; past, present, or future compensation; or any other
13  kind of agreement or understanding, including any implicit understanding relating to criminal or civil income
14  tax, forfeiture or fine liability between any prospective government witness and the government (federal,
15  state and/or local). This request also includes any discussion with a potential witness about or advice
16  concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the
17  advice not followed.

18       Pursuant to United States v. Sudikoff, 36 F. Supp.2d 1196 (C.D. Cal. 1999), the defense requests
19  all statements made, either personally or through counsel, at any time which relate to the witnesses'
20  statements regarding this case, any promises -- implied or express -- regarding punishment/prosecution or
21  detention of these witnesses, any agreement sought, bargained for or requested, on the part of the witness
22  at any time.

23       (21) Informants and Cooperating Witnesses. To the extent that there was any informant, or any
24  other tip leading to a TECS hit in this case the defendant requests disclosure of the names and addresses of
25  all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any
26  informant who was a percipient witness in this case or otherwise participated in the crime charged against
27  Mr. Mendez-Lagunas. The government must disclose the informant's identity and location, as well as the
28  existence of any other percipient witness unknown or unknowable to the defense. Roviaro v. United States,

1  353 U.S. 53, 61-62 (1957). The government must disclose any information derived from informants which
2  exculpates or tends to exculpate the defendant.

3  (22) <u>Bias by Informants or Cooperating Witnesses</u>. The defendant requests disclosure of any
4  information indicating bias on the part of any informant or cooperating witness. <u>Giglio v. United States</u>.
5  Such information would include what, if any, inducements, favors, payments or threats were made to the
6  witness to secure cooperation with the authorities.

7  (23) <u>Personnel Records of Government Officers Involved in the Arrest</u>. Defendant requests all
8  citizen complaints and other related internal affairs documents involving any of the immigration officers or
9  other law enforcement officers who were involved in the investigation, arrest and interrogation of Defendant.
10 <u>See</u> <u>Pitchess v. Superior Court</u>, 11 Cal. 3d 531, 539 (1974). Because of the sensitive nature of these
11 documents, defense counsel will be unable to procure them from any other source.

12 (24) <u>Inspection and Copying of A-File</u>. **As discussed above, Mr. Mendez-Lagunas requests that**
13 **this court order the government to make all A-Files relevant to Mr. Mendez-Lagunas available for**
14 **inspection and copying.** Fed.R.Crim.P. 16(a)(1)(A), (B), (E).

15 (25) <u>Names of all percipient witnesses</u>. **Mr. Mendez-Lagunas requests the names of all**
16 **percipient witnesses to the arrest, including the other three individuals alleged to have been arrested**
17 **with Mr. Mendez-Lagunas.**

18 (26) <u>Residual Request</u>. Mr. Mendez-Lagunas intends by this discovery motion to invoke his rights
19 to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the
20 Constitution and laws of the United States. Mr. Mendez-Lagunas requests that the government provide his
21 attorney with the above requested material sufficiently in advance of trial to avoid unnecessary delay prior
22 to cross-examination.

23 **III.**

24 **THIS COURT SHOULD ORDER PRESERVATION OF EVIDENCE**

25 Mr. Mendez-Lagunas requests the preservation of all physical evidence in this case. This includes
26 any evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the
27 government (or its private contractors) in this case. <u>United States v. Riley</u>, 189 F.3d 802, 806-08 (9th Cir.
28 1999). This requests includes, but is not limited to: (1) the results of any fingerprint analysis; (2) Mr.

1  Mendez-Lagunas' personal effects; (3) the agents' rough notes; (4) any radio broadcast, if it is recorded; (5)
2  any video broadcast from the RVSS system; (6) any evidence seized from Mr. Mendez-Lagunas or any third
3  party.  This request also includes any material or percipient witnesses who might be deported or otherwise
4  likely to become unavailable (e.g. undocumented aliens and transients).
5      It is requested that the prosecutor be ordered to *question* all the agencies and individuals inovled in
6  the prosecution and investigation of this case to determine if such evidence exists, and if it does exist, to
7  inform those parties to preserve any such evidence.

## IV.

## MOTION TO GRANT LEAVE TO FILE FURTHER MOTIONS

10      Mr. Mendez-Lagunas and defense counsel have received **thirty-one pages** of discovery in this case.
11  As information surfaces due to the government providing discovery in response to these motions or an order
12  of this court, defense will find it necessary to file further motions, or to supplement existing motions with
13  additional facts.  Moreover, the defense has been investigating Mr. Mendez-Lagunas' alleged alienage, and
14  once all information is received, it is anticipated that further motions will be filed. Particularly, once the
15  government provides discovery, it might become necessary, upon provision of discovery, to file motions to
16  1) suppress statements, 2) dismiss the indictment due to misinstruction of the Grand Jury, 3) dismiss the
17  indictment for failure to allege the elements of 8 U.S.C. § 1326, and 4) a motion based upon 8 U.S.C.
18  § 1326(d).  Therefore, defense counsel requests the opportunity to file further motions based upon
19  information gained from discovery.

## IV.

## CONCLUSION

22      For the reasons stated above, Mr. Mendez-Lagunas moves this Court to grant his motions.

Respectfully submitted,

Dated:  June 9, 2008      */s/ DAVID M.C. PETERSON*
DAVID M.C. PETERSON
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Mendez-Lagunas
David_Peterson@fd.org

**CERTIFICATE OF SERVICE**

Counsel for Mr. Mendez-Lagunas certifies that the foregoing is true and accurate to the best information and belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

Courtesy Copy to Chambers

Copy to Assistant U.S. Attorney via ECF NEF

Copy to Defendant

Dated: June 9, 2008              /s/ DAVID M. C. PETERSON
                                 Federal Defenders of San Diego, Inc.
                                 225 Broadway, Suite 900
                                 San Diego, CA  92101-5030
                                 (619) 234-8467  (tel)
                                 (619) 687-2666  (fax)
                                 david_peterson@fd.org (email)