1  KAREN P. HEWITT
   United States Attorney
2  STEWART M. YOUNG
   Assistant U.S. Attorney
3  California State Bar No. 234889
   United States Attorney's Office
4  Federal Office Building
   880 Front Street, Room 6293
5  San Diego, California  92101-8893
   Telephone: (619) 557-6228
6
   Attorneys for Plaintiff
7  UNITED STATES OF AMERICA

8
                    UNITED STATES DISTRICT COURT
9
                 SOUTHERN DISTRICT OF CALIFORNIA
10

11 UNITED STATES OF AMERICA,          )   CRIMINAL CASE No. 3:08-CR-1626 WQH
                                      )
12                                    )   DATE:        June 30, 2008
                  Plaintiff,          )   TIME:        2:00 P.M.
13                                    )
                                      )   GOVERNMENT'S RESPONSE AND
14     v.                             )   OPPOSITION TO DEFENDANTS' MOTIONS
                                      )
15                                    )   [10-1] TO COMPEL DISCOVERY;
   MARTIN MENDEZ-LAGUNAS,             )   [10-2] TO PRESERVE EVIDENCE;
16                                    )   [10-3] FOR LEAVE TO FILE FURTHER
                  Defendant.          )   MOTIONS;
17                                    )   [11-1] TO SUPPRESS STATEMENTS; AND
                                      )   [11-2] TO DISMISS THE INDICTMENT DUE
18                                    )   TO MISINSTRUCTION OF THE GRAND
                                      )   JURY;
19                                    )
                                      )   TOGETHER WITH A STATEMENT OF THE
20 _____  )   FACTS AND THE MEMORANDUM OF
                                          POINTS AND AUTHORITIES, AND
21                                        GOVERNMENT'S MOTIONS FOR:

22                                        (1) RECIPROCAL DISCOVERY

23
           COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,
24
   KAREN P. HEWITT, United States Attorney, and Stewart M. Young, Assistant United States Attorney,
25
   hereby files its Response and Opposition to Defendant's Motion to Compel Discovery, Preserve
26
   Evidence, to Suppress Statements, to Dismiss the Indictment Due to Misinstruction of the Grand Jury,
27
   for Leave to File Further Motions, and its Motion for Reciprocal Discovery.  This response and motion
28
   is based upon the files and records of the case together with the attached statement of facts and

1  memorandum of points and authorities.

2                                                     I

3                                   **STATEMENT OF THE CASE**

4          On May 21, 2008, the Government filed a one-count indictment charging Martin Mendez-

5  Lagunas ("Defendant") with violating 8 U.S.C. § 1326(a) and (b), deported alien found in the United

6  States.  On May 22, 2008, Defendant was arraigned on the Indictment and entered a plea of not guilty.

7                                                    II

8                                    **STATEMENT OF FACTS**

9          On April 26, 2008, Border Patrol Agent Jeffrey Bottcher was performing linewatch duties

10  approximately ½ mile west of the Calexico Port of Entry.  At approximately 12:01 am, a Remote Video

11  Surveillance System (RVSS) operator advised agents that four persons were attempting to enter the

12  United States by swimming or wading north through the New River (the river flowing north from the

13  United States and Mexico border).

14         BPA Bottcher responded to the location identified by the RVSS operator.  He saw four persons

15  in the river and identified himself as a Border Patrol Agent.  After identifying himself, he requested the

16  four subjects exit the river.  He then conducted field interviews regarding citizenship and nationality.

17  One of the four subjects, later identified as the Defendant, stated he was a citizen and national of

18  Mexico, and further stated he did not have immigration documents allowing him to enter or remain in

19  the United States.  All four persons were arrested and transported to the Calexico Border Patrol Station

20  for processing.

21         On that day, from approximately 11:45 pm, to 3:00 am, on April 26, 2008, the Calexico Border

22  Patrol Station was experiencing technical difficulties with the Department of Homeland Security

23  IDENT/IAFIS database.  Accordingly, Border Patrol was unable to process Defendant, or determine his

24  identity (and criminal record) through fingerprint checks until after 3:00 am.  During this processing,

25  which included contacting the El Centro Border Patrol Station for a more in-depth criminal history check

26  (once his identity was determined through fingerprint processing), it was determined that Defendant had

27  been previously deported from the United States on at least one occasion, including February 25, 2003.

28

III

**GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION FOR DISCOVERY**

The United States intends to fully comply with its discovery obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Jenks Act, 18 U.S.C. § 3500, and Rule 16 of the Federal Rules of Criminal Procedure. Thus far, the United States has produced over 143 pages of discovery as well as tapes of the Defendant at Border Patrol processing. Government counsel has provided relevant copies of all discoverable documents in the defendant's A-File. Defendant's specific requests are addressed below.

**(1) The Defendant's Statements**

The United States recognizes its obligation under Rule 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and Defendant's written statements. The United States has produced all of Defendant's oral and written statements that are known to the undersigned Assistant U.S. Attorney at this date. If the United States discovers additional written or oral statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant.

The United States has no objection to the preservation of the handwritten notes taken by any of the United States' agents and officers. <u>See</u> <u>United States v. Harris</u>, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the United States objects to providing Defendant with a copy of any rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. <u>See</u> <u>United States v. Brown</u>, 303 F.3d 582, 590 (5th Cir. 2002); <u>United States v. Coe</u>, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The United States is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined under 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. <u>United States v. Spencer</u>, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute "statements" in accordance with the Jencks Act.

1  See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements

2  under the Jencks Act where notes were scattered and all the information contained in the notes was

3  available in other forms).  The notes are not Brady material because the notes do not present any material

4  exculpatory information, or any evidence favorable to Defendants that is material to guilt or punishment.

5  Brown, 303 F.3d at 595-96 (rough notes not Brady material because the notes were neither favorable to

6  the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71

7  (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient).

8  If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the

9  Jencks Act, or Brady, the notes in question will be provided to the Defendants.

10            **(2) Arrest Reports, Notes and Dispatch Tapes**

11            The United States has provided the Defendant with arrest reports.  As noted previously, agent

12  rough notes, if any exist, will be preserved, but they will not be provided as part of Rule 16 discovery.

13  The United States is unaware of any dispatch tapes regarding Defendant's apprehension, but has

14  requested the Border Patrol to preserve these if they do exist.  If the United States becomes aware of such

15  dispatch tapes, and those tapes fall under Rule 16 discovery obligations, the United States will provide

16  those tapes.  **Additionally, the United States will not provide the location of any permanent remote**

17  **surveillance devices.  Such a request is wholly outside of the scope of any discovery request, nor**

18  **is germane to the prosecution of Defendant.  Unless Defendant can articulate some relevant theory**

19  **under which this material is relevant to his defense, the United States opposes this request**

20  **outright.**

21            **(3) Brady Material**

22            The United States is well aware of, and will continue to perform, its duty under Brady v.

23  Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory

24  evidence within its possession that is material to the issue of guilt or punishment.  Defendant, however,

25  is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused,

26  or which pertains to the credibility of the United States' case.  As stated in United States v. Gardner, 611

27  F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to

28  disclose every bit of information that might affect the jury's decision; it need only disclose information

4                                            08-CR-1626 WQH

1   favorable to the defense that meets the appropriate standard of materiality." Id. at 774-775 (citation

2   omitted).

3       The United States will turn over evidence within its possession which could be used to properly

4   impeach a witness who has been called to testify.

5       Although the United States will provide conviction records, if any, which could be used to

6   impeach a witness, the United States is under no obligation to turn over the criminal records of all

7   witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such

8   information, disclosure need only extend to witnesses the United States intends to call in its case-in-

9   chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d

10  1305, 1309 (9th Cir. 1979).

11      Finally, the United States will continue to comply with its obligations pursuant to United States

12  v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

13  **(4) Sentencing Information**

14      Defendant claims that the United States must disclose any information affecting Defendant's

15  sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83

16  (1963). The United States respectfully contends that it has no such disclosure obligation under Brady.

17      The United States is not obligated under Brady to furnish a defendant with information which

18  he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of

19  disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the

20  defendant. In such case, the United States has not suppressed the evidence and consequently has no

21  Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

22      But even assuming Defendant does not already possess the information about factors which

23  might affect their guideline ranges, the United States would not be required to provide information

24  bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and

25  prior to his sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No

26  [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure

27  remains in value."). Additionally, the United States is unaware of any cooperation, or even attempted

28  cooperation, provided by Defendant. Accordingly, Defendant's demand for this information is

1  premature.

2      **(5) Defendant's Prior Record**

3      The United States will provide the Defendant with a copy of his criminal record in accordance

4  with Federal Rule of Criminal Procedure 16(a)(1)(B). In fact, the United States has already provided that

5  in its most recent discovery to Defendant.

6      **(6) Proposed 404(b) and 609 Evidence**

7      Should the United States seek to introduce any similar act evidence pursuant to Federal Rules

8  of Evidence 404(b) or 609, the United States will provide Defendant with official notice of its proposed

9  use of such evidence and information about such bad acts at the time the United States' trial

10 memorandum is filed.

11     **(7) Evidence Seized**

12     The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing

13 Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which

14 is within the possession, custody or control of the United States, and which is material to the preparation

15 of Defendant's defense or intended for use by the United States as evidence in chief at trial, or obtained

16 from or belongs to Defendant, including photographs.

17     The United States, however, need not produce rebuttal evidence in advance of trial.  United

18 States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

19     **(8) Preservation of Evidence**

20     The United States will preserve all evidence to which Defendant is entitled pursuant to the

21 relevant discovery rules.  However, the United States objects to any blanket request to preserve all

22 physical evidence.

23     The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing

24 Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which

25 is within his possession, custody or control of the United States, and which is material to the preparation

26 of Defendant's defense or intended for use by the United States as evidence in chief at trial, or obtained

27 from or belong to Defendant, including photographs.  The United States has made the evidence available

28 to Defendant and his investigators and will comply with any request for inspection.

**(9) Henthorn Evidence**

The United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991). To comply, the United States will request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

**(10) Tangible Objects**

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or intended for use by the United States as evidence during its case-in-chief at trial, or obtained from or belongs to Defendant. The United States need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**(11) Expert Witnesses**

The United States will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Federal Rules of Evidence 702, 703 or 705.

**(12) Evidence of Bias or Motive to Lie**

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

**(13) Impeachment Evidence**

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

7

1

### (14) Criminal Investigation of Government Witness

2      Defendant is not entitled to any evidence that a prospective witness is under criminal

3  investigation by federal, state, or local authorities. "[T]he criminal records of such [Government]

4  witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United

5  States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution

6  witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United States v. Rinn, 586

7  F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no

8  discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a defendant with the criminal records

9  of the Government's intended witnesses.") (citing Taylor, 542 F.2d at 1026).

10      The United States will, however, provide the conviction record, if any, which could be used to

11  impeach witnesses the United States intends to call in its case-in-chief.  When disclosing such

12  information, disclosure need only extend to witnesses the United States intends to call in its case-in-

13  chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d

14  1305, 1309 (9th Cir. 1979).

15  ### (15) Evidence Affecting Perception, Recollection, Communication or Truth-Telling

16      The United States is unaware of any evidence indicating that a prospective witness has a problem

17  with perception, recollection, communication, or truth-telling.

18  ### (16) Witness Addresses

19      The United States has provided Defendant with the reports containing the names of the agents

20  involved in the apprehension and interviews of Defendant.  A defendant in a non-capital case, however,

21  has no right to discover the identity of prospective Government witnesses prior to trial. See Weatherford

22  v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992)

23  (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United States v. Hicks, 103 F.23d 837,

24  841 (9th Cir. 1996).  Nevertheless, in its trial memorandum, the United States will provide Defendants

25  with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness

26  list is not required.  See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills,

27  810 F.2d 907, 910 (9th Cir. 1987).

28      The United States objects to any request that it provide a list of every witness to the crimes

1   charged who will not be called as a United States witness. "There is no statutory basis for granting such

2   broad requests," and a request for the names and addresses of witnesses who will not be called at trial

3   "far exceed[s] the parameters of Rule 16(a)(1)(C)." <u>United States v. Hsin-Yung</u>, 97 F. Supp.2d 24, 36

4   (D. D.C. 2000) (quoting <u>United States v. Boffa</u>, 513 F. Supp. 444, 502 (D. Del. 1980)). The United

5   States is not required to produce all possible information and evidence regarding any speculative defense

6   claimed by Defendants. <u>Wood v. Bartholomew</u>, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that

7   inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are

8   not subject to disclosure under <u>Brady</u>).

9        The United States will not provide the defendant with the witness addresses of the three persons

10   also caught with the defendant sneaking into the United States, unless the defendant can articulate a

11   theory under which such evidence will be relevant and germane to his defense. If the United States is

12   in possession of those addresses, the United States will then provide them to defendant. But, the United

13   States objects to a blanket request for such addresses as stated above.

14       **(17) Witnesses Favorable to the Defendant**

15        As stated earlier, the United States will continue to comply with its obligations under <u>Brady</u> and

16   its progeny. At the present time, the United States is not aware of any witnesses who have made an

17   arguably favorable statements concerning Defendant or who could not identify him or who were unsure

18   of his identity or participation in the crime charged.

19       **(18) Statements Relevant to the Defense**

20        To reiterate, the United States will comply with all of its discovery obligations. However, "the

21   prosecution does not have a constitutional duty to disclose every bit of information that might affect the

22   jury's decision; it need only disclose information favorable to the defense that meets the appropriate

23   standard of materiality." <u>Gardner</u>, 611 F.2d at 774-775 (citation omitted).

24       **(19) Jencks Act Material**

25        The Jencks Act, 18 U.S.C. § 3500, requires that, after a United States witness has testified on

26   direct examination, the United States must give the Defendant any "statement" (as defined by the Jencks

27   Act) in its possession that was made by the witness relating to the subject matter to which the witness

28   testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks Act is (1) a written statement made by

1    the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim,

2    contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the

3    witness before a grand jury. 18 U.S.C. § 3500(e).  If notes are read back to a witness to see whether or

4    not the government agent correctly understood what the witness was saying, that act constitutes

5    "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105

6    (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).  While the United States is

7    only required to produce all Jencks Act material after the witness testifies, the United States plans to

8    provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

9        Additionally, no witness who testified before the grand jury will testify at trial, so the United

10   States does not anticipate that it will have to provide any of the Grand Jury transcripts to Defendant.

11       **(20) Giglio Information**

12       As stated previously, the United States will comply with its obligations pursuant to Brady v.

13   Maryland, 373 U.S. 83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991),

14   and Giglio v. United States, 405 U.S. 150 (1972).

15       **(21) Agreements Between the Government and Witnesses**

16       The United States is unaware of any agreement between it and any cooperating witnesses, who

17   have committed crimes, but were not charged, so that they may testify for the Government in this case.

18   The United States will comply with all of its obligations under Brady, Giglio, Jencks Act, and Rule 16,

19   regarding any potential cooperating witness, including any of the material witnesses.  Again, at this time,

20   the United States is unaware of any agreement between any of these potential witnesses, but will provide

21   any relevant and pertinent information if such an agreement arises**.**

22       **(22) Informants and Cooperating Witnesses**

23       If the Government determines that there is a confidential informant whose identity is "relevant

24   and helpful to the defense of an accused, or is essential to a fair determination of a cause," it will disclose

25   that person's identity to the Court for in-chambers inspection. See Roviaro v. United States, 353 U.S.

26   53, 60-61 (1957); United States v. Ramirez-Rangel, 103 F.3d 1501, 1505 (9th Cir. 1997).

27       The United States has already stated it will comply with its Brady, Giglio, Jencks Act, and further

28   Rule 16 discovery obligations.  The United States will comply with the structure of Roviaro if it

determines that any confidential informant information is "relevant and helpful to the defense of [the] accused, or is essential to the fair determination of a cause." Roviaro, 353 U.S. at 60.

As the Court is aware, the Supreme Court has declined to adopt an absolute rule requiring disclosure of an informant's identity whenever it is relevant or helpful to a defendant's case. See Roviaro v. United States, 353 U.S. at 62. Indeed, as the D.C. Circuit stated in United States v. Skeens, 449 F.2d 1066, 1071 (D.C. Cir.1971), a "heavy burden ... rests on an accused to establish that the identity of an informant is necessary to his defense." Id. at 1070. "Mere speculation" that an informant's testimony may assist the defendant is not sufficient to meet this burden. United States v. Mangum, 100 F.3d 164, 172 (D.C. Cir.1996). In determining whether the Defendant has met this burden, the Court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense," all the while "taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Roviaro, 353 U.S. at 62. The United States will comply with its Rovario obligations, but it also requests that any information provided to the Defendants be subject to in camera review by the Court.

### (23) Bias by Informants or Cooperating Witnesses

As stated above, the United States is unaware of any evidence indicating that any prospective witness, whether Government agent, Informant, or Cooperating Witness, is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses, whether Government agent, Informant, or Cooperating Witness, have a motive to falsify or distort testimony. It will comply with its Giglio obligations if it becomes aware of any indication of bias on behalf of any of these witnesses.

### (24) Personnel Records

The United States will comply with its obligations under Henthorne. The United States objects to any further blanket request by the defendant absent a specific showing of necessity.

### (25) Inspection and Copying of the A-File

The United States has provided 112 pages from the A-File, which includes all documents in the A-File except DACS print-outs and attorney notes. The United States has complied with its obligations to provide all of the relevant A-File documents to the defendant. If the Court deems that an order for

1   an A-File viewing is warranted, the United States submits that defendant will be able to see exactly all

2   of the documents that it has turned over in discovery.

3       **(25) Residual Request**

4       The United States has already complied with Defendant's request for prompt compliance with

5   its discovery obligations prior to Indictment.  The United States will continue to comply with all of its

6   discovery obligations, but objects to the broad nature of Defendant's further discovery requests.

7                                       **IV**

8                   **NO OPPOSITION TO PRESERVATION OF THE EVIDENCE**

9       Defendant has requested that the Court issue an order to preserve the evidence.  The Government

10  does not oppose such a preservation order.

11                                      **V**

12              **DENY ANY MOTION TO SUPPRESS DEFENDANT'S STATEMENTS**

13      Defendant moves to suppress statements made by him to agents prior to his arrest and post-arrest.

14  It is important to note that defendant states that he made statements after arrest and then during an

15  interrogation.  It should be noted that the field statements occurred prior to defendant's arrest.

16      Furthermore, no required declaration has been filed to support either argument. Defendant also

17  requests an evidentiary hearing to establish the facts and to aid the Court in deciding his suppression

18  motion; however, he does not support his request with the required declaration.  Accordingly, the United

19  States believes that the requirements for such a suppression hearing have not been met.  If the Court

20  chooses to hold an evidentiary hearing on Defendant's motion at a future date, the United States would

21  prove that Defendant's statements were voluntary and are, therefore, admissible.

22      A. Field Statements

23      Defendant argues that his statements made prior to his arrest were made while in custody.  The

24  Ninth Circuit has not articulated a bright-line rule for determining when an investigatory stop constitutes

25  an arrest.  Courts are instructed to considered the totality of the circumstances and whether reasonable

26  people would conclude they were under arrest.  See United States v. Alvarez, 899 F.2d 833, 836 (9th Cir.

27  1990).  However, routine biographical questions have been found by the Supreme Court and the Ninth

28  Circuit to be insufficient to trigger constitutional protections.  See United States v. Brignoni-Ponce, 422

U.S. 873, 878-89 (1975); <u>United States v. Gonzalez-Sandoval</u>, 894 F.2d 1043, 1046 (9th Cir. 1990); <u>United States v. Perez</u>, 776 F.2d 797, 799 (9th Cir. 1985); <u>see also</u> <u>United States v. Galindo-Gallegos</u>, 244 F.3d 728, 731 (9th Cir.), <u>modified by</u> 255 F.3d 1154 (9th Cir. 2001).

Here, an agent came upon a group of four people swimming or wading through the New River north of the United States/Mexico border, and approximately ½ a mile from the Calexico Port of Entry. The entire group were wading in the New River. BPA Bottcher asked each person in the group as to their citizenship and whether they had documents allowing them to be present in the United States. The defendant stated that he was a citizen of Mexico and did not possess the requisite documents. All of this was manifestly proper procedure. Indeed, it would be improper for the agents to begin placing people under arrest before such a baseline inquiry was made. Therefore, Defendant's responses should be wholly admissible. <u>See</u> <u>Pennsylvania v. Muniz</u>, 496 U.S. 582, 601-04 (1990) (even if incriminating, answers elicited prior to <u>Miranda</u> warnings during procedures "necessarily attendant to the police procedure [are] held by the court to be legitimate" and admissible). Following discovery of the narcotics, agents timely advised Defendant that he was under arrest. Defendant was also timely advised of his <u>Miranda</u> warnings after his arrest. He further read through the <u>Miranda</u> warnings in Spanish, initialed each warning, and signed at the bottom in agreement of waiving his <u>Miranda</u> rights. Thus, all statements prior to Defendant's arrest are admissible; and this Court should deny the motion to suppress any statements made in the field or after his arrest.

B. Post-Arrest, the Government Properly Mirandized Defendant.

In this case, Miranda warnings preceded custodial interrogation of Defendant. When a person has been deprived of his or her freedom of action in a significant way, Government agents must administer Miranda warnings prior to questioning the person. Miranda v. Arizona, 384 U.S. 436 (1966). Such a requirement, however, has two components: (1) custody, and (2) interrogation. Id. at 477-78.

C. Defendant Waived His Miranda Rights and Agreed to Speak with Agents

No threats, physical intimidation, or psychological pressure was exerted by the agents to induce Defendant's statements. <u>Hutto v. Ross</u>, 429 U.S. 28, 30 (1976); <u>Townsend v. Sain</u>, 372 U.S. 293, 307 (1963). While the Government argues that Defendants' statements were not coerced or involuntarily provided and argues that any <u>Miranda</u> waiver was voluntary, the Government does not oppose an

evidentiary hearing conducted by the court on this issue.

According to Davis v. Washington, 512 U.S. 452, 458 (1994), and United States v. Younger, 398 F.3d 1179, 1187 (9th Cir. 2005), officers are free to question a suspect as long as he or she effectively waives the right to counsel.  In this case, defendant was asked whether he wanted to speak with agents after being read his Miranda rights.  Although he first received his administrative rights, he was then Mirandized and explained these rights.  Defendant waived his Miranda rights and agreed to speak to agents.

Defendant's post-arrest statements are admissible because, as demonstrated on the video recorded statement and the transcript, he knowingly, intelligently, and voluntarily waived his Miranda rights.  A statement made in response to custodial interrogation is admissible under Miranda v. Arizona, 384 U.S. 437 (1966) and 18 U.S.C. § 3501 if a preponderance of the evidence indicates that the statement was made after an advisement of rights, and was not elicited by improper coercion.  See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and Miranda determinations; valid waiver of Miranda rights should be found in the "absence of police overreaching").  Although the totality of circumstances, including characteristics of the defendant and details of the interview, should be considered, improper coercive activity must occur for suppression of any statement.  See id. (noting that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'"); cf. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973) ("Some of the factors taken into account have included the youth of the accused; his lack of education, or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep.") (citations omitted).  While it is possible for a defendant to be in such a poor mental or physical condition that they cannot rationally waive their rights (and misconduct can be inferred based on police knowledge of such condition, Connelly, 479 U.S. at 167-68), the condition must be so severe that the defendant was rendered utterly incapable of rational choice.  See United States v. Kelley, 953 F.2d 562, 564 (9th Cir.1992) (collecting cases rejecting claims of physical/mental impairment as insufficient to prevent exercise of rational choice).

Defendant argues that under United States v. San Juan Cruz, 314 F.3d 384 (9th Cir. 2002), any

1   statements that he made post-Miranda should be suppressed because he was first advised of his
2   administrative rights.  Again, a declaration by the defendant would be helpful at this juncture, because
3   the touchstone of this argument is whether the administrative rights reading, and then the subsequent
4   Miranda warning, were done in a manner that would be confusing or would be "clear and not susceptible
5   to equivocation."  Id. at 387.  Indeed, if the agents read the administrative rights to the defendant, placed
6   him in the holding cell, and then returned and brought him back out, to read him his Miranda rights, a
7   clear break would be noted between the two rights.  Additionally, it is unknown whether the agents
8   clearly identified that his administrative rights did not now apply, and that these were new and separate
9   rights in connection with a prosecution, given that defendant has not provided a copy of the transcript
10  to the Court (nor a declaration from the defendant that these agents did not inform him that his
11  administrative rights were void).  Accordingly, if the Court is inclined to consider this motion, the
12  United States would not oppose a evidentiary hearing on this issue, given the allegations of the
13  defendant.

14          Here, at least according to the DVD recording, Defendant was properly advised of his Miranda
15  rights following arrest.  Again, as demonstrated on the DVD recording, Defendant acknowledged that
16  he understood his rights and agreed to answer questions without the presence of an attorney.

17          C. No Violation of 18 U.S.C. §3501

18          As stated in the agent reports, the IDENT/IAFIS database in the Calexico Border Patrol Station
19  was experiencing technical difficulties from 11:45 pm until 3:00 am.  Accordingly, the Border Patrol
20  was unable to even begin processing persons apprehended after 11:45 pm until 3:00 pm.  Although
21  arrested around 12:10 am, the delay in processing, and a determination about whether Defendant was
22  eligible for prosecution under 8 U.S.C. § 1326, was due to the computer database not working until 3:00
23  am.  Given that Border Patrol then identified Defendant as eligible for 1326 prosecution (given his
24  criminal record), he received his Miranda warnings within six hours of the database being back up and
25  running at the Calexico Border Patrol Station.  The United States submits that these circumstances do
26  not violate 18 U.S.C. § 3501.

27

28

D. No Required Declaration Submitted by Defendant

Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. See United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer, . . . . the district court was not required to hold an evidentiary hearing"); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1. The local rule further provides that "the Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition."

No rights are infringed by the requirement of such a declaration. Requiring a declaration from a defendant in no way compromises defendant's constitutional rights, as declarations in support of a motion to suppress cannot be used by the United States at trial over a defendant's objection. See Batiste, 868 F.2d at 1092 (proper to require declaration in support of Fourth Amendment motion to suppress ); Moran-Garcia, 783 F. Supp. at 1271-74 (extending Batiste to Fifth Amendment motion to suppress). Moreover, Defendant has as much information as the Government in regards to the statements he made. See Batiste, 868 F.2d at 1092. At least in the context of motions to suppress statements, which require police misconduct incurred by Defendant while in custody, Defendant certainly should be able to provide the facts supporting the claim of misconduct. Finally, any objection that 18 U.S.C. § 3501 requires an evidentiary hearing in every case is of no merit. Section 3501 requires only that the Court make a pretrial determination of voluntariness "out of the presence of the jury." Nothing in section 3501 betrays any intent by Congress to alter the longstanding rule vesting the form of proof on matters for the court in the discretion of the court. Batiste, 868 F.2d at 1092 ("Whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court.") (citation and quotation marks omitted).

The Ninth Circuit has expressly stated that a United States proffer based on the statement of facts attached to the complaint is alone adequate to defeat a motion to suppress where the defense fails to adduce specific and material facts. See Batiste, 868 F.2d at 1092. Moreover, the Ninth Circuit has held

that a District Court may properly deny a request for an evidentiary hearing on a motion to suppress evidence because the defendant did not properly submit a declaration pursuant to a local rule.  See United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991); United States v. Howell, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."); see also United States v. Walczak, 783 F. 2d 852, 857 (9th Cir. 1986) (holding that evidentiary hearings on a motion to suppress are required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to whether contested issues of fact exist).  Even if Defendant provides factual allegations, the Court may still deny an evidentiary hearing if the grounds for suppression consist solely of conclusory allegations of illegality.  See United States v. Wilson, 7 F.3d 828, 834-35 (9th Cir. 1993) (District Court Judge Gordon Thompson did not abuse his discretion in denying a request for an evidentiary hearing where the appellant's declaration and points and authorities submitted in support of motion to suppress indicated no contested issues of fact).

As Defendant in this case has failed to provide declarations alleging specific and material facts, the Court would be within its discretion to deny Defendant's motion. Indeed, such a denial may properly be made based solely on the statement of facts attached to the complaint in this case, without any further showing by the United States.  Moreover, Defendant had an opportunity, in his moving papers, to proffer any facts alleging violations of his rights.  However, Defendant fails to generate a disputed factual issue requiring an evidentiary hearing.  See Howell, 231 F.3d at 623.

**IV**

**THE INDICTMENT SHOULD NOT BE DISMISSED BECAUSE THE GRAND JURY INSTRUCTIONS PROVIDED TO THE JANUARY 2007 GRAND JURY DO NOT RUN AFOUL OF CURRENT NINTH CIRCUIT LAW**

A.    THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND THE INDICTMENT SHOULD NOT BE DISMISSED

1.    Introduction

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by District Judge Larry A. Burns on January 10, 2007.  [Memorandum of Points and

Authorities, pp.8 (hereinafter "Memorandum")[1/]  Although recognizing that the Ninth Circuit in <u>United States v. Navarro-Vargas</u>, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found these two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the indictment should be dismissed.

In making his arguments concerning the grand jury instructions Defendant urges this Court to dismiss the indictment on two separate basis relating to grand jury procedures both of which were discussed in <u>United States v. Isgro</u>, 974 F.2d 1091 (9th Cir. 1992).   Concerning the first attacked instruction, Defendant urges this Court to dismiss the indictment by exercising its supervising powers over grand jury procedures.  [Memorandum p.22.]  This is a practice the Supreme Court discourages as Defendant acknowledges citing <u>United States v. Williams</u>, 504 U.S. 36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure. ").  [<u>Id.</u>]  <u>Isgro</u> reiterated:

> [A] district court may draw on its supervisory powers to dismiss an indictment. The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice." <u>Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct.</u>   Absent such prejudice-that is, absent " 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]"-a dismissal is not warranted.

974 F.2d at 1094 (Citation omitted, Emphasis added).  Concerning the second attacked instruction, in an attempt to dodge the holding in <u>Williams</u>, Defendant appears to base his contentions on the Constitution as a reason to dismiss the indictment.  Concerning that kind of a contention <u>Isgro</u> stated:

> [A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant." Constitutional error may also be found "if [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."

---

[1/]    Defendant supplies a "Partial Transcript" of the grand jury proceedings which records the instructions to the impaneled grand jurors after the voir dire had been conducted.  [Appendix 1.]  To amplify the record herein, we are supplying a redacted "Supplemental Transcript" which records relevant portions of the voir dire proceedings.  [Appendix 2.]

974 F.2d at 1094 (Citation omitted)[2/]

The portions of the two relevant instructions approved in <u>Navarro-Vargas</u> were:

You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal.   That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems.   It is entirely proper that you should receive this assistance.   If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury nullification.'"[3/]   408 F.3d at 1203 (Footnote omitted).   "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law;   it receives no briefs or arguments from the parties.   The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'"   <u>Id.</u>

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction the court stated:

We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution.   The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . . .   The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

---

[2/]      In <u>Isgro</u> the defendants choose the abrogation of constitutional rights route when asserting that prosecutors have a duty to present exculpatory evidence to grand juries.   They did not prevail.   974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to support the dismissal of the indictment."  (relying on <u>Williams</u>)).

[3/]      The Court acknowledged that as a matter of fact jury nullification does take place, and there is no way to control it.  "We recognize and do not discount that some grand jurors might <u>in fact</u> vote to return a no bill because they regard the law as unwise at best or even unconstitutional.   For all the reasons we have discussed, there is <u>no post hoc</u> remedy for that;   the grand jury's motives are not open to examination."  408 F.3d at 1204 (Emphasis in original.)

408 F.3d at 1207.  "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other."  Id.

2.     The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper

Concerning whether the new grand jurors should concern themselves with the wisdom of the criminal laws enacted by Congress, Judge Burns' full instruction stated:

> You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.
>
> But it's not for you to judge the wisdom of the criminal laws enacted by congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is criminal is not up to you.  That's a judgment that congress makes.
>
> And if you disagree with the judgment made by congress, then your option is not to say "Well I'm going to vote against indicting even though I think that the evidence is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient."  Instead, your obligation is to  contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.

Partial Transcript pp. 8-9.[4]

Defendant acknowledges that in line with Navarro-Vargas, 'Judge Bums instructed the grand jurors that they were forbidden 'from judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity [as] criminal is not up to you.'" [Memorandum p. 9.]  Defendant notes, however, that  "[t]he instructions go beyond that, however, and tell the grand jurors that, should 'you disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting even though I think that the evidence is sufficient' or 'I'm going to vote in favor of even though the evidence maybe insufficient.'" Id.  Defendant contends that this addition to the approved instruction, "flatly bars the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution."

---

[4]      The Supplemental Transcript supplied herewith (Appendix 1) recounts the excusing of the three individuals.  This transcript involves the voir dire portion of the grand jury selection process, and has been redacted,  to include redaction of the individual names, to provide only the relevant three incidents wherein prospective grand jurors were excused.  Specifically, the pages of the Supplemental Transcript supplied are: page 15, line 10 - page 17, line 18; page 24, line 14 - page 28, line 2; page 38, line 9 - page 44, line 17.

1   Id.  Defendant further contends that the flat prohibition was preemptively reinforced by Judge Burns

2   when he "referred to an instance in the grand juror selection process in which he excused three potential

3   jurors," which resulted in his "not only instruct[ing] the grand jurors on his view of their discretion; [but

4   his] enforc[ing] that view on pain of being excused from service as a grand juror."[5/] Id.

5       In concocting his theory of why Judge Burns erred, Defendant posits that the expanded

6   instruction renders irrelevant the debate about what the word "should" means. [Memorandum p. 16-20.]

7   Defendant contends, "the instruction flatly bars the grand jury from declining to indict because they

8   disagree with a proposed prosecution."  Id.  This argument mixes-up two of the holdings in Navarro-

9   Vargas in the hope they will blend into one.  They do not.

10      Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom of

11  the criminal laws.  The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted by

12  Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an

13  expression of discretion.  Jury nullification is forbidden although acknowledged as a sub rosa fact in

14  grand jury proceedings.  408 F.3d at 1204.  In this respect Judge Burns was absolutely within his rights,

15  and within the law, when he excused the three prospective grand jurors because of their expressed

16  inability to apply the laws passed by Congress.  Similarly, it was proper for him to remind the impaneled

17  grand jurors that they could not question the wisdom of the laws.  As we will establish this reminder did

18  not pressure the grand jurors to give up their discretion not to return an indictment.  Judge Burns' words

19  cannot be parsed to say that they flatly bars the grand jury from declining to indict because the grand

20  jurors disagree with a proposed prosecution because they do not say that.  That aspect of a grand jury's

21  discretionary power (i.e. disagreement with the prosecution) was dealt with in Navarro-Vargas in its

22  discussion of another instruction wherein the term "should" was germane.[6/]  408 F.3d at 1204-06

---

23

24  [5/]      See Appendix 1.

25  [6/]      That instruction is not at issue here.  It read as follows:

26      [Y]our task is to determine whether the government's evidence as presented to
    you is sufficient to cause you to conclude that there is probable cause to believe that the
    accused is guilty of the offense charged.  To put it another way, you should vote to indict
27  where the evidence presented to you is sufficiently strong to warrant a reasonable
    person's believing that the accused is probably guilty of the offense with which the
28  accused is charged.

("'Should' Indict if Probable Cause Is Found"). This other instruction bestows discretion on the grand jury not to indict.[7/]  In finding this instruction constitutional, the court stated in words that ring true here, "It is the grand jury's position in the constitutional scheme that gives it its independence, not any instructions that a court might offer." 408 F.3d at 1206. The other instruction was also given by Judge Burns in his own fashion as follows:

> The function of the grand jury, in federal court at least, is to determine probable cause. That's the simple formulation that I mentioned to a number of you during the jury selection process. Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that an whether a certain person is associated with the commission of that crime, committed it or helped commit it.

> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward. If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Partial Transcript pp. 3-4.

> Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime. Either they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.

> To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

Partial Transcript p. 23.

While the new grand jurors were told by Judge Burns that they could not question the wisdom of the criminal laws per Navarro-Vargas, they were also told by Judge Burns they had the discretion not

---

408 F.3d at 1187.

[7/]    The court upheld the instruction stating:

> This instruction does not violate the grand jury's independence. The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause. As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir.2002) (Per curiam)). "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment. 408 F.3d at 1206.

to return an indictment per <u>Navarro-Vargas</u>.  Further, if a potential grand juror could not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential jury nullification advocate.  <u>See</u>  <u>Merced v. McGrath</u>, 426 F.3d 1076, 1079-80 (9th Cir. 2005).  Thus, there was no error requiring dismissal of this indictment or any other indictment by this Court exercising its supervisory powers.

Further, a reading of the dialogues between Judge Burns and the three excused jurors found in the Supplemental Transcript excerpts (Appendix 2) reflects a measured, thoughtful, almost mutual decision, that those three individuals should not serve on the grand jury because of their views.  Judge Burns' reference back to those three colloquies cannot be construed as pressuring the impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their duties.

Finally, even if there was an error, Defendant has not demonstrated he was actually prejudiced thereby, a burden he has to bear. "Absent such prejudice-that is, absent  'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]'-a dismissal is not warranted." <u>Isgro</u>, 974 F.2d at 1094.

> 3.      The Addition to the "United States Attorney and his Assistant United States Attorneys" Instruction Did Not Violate the Constitution

Concerning the new grand jurors' relationship to the United States Attorney and the Assistant U.S. Attorneys, Judge Burns variously stated:

> [T]here's a close association between the grand jury and the U.S. Attorney's Office.
>  . . .
> You'll work closely with the U.S. Attorney's Office in your investigation of cases.

Partial Transcript p. 11

> [I]n my experience here in the over 20 years in this court, that kind of tension does not exist on a regular basis, that I can recall, between the U.S. Attorney and the grand juries. They generally work together.

Partial Transcript p. 12

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury.  You're all about probable cause.  If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well.  As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

23                                                       08-CR-1626 WQH

Partial Transcript p. 20.[8/]

> As a practical matter, you will work closely with government lawyers. The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters. It's entirely proper that you should receive the assistance from the government lawyers.

> But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone. If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

Partial Transcript pp. 26-27.

Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," Defendant proposes that by making that statement, "Judge Burns also assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause." [Memorandum p.22-24.] Defendant then ties this statement to the later instruction which "advis[ed] the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and ... they'll act in good faith in all matters presented to you.'" Id. From this lash-up Defendant contends:

> These instructions create a presumption that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:

> (1) I have to consider evidence that undercuts probable cause.

> (2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.

> (3) Because no such evidence was presented to me, I may conclude that there is none. Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

> The instructions therefore discourage investigation--if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be week

---

[8/]    Just prior to this instruction, Judge Burns had informed the grand jurors that:

[T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

08-CR-1626 WQH

1   [sic], but I know that there is nothing on the other side of the equation because it was not
2   presented. A grand jury so badly misguided is no grand jury at all under the Fifth
    Amendment.

3   [Memorandum p.23-24.] (Emphasis added.)[9/]

4   Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that
5   cuts against what they may be asking you to do if they're aware of that evidence," is directly contradicted
6   by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider
7   all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a
8   binding obligation to present it."[10/] (Emphasis added)). See also, United States v. Haynes, 216 F.3d 789,
9   798 (9th Cir. 2000) ("Finally, their challenge to the government's failure to introduce evidence
10  impugning Fairbanks's credibility lacks merit because prosecutors have no obligation to disclose
11  'substantial exculpatory evidence' to a grand jury." (citing Williams)) (Emphasis added).

12  However, the analysis does not stop there. Prior to assuming his judicial duties, Judge Burns was
13  a member of the United States Attorney's Office, and made appearances in front of the federal grand

---

18  [9/]    The term "presumption" is too strong a word in this setting. The term "inference" is more
19  appropriate. See McClean v. Moran, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive
    inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and
20  explains the difference between the three. 963 F.2d at 1308-09 (discussing Francis v. Franklin, 471 U.S.
    314 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Ulster County Court v. Allen, 442 U.S.
21  140, 157 & n. 16 (1979)). See also United States v. Warren, 25 F.3d 890, 897 (9th Cir.1994).

22  [10/]    Note that in Williams the Court established:

23      Respondent does not contend that the Fifth Amendment itself obliges the
        prosecutor to disclose substantial exculpatory evidence in his possession to the grand
24      jury. Instead, building on our statement that the federal courts "may, within limits,
        formulate procedural rules not specifically required by the Constitution or the Congress,"
25      he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts'
        "supervisory power."

26  504 U.S. at 45 (Citation omitted). The Court concluded, "we conclude that courts have no authority to
27  prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority
    over their own proceedings." 504 U.S. at 55. See also, United States v. Haynes, 216 F.3d 789, 797-98
28  (9th Cir. 2000). However, the Ninth Circuit in Isgro used Williams' holding that the supervisory powers
    would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms.
    974 F.2d at 1096.

jury.[11]/  As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual ("USAM").[12]/  Specifically, it appears he is aware of USAM Section 9-11.233 thereof which reads:

> In <u>United States v. Williams</u>, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the <u>policy</u> of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of <u>substantial evidence that directly negates the guilt</u> of a subject of the investigation, the prosecutor <u>must present or otherwise disclose</u> such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should <u>not result in dismissal of an indictment,</u> appellate courts <u>may refer violations of the policy to the Office of Professional Responsibility</u> for review.

(Emphasis added.)[13]/  This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose '<u>substantial evidence</u> that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, <u>see</u> USAM § 9-11.233 ." (Emphasis added.)[14]/

The facts that Judge Burns' statement contradicts <u>Williams</u>, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant. No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-imposed duty to the new grand jurors.  Simply stated, in the vast majority of the cases the reason the

---

[11]/     He recalled those days when instructing the new grand jurors. [Partial Transcript pp. 12, 14-16, 17-18.]

[12]/     The USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/usam/index.html

[13]/     See www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, because of the accessability of the USAM on the internet, as the District Judge overseeing the grand jury he certainly could determine the required duties of the United States Attorneys appearing before the grand jury from that source.

[14]/     See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm

Similarly, this new section does not bestow any procedural or substantive rights on defendants.

Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶ "E".  See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm

08-CR-1626 WQH

prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory evidence exists.[15/] If it does exist, as mandated by the USAM, the evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by an Office of Professional Responsibility investigation. Even if there is some nefarious slant to the grand jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there is none, the negative inference created thereby in the minds of the grand jurors is legitimate. In cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from its investigation or from submissions tendered by the defendant.[16/] There is nothing wrong in this scenario with a grand juror inferring from this state-of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution. In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992) the Ninth Circuit while reviewing Williams established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does not require dismissal of the indictment. 974 F.2d at 1096 ("Williams clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations."). That the USAM imposes a duty on

---

[15/]    Recall Judge Burns also told the grand jurors that:

[T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

[16/]    Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause]," Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no competent defense attorney is going to preview the defendant's defense story prior to trial assuming one will be presented to a fact-finder. Therefore, defense submissions to the grand jury will be few and far between.

1  United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant since

2  by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed

3  policy.[17]  Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was

4  unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast

5  an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or

6  any case.  The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates

7  Attorneys are "good guys," which was authorized by Navarro-Vargas.  408 F.3d at 1206-07 ("laudatory

8  comments . . . not vouching for the prosecutor").  But he also repeatedly "remind[ed] the grand jury that

9  it stands between the government and the accused and is independent,"  which was also required by

10  Navarro-Vargas.  408 F.3d at 1207.  In this context the unnecessary "duty-bound" statement does not

11  mean the instructions were constitutionally defective requiring dismissal of this indictment or any

12  indictment.

13  The "duty bound" statement constitutional contentions raised by Defendant do not indicate that

14  the "'structural protections of the grand jury have been so compromised as to render the proceedings

15  fundamentally unfair, allowing the presumption of prejudice' to the defendant," and "[the] defendant

16  can[not] show a history of prosecutorial misconduct that is so systematic and pervasive that it affects

17  the fundamental fairness of the proceeding or if the independence of the grand jury is substantially

18  infringed."  Isgro, 974 F.2d at 1094 (Citation omitted).  Therefore, this indictment, or any other

19  indictment, need not be dismissed.

20  Additionally, on October 11, 2007, Judge Moskowitz recently denied a similar motion presented

21  to him in United States v. Manuel Martinez-Covarrubias, Case 07-CR-491 BTM.  And on December

22  5, 2007, Judge Houston denied a similar motion presented to him in United States v. Diana Jimenez-

23  Bermudez, Case 07-1372 JAH.  The United States agrees with a substantial portion of the Judge

24  Moskowitz decision, and agrees with the Judge Houston decision.  While not authorities for this Court,

25  the United States believes the reasoning, especially of the Judge Houston decision, are persuasive and

26  attaches both orders as Attachment 3 and 4 for the Court's perusal.

27

28      [17]      The apparent irony is that although an Assistant U.S. Attorney will not lose a case for
failure to present exculpatory information to a grand jury per Williams, he or she could lose his or her
job with the United States Attorney's Office for such a failure per the USAM.

## VII

## NO OPPOSITION TO DEFENDANT'S REQUEST FOR LEAVE TO FILE FURTHER MOTIONS

The United States does not object to the granting of leave to allow Defendants to file further motions, as long as the order applies equally to both parties and additional motions are based on newly discovered evidence or discovery provided by the United States subsequent to the instant motion at issue.

## VIII

## MOTION FOR RECIPROCAL DISCOVERY

The United States hereby moves for reciprocal discovery from the Defendant. To date Defendant has not provided any. The United States, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, requests that Defendant permit the United States to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of Defendant and which Defendant intends to introduce as evidence in their case-in-chief at trial.

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of Defendant, which Defendant intend to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendants intend to call as a witness. Because the United States will comply with Defendant's request for delivery of reports of examinations, the United States is entitled to the items listed above under Rule 16(b)(1) of the Federal Rules of Criminal Procedure. The United States also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the United States receives the discovery to which it is entitled.

In addition, Rule 26.2 of the Federal Rules of Criminal Procedure requires the production of prior statements of all witnesses, except a statement made by Defendant. This rule thus provides for the reciprocal production of Jencks statements. The time frame established by the rule requires the statement to be provided after the witness has testified. To expedite trial proceedings, the United States hereby requests that Defendant be ordered to supply all prior statements of defense witnesses by a

1    reasonable date before trial to be set by the Court. Such an order should include any form in which these

2    statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes

3    and/or reports.

4 **IX**

5 **CONCLUSION**

6        For the above stated reasons, the United States respectfully submits its Response and Opposition

7    to Defendant's Motions for Discovery and to Suppress Defendant's Statements, and requests that its

8    Motion for Reciprocal Discovery be granted.

9        DATED: June 26, 2008

10                               Respectfully Submitted,

11                               KAREN P. HEWITT
                                   United States Attorney

12

13                               *s/Stewart M. Young*

14                               STEWART M. YOUNG
                              Assistant U.S. Attorney

15                               Email: stewart.young@usdoj.gov

16

17

18

19

20

21

22

23

24

25

26

27

28

30

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08-CR-1626 WQH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| MARTIN MENDEZ-LAGUNAS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

     I, Stewart M. Young, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

     I am not a party to the above-entitled action.  I have caused service of the United States' Response and Opposition to Defendant's Motions for Discovery and to Suppress Statements and its Motion for Reciprocal Discovery on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

     1. David M.C. Peterson, Esq.

     2. Kris Krause, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 26, 2008.

     s/ *Stewart M. Young*
     Stewart M. Young

# APPENDIX 1

1       UNITED STATES DISTRICT COURT

2      SOUTHERN DISTRICT OF CALIFORNIA

3

4

5

  IN RE:  THE IMPANELMENT    )

6                )

  OF GRAND JURY PANELS 07-1 AND  )

7                )

  07-2             )

8                )

                 )

9  _____)

10

11     BEFORE THE HONORABLE LARRY ALAN BURNS

12      UNITED STATES DISTRICT JUDGE

13

14    REPORTER'S PARTIAL TRANSCRIPT OF PROCEEDINGS

15      WEDNESDAY, JANUARY 11, 2007

16

17

18

19

20

21

  COURT REPORTER:       EVA OEMICK

22           OFFICIAL COURT REPORTER

              UNITED STATES COURTHOUSE

23           940 FRONT STREET, STE. 2190

              SAN DIEGO, CA 92101

24           TEL: (619) 615-3103

25

2

1    **SAN DIEGO, CALIFORNIA-WEDNESDAY, JANUARY 11, 2007-9:30 A.M.**

2           THE COURT:  LADIES AND GENTLEMEN, YOU HAVE BEEN

3    SELECTED TO SIT ON THE GRAND JURY.  IF YOU'LL STAND AND RAISE

4    YOUR RIGHT HAND, PLEASE.

5           MR. HAMRICK:  DO YOU, AND EACH OF YOU, SOLEMNLY

6    SWEAR OR AFFIRM THAT YOU SHALL DILIGENTLY INQUIRE INTO AND

7    MAKE TRUE PRESENTMENT OR INDICTMENT OF ALL MATTERS AND THINGS

8    AS SHALL BE GIVEN TO YOU IN CHARGE OR OTHERWISE COME TO YOUR

9    KNOWLEDGE TOUCHING YOUR GRAND JURY SERVICE; TO KEEP SECRET THE

10   COUNSEL OF THE UNITED STATES, YOUR FELLOWS AND YOURSELVES; NOT

11   TO PRESENT OR INDICT ANY PERSON THROUGH HATRED, MALICE OR ILL

12   WILL; NOR LEAVE ANY PERSON UNREPRESENTED OR UNINDICTED THROUGH

13   FEAR, FAVOR, OR AFFECTION, NOR FOR ANY REWARD, OR HOPE OR

14   PROMISE THEREOF; BUT IN ALL YOUR PRESENTMENTS AND INDICTMENTS

15   TO PRESENT THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE

16   TRUTH, TO THE BEST OF YOUR SKILL AND UNDERSTANDING?

17           IF SO, ANSWER, "I DO."

18           (ALL GRAND JURORS ANSWER AFFIRMATIVELY)

19           THE COURT:  ALL JURORS HAVE TAKEN THE OATH AND

20   ANSWERED AFFIRMATIVELY.

21           IF YOU'LL HAVE A SEAT.  WE ARE NEARLY COMPLETED WITH

22   THIS PROCESS.

23           I AM OBLIGATED BY THE CONVENTION OF THE COURT AND

24   THE LAW OF THE UNITED STATES TO GIVE YOU A FURTHER CHARGE

25   REGARDING YOUR RESPONSIBILITY AS GRAND JURORS.  THIS WILL

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

3

1    APPLY NOT ONLY TO THOSE WHO HAVE BEEN SWORN, BUT THE REST OF

2    YOU WHOSE NAMES HAVE NOT YET BEEN CALLED, YOU ARE GOING TO BE

3    PUT IN RESERVE FOR US.

4            AND IF DISABILITIES OCCUR -- I DON'T MEAN IN A

5    PHYSICAL SENSE, BUT PEOPLE MOVE OR SITUATIONS COME UP WHERE

6    SOME OF THE FOLKS THAT HAVE BEEN SWORN IN TODAY ARE RELIEVED,

7    YOU WILL BE CALLED AS REPLACEMENT GRAND JURORS.  SO THESE

8    INSTRUCTIONS APPLY TO ALL WHO ARE ASSEMBLED HERE TODAY.

9            NOW THAT YOU HAVE BEEN IMPANELED AND SWORN AS A

10   GRAND JURY, IT'S THE COURT'S RESPONSIBILITY TO INSTRUCT YOU ON

11   THE LAW WHICH GOVERNS YOUR ACTIONS AND YOUR DELIBERATIONS AS

12   GRAND JURORS.

13           THE FRAMERS OF OUR FEDERAL CONSTITUTION DETERMINED

14   AND DEEMED THE GRAND JURY SO IMPORTANT TO THE ADMINISTRATION

15   OF JUSTICE THAT THEY INCLUDED A PROVISION FOR THE GRAND JURY

16   IN OUR BILL OF RIGHTS.

17           AS I SAID BEFORE, THE 5TH AMENDMENT TO THE UNITED

18   STATES CONSTITUTION PROVIDES, IN PART, THAT NO PERSON SHALL BE

19   HELD TO ANSWER FOR A CAPITAL OR OTHERWISE INFAMOUS CRIME

20   WITHOUT ACTION BY THE GRAND JURY.

21           WHAT THAT MEANS IN A VERY REAL SENSE IS YOU'RE THE

22   BUFFER BETWEEN THE GOVERNMENT'S POWER TO CHARGE SOMEONE WITH A

23   CRIME AND THAT CASE GOING FORWARD OR NOT GOING FORWARD.

24           THE FUNCTION OF THE GRAND JURY, IN FEDERAL COURT AT

25   LEAST, IS TO DETERMINE PROBABLE CAUSE.  THAT'S THE SIMPLE

PDF created with pdfFactory trial version www.pdffactory.com

4

1    FORMULATION THAT I MENTIONED TO A NUMBER OF YOU DURING THE

2    JURY SELECTION PROCESS.  PROBABLE CAUSE IS JUST AN ANALYSIS OF

3    WHETHER A CRIME WAS COMMITTED AND THERE'S A REASONABLE BASIS

4    TO BELIEVE THAT AND WHETHER A CERTAIN PERSON IS ASSOCIATED

5    WITH THE COMMISSION OF THAT CRIME, COMMITTED IT OR HELPED

6    COMMIT IT.

7            IF THE ANSWER IS YES, THEN AS GRAND JURORS YOUR

8    FUNCTION IS TO FIND THAT THE PROBABLE CAUSE IS THERE, THAT THE

9    CASE HAS BEEN SUBSTANTIATED, AND IT SHOULD MOVE FORWARD.  IF

10   CONSCIENTIOUSLY, AFTER LISTENING TO THE EVIDENCE, YOU SAY "NO,

11   I CAN'T FORM A REASONABLE BELIEF EITHER THAT A CRIME WAS

12   COMMITTED OR THAT THIS PERSON HAS ANYTHING TO DO WITH IT, THEN

13   YOUR OBLIGATION, OF COURSE, WOULD BE TO DECLINE TO INDICT, TO

14   TURN THE CASE AWAY AND NOT HAVE IT GO FORWARD.

15           A GRAND JURY CONSISTS OF 23 MEMBERS OF THE COMMUNITY

16   DRAWN AT RANDOM.  I'VE USED THE TERM "INFAMOUS CRIME."  AN

17   INFAMOUS CRIME, UNDER OUR LAW, REFERS TO A SERIOUS CRIME WHICH

18   CAN BE PUNISHED BY IMPRISONMENT BY MORE THAN ONE YEAR.  THE

19   PROSECUTORS WILL PRESENT FELONY CASES TO THE GRAND JURY.

20   MISDEMEANORS, UNDER FEDERAL LAW, THEY HAVE DISCRETION TO

21   CHARGE ON THEIR OWN.  AND THEY'RE NOT -- THOSE CHARGES --

22   MISDEMEANORS AREN'T ENTITLED TO PRESENTMENT BEFORE A GRAND

23   JURY.

24           BUT ANY CASE THAT CARRIES A PENALTY OF A YEAR OR

25   MORE MUST BE PRESENTED TO -- ACTUALLY, MORE THAN A YEAR.  A

PDF created with pdfFactory trial version www.pdffactory.com

5

1    YEAR AND A DAY OR LONGER MUST BE PRESENTED TO A GRAND JURY.

2            THE PURPOSE OF THE GRAND JURY, AS I MENTIONED, IS TO

3    DETERMINE WHETHER THERE'S SUFFICIENT EVIDENCE TO JUSTIFY A

4    FORMAL ACCUSATION AGAINST A PERSON.

5            IF LAW ENFORCEMENT OFFICIALS -- AND I DON'T MEAN

6    THIS IN A DISPARAGING WAY.  BUT IF LAW ENFORCEMENT OFFICIALS,

7    INCLUDING AGENTS AS WELL AS THE FOLKS THAT STAFF THE U.S.

8    ATTORNEY'S OFFICE, WERE NOT REQUIRED TO SUBMIT CHARGES TO AN

9    IMPARTIAL GRAND JURY TO DETERMINE WHETHER THE EVIDENCE WAS

10   SUFFICIENT, THEN OFFICIALS IN OUR COUNTRY WOULD BE FREE TO

11   ARREST AND BRING ANYONE TO TRIAL NO MATTER HOW LITTLE EVIDENCE

12   EXISTED TO SUPPORT THE CHARGE.  WE DON'T WANT THAT.  WE DON'T

13   WANT THAT.

14           WE WANT THE BURDEN OF THE TRIAL TO BE JUSTIFIED BY

15   SUBSTANTIAL EVIDENCE, EVIDENCE THAT CONVINCES YOU OF PROBABLE

16   CAUSE TO BELIEVE THAT A CRIME PROBABLY OCCURRED AND THE PERSON

17   IS PROBABLY RESPONSIBLE.

18           NOW, AGAIN, I MAKE THE DISTINCTION YOU DON'T HAVE TO

19   VOTE ON ULTIMATE OUTCOMES.  THAT'S NOT UP TO YOU.  YOU CAN BE

20   ASSURED THAT IN EACH CASE, YOU INDICT THE PERSON WHO WILL BE

21   ENTITLED TO A FULL SET OF RIGHTS AND THAT THERE WILL BE A JURY

22   TRIAL IF THE PERSON ELECTS ONE.  THE JURY WILL HAVE TO PASS ON

23   THE ACCUSATION ONCE AGAIN USING A MUCH HIGHER STANDARD OF

24   PROOF, PROOF BEYOND A REASONABLE DOUBT.

25           AS MEMBERS OF THE GRAND JURY, YOU, IN A VERY REAL

PDF created with pdfFactory trial version www.pdffactory.com

6

1    SENSE, STAND BETWEEN THE GOVERNMENT AND THE ACCUSED.  IT'S

2    YOUR DUTY TO SEE THAT INDICTMENTS ARE RETURNED ONLY AGAINST

3    THOSE WHOM YOU FIND PROBABLE CAUSE TO BELIEVE ARE GUILTY AND

4    TO SEE TO IT THAT THE INNOCENT ARE NOT COMPELLED TO GO TO

5    TRIAL OR EVEN COMPELLED TO FACE AN ACCUSATION.

6           IF A MEMBER OF THE GRAND JURY IS RELATED BY BLOOD OR

7    MARRIAGE OR KNOWS OR SOCIALIZES TO SUCH AN EXTENT AS TO FIND

8    HIMSELF OR HERSELF IN A BIASED STATE OF MIND AS TO THE PERSON

9    UNDER INVESTIGATION OR ALTERNATIVELY YOU SHOULD FIND YOURSELF

10   BIASED FOR ANY REASON, THEN THAT PERSON SHOULD NOT PARTICIPATE

11   IN THE INVESTIGATION UNDER QUESTION OR RETURN THE

12   INDICTMENT.

13          ONE OF OUR GRAND JURORS, MS. GARFIELD, HAS RELATIVES

14   THAT -- OBVIOUSLY, MS. GARFIELD, IF YOUR SON OR YOUR HUSBAND

15   WAS EVER CALLED IN FRONT OF THE GRAND JURY, THAT WOULD BE A

16   CASE WHERE YOU WOULD SAY, "THIS IS JUST TOO CLOSE.  I'M GOING

17   TO RECUSE MYSELF FROM THIS PARTICULAR CASE.  NO ONE WOULD

18   IMAGINE THAT I COULD BE ABSOLUTELY IMPARTIAL WHEN IT COMES TO

19   MY OWN BLOOD RELATIVES."

20          SO THOSE ARE THE KINDS OF SITUATIONS THAT I REFER TO

21   WHEN I TALK ABOUT EXCUSING YOURSELF FROM A PARTICULAR GRAND

22   JURY DELIBERATION.  IF THAT HAPPENS, YOU SHOULD INDICATE TO

23   THE FOREPERSON OF THE GRAND JURY, WITHOUT GOING INTO DETAIL,

24   FOR WHATEVER REASON, THAT YOU WANT TO BE EXCUSED FROM GRAND

25   JURY DELIBERATIONS ON A PARTICULAR CASE OR CONSIDERATION OF A

PDF created with pdfFactory trial version www.pdffactory.com

7

1    PARTICULAR MATTER IN WHICH YOU FEEL YOU'RE BIASED OR YOU MAY

2    HAVE A CONFLICT.

3           THIS DOES NOT MEAN THAT IF YOU HAVE AN OPPORTUNITY,

4    YOU SHOULD NOT PARTICIPATE IN AN INVESTIGATION.  HOWEVER, IT

5    DOES MEAN THAT IF YOU HAVE A FIXED STATE OF MIND BEFORE YOU

6    HEAR EVIDENCE EITHER ON THE BASIS OF FRIENDSHIP OR BECAUSE YOU

7    HATE SOMEBODY OR HAVE SIMILAR MOTIVATION, THEN YOU SHOULD STEP

8    ASIDE AND NOT PARTICIPATE IN THAT PARTICULAR GRAND JURY

9    INVESTIGATION AND IN VOTING ON THE PROPOSED INDICTMENT.  THIS

10   IS WHAT I MEANT WHEN I TALKED TO YOU ABOUT BEING FAIR-MINDED.

11          ALTHOUGH THE GRAND JURY HAS EXTENSIVE POWERS,

12   THEY'RE LIMITED IN SOME IMPORTANT RESPECTS.

13          FIRST, THESE ARE THE LIMITATIONS ON YOUR SERVICE:

14   YOU CAN ONLY INVESTIGATE CONDUCT THAT VIOLATES THE FEDERAL

15   CRIMINAL LAWS.  THAT'S YOUR CHARGE AS FEDERAL GRAND JURORS, TO

16   LOOK AT VIOLATIONS OR SUSPECTED VIOLATIONS OF FEDERAL CRIMINAL

17   LAW.

18          YOU ARE A FEDERAL GRAND JURY, AND CRIMINAL ACTIVITY

19   WHICH VIOLATES STATE LAW, THE LAWS OF THE STATE OF CALIFORNIA,

20   IS OUTSIDE OF YOUR INQUIRY.  IT MAY HAPPEN AND FREQUENTLY DOES

21   HAPPEN THAT SOME OF THE CONDUCT THAT'S UNDER INVESTIGATION BY

22   THE FEDERAL GRAND JURY ALSO VIOLATES STATE LAW.  AND THIS IS

23   FINE.  THAT'S PROPER.  BUT THERE ALWAYS HAS TO BE SOME FEDERAL

24   CONNECTION TO WHAT IS UNDER INVESTIGATION OR YOU HAVE NO

25   JURISDICTION.

PDF created with pdfFactory trial version www.pdffactory.com

8

1          THERE'S ALSO A GEOGRAPHIC LIMITATION ON THE SCOPE OF

2    YOUR INQUIRIES AND THE EXERCISE OF YOUR POWERS.  YOU MAY

3    INQUIRE ONLY INTO FEDERAL OFFENSES COMMITTED IN OUR FEDERAL

4    DISTRICT, WHICH INCLUDES SAN DIEGO AND IMPERIAL COUNTIES; THAT

5    IS, THE SOUTHERN DISTRICT OF CALIFORNIA.

6          YOU MAY HAVE CASES THAT IMPLICATE ACTIVITIES IN

7    OTHER AREAS, OTHER DISTRICTS, AND THERE MAY BE SOME EVIDENCE

8    OF CRIMINAL ACTIVITY IN CONJUNCTION WITH WHAT GOES ON HERE

9    THAT'S ALSO HAPPENING ELSEWHERE.  THERE ALWAYS HAS TO BE A

10   CONNECTION TO OUR DISTRICT.

11         THROUGHOUT THE UNITED STATES, WE HAVE 93 DISTRICTS

12   NOW.  THE STATES ARE CUT UP LIKE PIECES OF PIE, AND EACH

13   DISTRICT IS SEPARATELY DENOMINATED, AND EACH DISTRICT HAS

14   RESPONSIBILITY FOR THEIR OWN COUNTIES AND GEOGRAPHY.  AND YOU,

15   TOO, ARE BOUND BY THAT LIMITATION.

16         I'VE GONE OVER THIS WITH A COUPLE OF PEOPLE.  YOU

17   UNDERSTOOD FROM THE QUESTIONS AND ANSWERS THAT A COUPLE OF

18   PEOPLE WERE EXCUSED, I THINK THREE IN THIS CASE, BECAUSE THEY

19   COULD NOT ADHERE TO THE PRINCIPLE THAT I'M ABOUT TO TELL YOU.

20         BUT IT'S NOT FOR YOU TO JUDGE THE WISDOM OF THE

21   CRIMINAL LAWS ENACTED BY CONGRESS; THAT IS, WHETHER OR NOT

22   THERE SHOULD BE A FEDERAL LAW OR SHOULD NOT BE A FEDERAL LAW

23   DESIGNATING CERTAIN ACTIVITY IS CRIMINAL IS NOT UP TO YOU.

24   THAT'S A JUDGMENT THAT CONGRESS MAKES.

25         AND IF YOU DISAGREE WITH THAT JUDGMENT MADE BY

PDF created with pdfFactory trial version www.pdffactory.com

9

1   CONGRESS, THEN YOUR OPTION IS NOT TO SAY "WELL, I'M GOING TO
2   VOTE AGAINST INDICTING EVEN THOUGH I THINK THAT THE EVIDENCE
3   IS SUFFICIENT" OR "I'M GOING TO VOTE IN FAVOR OF EVEN THOUGH
4   THE EVIDENCE MAY BE INSUFFICIENT."  INSTEAD, YOUR OBLIGATION
5   IS TO CONTACT YOUR CONGRESSMAN OR ADVOCATE FOR A CHANGE IN THE
6   LAWS, BUT NOT TO BRING YOUR PERSONAL DEFINITION OF WHAT THE
7   LAW OUGHT TO BE AND TRY TO IMPOSE THAT THROUGH APPLYING IT IN
8   A GRAND JURY SETTING.
9           FURTHERMORE, WHEN YOU'RE DECIDING WHETHER TO INDICT
10  OR NOT TO INDICT, YOU SHOULDN'T BE CONCERNED WITH PUNISHMENT
11  THAT ATTACHES TO THE CHARGE.  I THINK I ALSO ALLUDED TO THIS
12  IN THE CONVERSATION WITH ONE GENTLEMAN.  JUDGES ALONE
13  DETERMINE PUNISHMENT.  WE TELL TRIAL JURIES IN CRIMINAL CASES
14  THAT THEY'RE NOT TO BE CONCERNED WITH THE MATTER OF PUNISHMENT
15  EITHER.  YOUR OBLIGATION AT THE END OF THE DAY IS TO MAKE A
16  BUSINESS-LIKE DECISION ON FACTS AND APPLY THOSE FACTS TO THE
17  LAW AS IT'S EXPLAINED AND READ TO YOU.
18          THE CASES WHICH YOU'LL APPEAR WILL COME BEFORE YOU
19  IN VARIOUS WAYS.  FREQUENTLY, PEOPLE ARE ARRESTED DURING OR
20  SHORTLY AFTER THE COMMISSION OF AN ALLEGED CRIME.  AND THEN
21  THEY'RE TAKEN BEFORE A MAGISTRATE JUDGE, WHO HOLDS A
22  PRELIMINARY HEARING TO DETERMINE WHETHER INITIALLY THERE'S
23  PROBABLE CAUSE TO BELIEVE A PERSON'S COMMITTED A CRIME.
24          ONCE THE MAGISTRATE JUDGE FINDS PROBABLE CAUSE, HE
25  OR SHE WILL DIRECT THAT THE ACCUSED PERSON BE HELD FOR ACTION

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

10

1   BY THE GRAND JURY.  REMEMBER, UNDER OUR SYSTEM AND THE 5TH

2   AMENDMENT, TRIALS OF SERIOUS AND INFAMOUS CRIMES CAN ONLY

3   PROCEED WITH GRAND JURY ACTION.  SO THE DETERMINATION OF THE

4   MAGISTRATE JUDGE IS JUST TO HOLD THE PERSON UNTIL THE GRAND

5   JURY CAN ACT.  IT TAKES YOUR ACTION AS A GRAND JURY BEFORE THE

6   CASE CAN FORMALLY GO FORWARD.  IT'S AT THAT POINT THAT YOU'LL

7   BE CALLED UPON TO CONSIDER WHETHER AN INDICTMENT SHOULD BE

8   RETURNED IN A GIVEN CASE.

9          OTHER CASES MAY BE BROUGHT TO YOU BY THE UNITED

10  STATES ATTORNEY OR AN ASSISTANT UNITED STATES ATTORNEY BEFORE

11  AN ARREST IS MADE.  BUT DURING THE COURSE OF AN INVESTIGATION

12  OR AFTER AN INVESTIGATION HAS BEEN CONDUCTED, THERE'S TWO WAYS

13  THAT CASES GENERALLY ENTER THE CRIMINAL JUSTICE PROCESS:  THE

14  REACTIVE OFFENSES WHERE, AS THE NAME IMPLIES, THE POLICE REACT

15  TO A CRIME AND ARREST SOMEBODY.  AND THOSE CASES WILL THEN BE

16  SUBMITTED TO YOU AFTER MUCH OF THE FACTS ARE KNOWN.  AND THEN

17  THERE'S PROACTIVE CASES, CASES WHERE MAYBE THERE'S A SUSPICION

18  OR A HUNCH OF WRONGDOING.  THE FBI MAY BE CALLED UPON TO

19  INVESTIGATE OR SOME OTHER FEDERAL AGENCY, AND THEY MAY NEED

20  THE ASSISTANCE OF THE GRAND JURY IN FACILITATING THAT

21  INVESTIGATION.

22          THE GRAND JURY HAS BROAD INVESTIGATORY POWERS.  YOU

23  HAVE THE POWER TO ISSUE SUBPOENAS, FOR EXAMPLE, FOR RECORDS OR

24  FOR PEOPLE TO APPEAR.  SOMETIMES IT HAPPENS THAT PEOPLE SAY "I

25  DON'T HAVE TO TALK TO YOU" TO THE FBI, AND THEY REFUSE TO TALK

PDF created with pdfFactory trial version www.pdffactory.com

11

1    TO THE AUTHORITIES.  UNDER THOSE CIRCUMSTANCES, ON OCCASION,

2    THE FBI MAY GO TO THE U.S. ATTORNEY AND SAY, "LOOK, YOU NEED

3    TO FIND OUT WHAT HAPPENED HERE.  SUMMON THIS PERSON IN FRONT

4    OF THE GRAND JURY."  SO IT MAY BE THAT YOU'RE CALLED UPON TO

5    EVALUATE WHETHER A CRIME OCCURRED AND WHETHER THERE OUGHT TO

6    BE AN INDICTMENT.  YOU, IN A VERY REAL SENSE, ARE PART OF THE

7    INVESTIGATION.

8         IT MAY HAPPEN THAT DURING THE COURSE OF AN

9    INVESTIGATION INTO ONE CRIME, IT TURNS OUT THAT THERE IS

10   EVIDENCE OF A DIFFERENT CRIME THAT SURFACES.  YOU, AS GRAND

11   JURORS, HAVE A RIGHT TO PURSUE THE NEW CRIME THAT YOU

12   INVESTIGATE, EVEN CALLING NEW WITNESSES AND SEEKING OTHER

13   DOCUMENTS OR PAPERS OR EVIDENCE BE SUBPOENAED.

14        NOW, IN THAT REGARD, THERE'S A CLOSE ASSOCIATION

15   BETWEEN THE GRAND JURY AND THE U.S. ATTORNEY'S OFFICE AND THE

16   INVESTIGATIVE AGENCIES OF THE FEDERAL GOVERNMENT.  UNLIKE THE

17   U.S. ATTORNEY'S OFFICE OR THOSE INVESTIGATIVE AGENCIES, THE

18   GRAND JURY DOESN'T HAVE ANY POWER TO EMPLOY INVESTIGATORS OR

19   TO EXPEND FEDERAL FUNDS FOR INVESTIGATIVE PURPOSES.

20        INSTEAD, YOU MUST GO BACK TO THE U.S. ATTORNEY AND

21   ASK THAT THOSE THINGS BE DONE.  YOU'LL WORK CLOSELY WITH THE

22   U.S. ATTORNEY'S OFFICE IN YOUR INVESTIGATION OF CASES.  IF ONE

23   OR MORE GRAND JURORS WANT TO HEAR ADDITIONAL EVIDENCE ON A

24   CASE OR THINK THAT SOME ASPECT OF THE CASE OUGHT TO BE

25   PURSUED, YOU MAY MAKE THAT REQUEST TO THE U.S. ATTORNEY.

PDF created with pdfFactory trial version www.pdffactory.com

12

1        IF THE U.S. ATTORNEY REFUSES TO ASSIST YOU OR IF YOU

2   BELIEVE THAT THE U.S. ATTORNEY IS NOT ACTING IMPARTIALLY, THEN

3   YOU CAN TAKE THE MATTER UP WITH ME.  I'M THE ASSIGNED JURY

4   JUDGE, AND I WILL BE THE LIAISON WITH THE GRAND JURIES.

5        YOU CAN USE YOUR POWER TO INVESTIGATE EVEN OVER THE

6   ACTIVE OPPOSITION OF THE UNITED STATES ATTORNEY.  IF THE

7   MAJORITY OF YOU ON THE GRAND JURY THINK THAT A SUBJECT OUGHT

8   TO BE PURSUED AND THE U.S. ATTORNEY THINKS NOT, THEN YOUR

9   DECISION TRUMPS, AND YOU HAVE THE RIGHT TO HAVE THAT

10  INVESTIGATION PURSUED IF YOU BELIEVE IT'S NECESSARY TO DO SO

11  IN THE INTEREST OF JUSTICE.

12       I MENTION THESE THINGS TO YOU AS A THEORETICAL

13  POSSIBILITY.  THE TRUTH OF THE MATTER IS IN MY EXPERIENCE HERE

14  IN THE OVER 20 YEARS IN THIS COURT, THAT KIND OF TENSION DOES

15  NOT EXIST ON A REGULAR BASIS, THAT I CAN RECALL, BETWEEN THE

16  U.S. ATTORNEY AND GRAND JURIES.  THEY GENERALLY WORK TOGETHER.

17  THE U.S. ATTORNEY IS GENERALLY DEFERENTIAL TO THE GRAND JURY

18  AND WHAT THE GRAND JURY WANTS.

19       IT'S IMPORTANT TO KEEP IN MIND THAT YOU WILL AND DO

20  HAVE AN INVESTIGATORY FUNCTION AND THAT THAT FUNCTION IS

21  PARAMOUNT TO EVEN WHAT THE U.S. ATTORNEY MAY WANT YOU TO DO.

22       IF YOU, AS I SAID, BELIEVE THAT AN INVESTIGATION

23  OUGHT TO GO INTO OTHER AREAS BOTH IN TERMS OF SUBJECT MATTER,

24  BEING A FEDERAL CRIME, AND GEOGRAPHICALLY, THEN YOU AS A GROUP

25  CAN MAKE THAT DETERMINATION AND DIRECT THE INVESTIGATION THAT

PDF created with pdfFactory trial version www.pdffactory.com

13

1   WAY.

2           SINCE THE UNITED STATES ATTORNEY HAS THE DUTY OF

3   PROSECUTING PERSONS CHARGED WITH THE COMMISSION OF FEDERAL

4   CRIMES, SHE OR ONE OF HER ASSISTANTS -- BY THE WAY, THE U.S.

5   ATTORNEY IN OUR DISTRICT IS MS. CAROL LAM -- SHE OR ONE OF HER

6   ASSISTANTS WILL PRESENT THE MATTERS WHICH THE GOVERNMENT HAS

7   DESIRES TO HAVE YOU CONSIDER.  THE ATTORNEY WILL EDUCATE YOU

8   ON THE LAW THAT APPLIES BY READING THE LAW TO YOU OR POINTING

9   IT OUT, THE LAW THAT THE GOVERNMENT BELIEVES WAS VIOLATED.

10  THE ATTORNEY WILL SUBPOENA FOR TESTIMONY BEFORE YOU SUCH

11  WITNESSES AS THE LAWYER THINKS ARE IMPORTANT AND NECESSARY TO

12  ESTABLISH PROBABLE CAUSE AND ALLOW YOU TO DO YOUR FUNCTION,

13  AND ALSO ANY OTHER WITNESSES THAT YOU MAY REQUEST THE ATTORNEY

14  TO CALL IN RELATION TO THE SUBJECT MATTER UNDER INVESTIGATION.

15          REMEMBER THAT THE DIFFERENCE BETWEEN THE GRAND JURY

16  FUNCTION AND THAT OF THE TRIAL JURY IS THAT YOU ARE NOT

17  PRESIDING IN A FULL-BLOWN TRIAL.  IN MOST OF THE CASES THAT

18  YOU APPEAR, THE LAWYER FOR THE GOVERNMENT IS NOT GOING TO

19  BRING IN EVERYBODY THAT MIGHT BE BROUGHT IN AT THE TIME OF

20  TRIAL; THAT IS, EVERYBODY THAT HAS SOME RELEVANT EVIDENCE TO

21  OFFER.  THEY'RE NOT GOING TO BRING IN EVERYONE WHO CONCEIVABLY

22  COULD SAY SOMETHING THAT MIGHT BEAR ON THE OUTCOME.  THEY'RE

23  PROBABLY GOING TO BRING IN A LIMITED NUMBER OF WITNESSES JUST

24  TO ESTABLISH PROBABLE CAUSE.  OFTENTIMES, THEY PRESENT A

25  SKELETON CASE.  IT'S EFFICIENT.  IT'S ALL THAT'S NECESSARY.

PDF created with pdfFactory trial version www.pdffactory.com

1    IT SAVES TIME AND RESOURCES.

2         WHEN YOU ARE PRESENTED WITH A CASE, IT WILL TAKE 16

3    OF YOUR NUMBER OUT OF THE 23, 16 MEMBERS OF THE GRAND JURY OUT

4    OF THE 23, TO CONSTITUTE A QUORUM.  YOU CAN'T DO BUSINESS

5    UNLESS THERE'S AT LEAST 16 MEMBERS OF THE GRAND JURY PRESENT

6    FOR THE TRANSACTION OF ANY BUSINESS.  IF FEWER THAN 16 GRAND

7    JURORS ARE PRESENT EVEN FOR A MOMENT, THEN THE PROCEEDINGS OF

8    THE GRAND JURY MUST STOP.  YOU CAN NEVER OPERATE WITHOUT A

9    QUORUM OF AT LEAST 16 MEMBERS PRESENT.

10         NOW, THE EVIDENCE THAT YOU WILL HEAR NORMALLY WILL

11    CONSIST OF TESTIMONY OF WITNESSES AND WRITTEN DOCUMENTS.  YOU

12    MAY GET PHOTOGRAPHS.  THE WITNESSES WILL APPEAR IN FRONT OF

13    YOU SEPARATELY.  WHEN A WITNESS FIRST APPEARS BEFORE YOU, THE

14    GRAND JURY FOREPERSON WILL ADMINISTER AN OATH.  THE PERSON

15    MUST SWEAR OR AFFIRM TO TELL THE TRUTH.  AND AFTER THAT'S BEEN

16    ACCOMPLISHED, THE WITNESS WILL BE QUESTIONED.

17         ORDINARILY, THE U.S. ATTORNEY PRESIDING AT THE --

18    REPRESENTING THE U.S. GOVERNMENT AT THE GRAND JURY SESSION

19    WILL ASK THE QUESTIONS FIRST.  THEN THE FOREPERSON OF THE

20    GRAND JURY MAY ASK QUESTIONS, AND OTHER MEMBERS OF THE GRAND

21    JURY MAY ASK QUESTIONS, ALSO.

22         I USED TO APPEAR IN FRONT OF THE GRAND JURY.  I'LL

23    TELL YOU WHAT I WOULD DO IS FREQUENTLY I'D ASK THE QUESTIONS,

24    AND THEN I'D SEND THE WITNESS OUT AND ASK THE GRAND JURORS IF

25    THERE WERE ANY QUESTIONS THEY WANTED ME TO ASK.  AND THE

PDF created with pdfFactory trial version www.pdffactory.com

15

1    REASON I DID THAT IS THAT I HAD THE LEGAL TRAINING TO KNOW

2    WHAT WAS RELEVANT AND WHAT MIGHT BE PREJUDICIAL TO THE

3    DETERMINATION OF WHETHER THERE WAS PROBABLE CAUSE.

4         A LOT OF TIMES PEOPLE WILL SAY, "WELL, HAS THIS

5    PERSON EVER DONE IT BEFORE?"  AND WHILE THAT MAY BE A RELEVANT

6    QUESTION, ON THE ISSUE OF PROBABLE CAUSE, IT HAS TO BE

7    ASSESSED ON A CASE-BY-CASE BASIS.  IN OTHER WORDS, THE

8    EVIDENCE OF THIS OCCASION OF CRIME THAT'S ALLEGED MUST BE

9    ADEQUATE WITHOUT REGARD TO WHAT THE PERSON HAS DONE IN THE

10   PAST.  I WOULDN'T WANT THAT QUESTION ANSWERED UNTIL AFTER THE

11   GRAND JURY HAD MADE A DETERMINATION OF WHETHER THERE WAS

12   ENOUGH EVIDENCE.

13        SO WHEN I APPEARED IN FRONT OF THE GRAND JURY, I'D

14   TELL THEM "YOU'LL GET YOUR QUESTION ANSWERED, BUT I'D LIKE YOU

15   TO VOTE ON THE INDICTMENT FIRST.  I'D LIKE YOU TO DETERMINE

16   WHETHER THERE'S ENOUGH EVIDENCE BASED ON WHAT'S BEEN

17   PRESENTED, AND THEN WE'LL ANSWER IT."  I DIDN'T WANT TO

18   PREJUDICE THE GRAND JURY.  THERE MAY BE SIMILAR CONCERNS THAT

19   COME UP.  NOW, THE PRACTICES VARY AMONG THE ASSISTANT U.S.

20   ATTORNEYS THAT WILL APPEAR IN FRONT OF YOU.

21        ON OTHER OCCASIONS WHEN I DIDN'T THINK THERE WAS ANY

22   RISK THAT MIGHT PREJUDICE THE PROCESS, I WOULD ALLOW THE GRAND

23   JURY TO FOLLOW UP THEMSELVES AND ASK QUESTIONS.  A LOT OF

24   TIMES, THE FOLLOW-UPS ARE FACTUAL ON DETAILED MATTERS.  THAT

25   PRACTICE WILL VARY DEPENDING ON WHO IS REPRESENTING THE UNITED

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

16

1    STATES AND PRESENTING THE CASE TO YOU.  THE POINT IS YOU HAVE

2    THE RIGHT TO ASK ADDITIONAL QUESTIONS OR TO ASK THAT THOSE

3    QUESTIONS BE PUT TO THE WITNESS.

4          IN THE EVENT A WITNESS DOESN'T SPEAK OR UNDERSTAND

5    ENGLISH, THEN ANOTHER PERSON WILL BE BROUGHT INTO THE ROOM.

6    OBVIOUSLY, THAT WOULD BE AN INTERPRETER TO ALLOW YOU TO

7    UNDERSTAND THE ANSWERS.  WHEN WITNESSES DO APPEAR IN FRONT OF

8    THE GRAND JURY, THEY SHOULD BE TREATED COURTEOUSLY.  QUESTIONS

9    SHOULD BE PUT TO THEM IN AN ORDERLY FASHION.  THE QUESTIONS

10   SHOULD NOT BE HOSTILE.

11         IF YOU HAVE ANY DOUBT WHETHER IT'S PROPER TO ASK A

12   PARTICULAR QUESTION, THEN YOU CAN ASK THE U.S. ATTORNEY WHO'S

13   ASSISTING IN THE INVESTIGATION FOR ADVICE ON THE MATTER.  YOU

14   ALONE AS GRAND JURORS DECIDE HOW MANY WITNESSES YOU WANT TO

15   HEAR.  WITNESSES CAN BE SUBPOENAED FROM ANYWHERE IN THE

16   COUNTRY.  YOU HAVE NATIONAL JURISDICTION.

17         HOWEVER, PERSONS SHOULD NOT ORDINARILY BE SUBJECTED

18   TO DISRUPTION OF THEIR DAILY LIVES UNLESS THERE'S GOOD REASON.

19   THEY SHOULDN'T BE HARASSED OR ANNOYED OR INCONVENIENCED.

20   THAT'S NOT THE PURPOSE OF THE GRAND JURY HEARING, NOR SHOULD

21   PUBLIC FUNDS BE EXPENDED TO BRING WITNESSES UNLESS YOU BELIEVE

22   THAT THE WITNESSES CAN PROVIDE MEANINGFUL, RELEVANT EVIDENCE

23   WHICH WILL ASSIST IN YOUR DETERMINATIONS AND YOUR

24   INVESTIGATION.

25         ALL WITNESSES WHO ARE CALLED IN FRONT OF THE GRAND

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

17

1    JURY HAVE CERTAIN RIGHTS.  THESE INCLUDE, AMONG OTHERS, THE

2    RIGHT TO REFUSE TO ANSWER QUESTIONS ON THE GROUNDS THAT THE

3    ANSWER TO A QUESTION MIGHT INCRIMINATE THEM AND THE RIGHT TO

4    KNOW THAT ANYTHING THEY SAY MIGHT BE USED AGAINST THEM.

5            THE U.S. ATTORNEYS ARE CHARGED WITH THE OBLIGATION,

6    WHEN THEY'RE AWARE OF IT, OF ADVISING PEOPLE OF THIS RIGHT

7    BEFORE THEY QUESTION THEM.  BUT BEAR THAT IN MIND.

8            IF A WITNESS DOES EXERCISE THE RIGHT AGAINST

9    SELF-INCRIMINATION, THEN THE GRAND JURY SHOULD NOT HOLD THAT

10   AS ANY PREJUDICE OR BIAS AGAINST THAT WITNESS.  IT CAN PLAY NO

11   PART IN THE RETURN OF AN INDICTMENT AGAINST THE WITNESS.  IN

12   OTHER WORDS, THE MERE EXERCISE OF THE PRIVILEGE AGAINST

13   SELF-INCRIMINATION, WHICH ALL OF US HAVE AS UNITED STATES

14   RESIDENTS, SHOULD NOT FACTOR INTO YOUR DETERMINATION OF

15   WHETHER THERE'S PROBABLE CAUSE TO GO FORWARD IN THIS CASE.

16   YOU MUST RESPECT THAT DETERMINATION BY THE PERSON AND NOT USE

17   IT AGAINST THEM.

18           IT'S AN UNCOMMON SITUATION THAT YOU'LL FACE WHEN

19   SOMEBODY DOES CLAIM THE PRIVILEGE AGAINST SELF-INCRIMINATION.

20   THAT'S BECAUSE USUALLY AT THE TIME A PERSON IS SUBPOENAED, IF

21   THERE'S A PROSPECT THAT THEY'RE GOING TO CLAIM THE PRIVILEGE,

22   THE U.S. ATTORNEY IS PUT ON NOTICE OF THAT BEFOREHAND EITHER

23   BY THE PERSON HIMSELF OR HERSELF OR MAYBE A LAWYER

24   REPRESENTING THE PERSON.

25           IN MY EXPERIENCE, MOST OF THE TIME THE U.S. ATTORNEY

PDF created with pdfFactory trial version www.pdffactory.com

18

1    WILL NOT THEN CALL THE PERSON IN FRONT OF YOU BECAUSE IT WOULD

2    BE TO NO EFFECT TO CALL THEM AND HAVE THEM ASSERT THEIR 5TH

3    AMENDMENT PRIVILEGE.  BUT IT SOMETIMES DOES COME UP.  IT

4    SOMETIMES HAPPENS.  SOMETIMES THERE'S A QUESTION OF WHETHER

5    THE PERSON HAS A BONA FIDE PRIVILEGE AGAINST

6    SELF-INCRIMINATION.  THAT'S A MATTER FOR THE COURT TO

7    DETERMINE IN ANCILLARY PROCEEDINGS.  OR THE U.S. ATTORNEY MAY

8    BE UNAWARE OF A PERSON'S INCLINATION TO ASSERT THE 5TH.  SO IT

9    MAY COME UP IN FRONT OF YOU.  IT DOESN'T ALWAYS COME UP.

10           AS I MENTIONED TO YOU IN MY PRELIMINARY REMARKS,

11   WITNESSES ARE NOT PERMITTED TO HAVE A LAWYER WITH THEM IN THE

12   GRAND JURY ROOM.  THE LAW DOESN'T PERMIT A WITNESS SUMMONED

13   BEFORE THE GRAND JURY TO BRING THE LAWYER WITH THEM, ALTHOUGH

14   WITNESSES DO HAVE A RIGHT TO CONFER WITH THEIR LAWYERS DURING

15   THE COURSE OF GRAND JURY INVESTIGATION PROVIDED THE CONFERENCE

16   OCCURS OUTSIDE THE GRAND JURY ROOM.

17           YOU MAY FACE A SITUATION WHERE A WITNESS SAYS "I'D

18   LIKE TO TALK TO MY LAWYER BEFORE I ANSWER THAT QUESTION," IN

19   WHICH CASE THE PERSON WOULD LEAVE THE ROOM, CONSULT WITH THE

20   LAWYER, AND THEN COME BACK INTO THE ROOM WHERE FURTHER ACTION

21   WOULD TAKE PLACE.

22           APPEARANCES BEFORE A GRAND JURY SOMETIMES PRESENT

23   COMPLEX LEGAL PROBLEMS THAT REQUIRE THE ASSISTANCE OF LAWYERS.

24   YOU'RE NOT TO DRAW ANY ADVERSE INFERENCE IF A WITNESS DOES ASK

25   TO LEAVE THE ROOM TO SPEAK TO HIS LAWYER OR HER LAWYER AND

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

19

1   THEN LEAVES FOR THAT PURPOSE.

2            ORDINARILY, NEITHER THE ACCUSED OR ANY WITNESS ON

3   THE ACCUSED'S BEHALF WILL TESTIFY IN THE GRAND JURY SESSION.

4   BUT UPON THE REQUEST OF AN ACCUSED, PREFERABLY IN WRITING, YOU

5   MAY AFFORD THE ACCUSED AN OPPORTUNITY TO APPEAR IN FRONT OF

6   YOU.

7            AS I'VE SAID, THESE PROCEEDINGS TEND TO BE ONE-SIDED

8   NECESSARILY.  THE PROSECUTOR IS ASKING YOU TO RETURN AN

9   INDICTMENT TO A CRIMINAL CHARGE, AND THEY'LL MUSTER THE

10  EVIDENCE THAT THEY HAVE THAT THEY BELIEVE SUPPORTS PROBABLE

11  CAUSE AND PRESENT THAT TO YOU.  BECAUSE IT'S NOT A FULL-BLOWN

12  TRIAL, YOU'RE LIKELY IN MOST CASES NOT TO HEAR THE OTHER SIDE

13  OF THE STORY, IF THERE IS ANOTHER SIDE TO THE STORY.  THERE'S

14  NO PROVISION OF LAW THAT ALLOWS AN ACCUSED, FOR EXAMPLE, TO

15  CONTEST THE MATTER IN FRONT OF THE GRAND JURY.

16           IT MAY HAPPEN, AS I SAID, THAT AN ACCUSED MAY ASK TO

17  APPEAR IN FRONT OF YOU.  BECAUSE THE APPEARANCE OF SOMEONE

18  ACCUSED OF A CRIME MAY RAISE COMPLICATED LEGAL PROBLEMS, YOU

19  SHOULD SEEK THE U.S. ATTORNEY'S ADVICE AND COUNSEL, IF

20  NECESSARY, AND THAT OF THE COURT BEFORE ALLOWING THAT.

21           BEFORE ANY ACCUSED PERSON IS ALLOWED TO TESTIFY,

22  THEY MUST BE ADVISED OF THEIR RIGHTS, AND YOU SHOULD BE

23  COMPLETELY SATISFIED THAT THEY UNDERSTAND WHAT THEY'RE DOING.

24           YOU'RE NOT REQUIRED TO SUMMON WITNESSES WHICH AN

25  ACCUSED PERSON MAY WANT YOU TO HAVE EXAMINED UNLESS PROBABLE

PDF created with pdfFactory trial version www.pdffactory.com

20

1    CAUSE FOR AN INDICTMENT MAY BE EXPLAINED AWAY BY THE TESTIMONY

2    OF THOSE WITNESSES.

3           NOW, AGAIN, THIS EMPHASIZES THE DIFFERENCE BETWEEN

4    THE FUNCTION OF THE GRAND JURY AND THE TRIAL JURY.  YOU'RE ALL

5    ABOUT PROBABLE CAUSE.  IF YOU THINK THAT THERE'S EVIDENCE OUT

6    THERE THAT MIGHT CAUSE YOU TO SAY "WELL, I DON'T THINK

7    PROBABLE CAUSE EXISTS," THEN IT'S INCUMBENT UPON YOU TO HEAR

8    THAT EVIDENCE AS WELL.  AS I TOLD YOU, IN MOST INSTANCES, THE

9    U.S. ATTORNEYS ARE DUTY-BOUND TO PRESENT EVIDENCE THAT CUTS

10   AGAINST WHAT THEY MAY BE ASKING YOU TO DO IF THEY'RE AWARE OF

11   THAT EVIDENCE.

12          THE DETERMINATION OF WHETHER A WITNESS IS TELLING

13   THE TRUTH IS SOMETHING FOR YOU TO DECIDE.  NEITHER THE COURT

14   NOR THE PROSECUTORS NOR ANY OFFICERS OF THE COURT MAY MAKE

15   THAT DETERMINATION FOR YOU.  IT'S THE EXCLUSIVE PROVINCE OF

16   GRAND JURORS TO DETERMINE WHO IS CREDIBLE AND WHO MAY NOT BE.

17          FINALLY, LET ME TELL YOU THIS:  THERE'S ANOTHER

18   DIFFERENCE BETWEEN OUR GRAND JURY PROCEDURE HERE AND

19   PROCEDURES YOU MAY BE FAMILIAR WITH HAVING SERVED ON STATE

20   TRIAL JURIES OR FEDERAL TRIAL JURIES OR EVEN ON THE STATE

21   GRAND JURY; HEARSAY TESTIMONY, THAT IS, TESTIMONY AS TO FACTS

22   NOT PERSONALLY KNOWN BY THE WITNESS, BUT WHICH THE WITNESS HAS

23   BEEN TOLD OR RELATED BY OTHER PERSONS MAY BE DEEMED BY YOU

24   PERSUASIVE AND MAY PROVIDE A BASIS FOR RETURNING AN INDICTMENT

25   AGAINST AN ACCUSED.

PDF created with pdfFactory trial version www.pdffactory.com

21

1          WHAT I MEAN BY THAT IS IF IT'S A FULL-BLOWN TRIAL

2    WHERE THE RULES OF EVIDENCE APPLY -- AND ALL OF US ARE

3    FAMILIAR WITH THIS TERM "HEARSAY EVIDENCE."  GENERALLY, IT

4    FORBIDS SOMEBODY FROM REPEATING WHAT SOMEONE ELSE TOLD THEM

5    OUTSIDE OF COURT.  OH, THERE'S A MILLION EXCEPTIONS TO THE

6    HEARSAY RULE, BUT THAT'S THE GIST OF THE RULE.

7          USUALLY, WE INSIST ON THE SPEAKER OF THE WORDS TO

8    COME IN SO THAT WE CAN KNOW THE CONTEXT OF IT.  THAT RULE

9    DOESN'T APPLY IN THE GRAND JURY CONTEXT.  BECAUSE IT'S A

10   PRELIMINARY PROCEEDING, BECAUSE ULTIMATELY GUILT OR INNOCENCE

11   IS NOT BEING DETERMINED, THE EVIDENTIARY STANDARDS ARE

12   RELAXED.  THE PROSECUTORS ARE ENTITLED TO PUT ON HEARSAY

13   EVIDENCE.

14         HOW DOES THAT PLAY OUT IN REAL LIFE?  WELL, YOU'RE

15   GOING TO BE HEARING A LOT OF BORDER TYPE CASES.  IT DOESN'T

16   MAKE SENSE, IT'S NOT EFFICIENT, IT'S NOT COST-EFFECTIVE TO

17   PULL ALL OF OUR BORDER GUARDS OFF THE BORDER TO COME UP AND

18   TESTIFY.  WHO IS LEFT GUARDING THE BORDER, THEN?

19         WHAT THEY'VE DONE IN THE BORDER CASES IN PARTICULAR

20   IF THEY USUALLY HAVE A SUMMARY WITNESS; A WITNESS FROM, FOR

21   EXAMPLE, BORDER PATROL OR CUSTOMS WHO WILL TALK TO THE PEOPLE

22   OR READ THE REPORTS OF THE PEOPLE WHO ACTUALLY MADE THE

23   ARREST.  THAT PERSON WILL COME IN AND TESTIFY ABOUT WHAT

24   HAPPENED.  THE PERSON WON'T HAVE FIRST-HAND KNOWLEDGE, BUT

25   THEY'LL BE RELIABLY INFORMED BY THE PERSON WITH FIRST-HAND

PDF created with pdfFactory trial version www.pdffactory.com

22

1    KNOWLEDGE OF WHAT OCCURRED, AND THEY'LL BE THE WITNESS BEFORE

2    THE GRAND JURY.

3            YOU SHOULD EXPECT AND COUNT ON THE FACT THAT YOU'RE

4    GOING TO HEAR EVIDENCE IN THE FORM OF HEARSAY THAT WOULD NOT

5    BE ADMISSIBLE IF THE CASE GOES FORWARD TO TRIAL, BUT IS

6    ADMISSIBLE AT THE GRAND JURY STAGE.

7            AFTER YOU'VE HEARD ALL OF THE EVIDENCE THAT THE U.S.

8    ATTORNEY INTENDS TO PRESENT OR THAT YOU WANT TO HEAR IN A

9    PARTICULAR MATTER, YOU'RE THEN CHARGED WITH THE OBLIGATION OF

10   DELIBERATING TO DETERMINE WHETHER THE ACCUSED PERSON OUGHT TO

11   BE INDICTED.  NO ONE OTHER THAN YOUR OWN MEMBERS, THE MEMBERS

12   OF THE GRAND JURY, IS TO BE PRESENT IN THE GRAND JURY ROOM

13   WHILE YOU'RE DELIBERATING.

14           WHAT THAT MEANS IS THE COURT REPORTER, THE ASSISTANT

15   U.S. ATTORNEY, ANYONE ELSE, THE INTERPRETER WHO MAY HAVE BEEN

16   PRESENT TO INTERPRET FOR A WITNESS, MUST GO OUT OF THE ROOM,

17   AND THE PROCEEDING MUST GO FORWARD WITH ONLY GRAND JURORS

18   PRESENT DURING THE DELIBERATION AND VOTING ON AN INDICTMENT.

19           YOU HEARD ME EXPLAIN EARLIER THAT AT VARIOUS TIMES

20   DURING THE PRESENTATION OF MATTERS BEFORE YOU, OTHER PEOPLE

21   MAY BE PRESENT IN THE GRAND JURY.  THIS IS PERFECTLY

22   ACCEPTABLE.  THE RULE THAT I HAVE JUST READ TO YOU ABOUT YOUR

23   PRESENCE ALONE IN THE GRAND JURY ROOM APPLIES ONLY DURING

24   DELIBERATION AND VOTING ON INDICTMENTS.

25           TO RETURN AN INDICTMENT CHARGING SOMEONE WITH AN

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

23

1    OFFENSE, IT'S NOT NECESSARY, AS I MENTIONED MANY TIMES, THAT

2    YOU FIND PROOF BEYOND A REASONABLE DOUBT.  THAT'S THE TRIAL

3    STANDARD, NOT THE GRAND JURY STANDARD.  YOUR TASK IS TO

4    DETERMINE WHETHER THE GOVERNMENT'S EVIDENCE, AS PRESENTED TO

5    YOU, IS SUFFICIENT TO CONCLUDE THAT THERE'S PROBABLE CAUSE TO

6    BELIEVE THAT THE ACCUSED IS GUILTY OF THE PROPOSED OR CHARGED

7    OFFENSE.

8              I EXPLAINED TO YOU WHAT THAT STANDARD MEANS.  LET

9    ME, AT THE RISK OF BORING YOU, TELL YOU ONE MORE TIME.

10             PROBABLE CAUSE MEANS THAT YOU HAVE AN HONESTLY HELD

11   CONSCIENTIOUS BELIEF AND THAT THE BELIEF IS REASONABLE THAT A

12   FEDERAL CRIME WAS COMMITTED AND THAT THE PERSON TO BE INDICTED

13   WAS SOMEHOW ASSOCIATED WITH THE COMMISSION OF THAT CRIME.

14   EITHER THEY COMMITTED IT THEMSELVES OR THEY HELPED SOMEONE

15   COMMIT IT OR THEY WERE PART OF A CONSPIRACY, AN ILLEGAL

16   AGREEMENT, TO COMMIT THAT CRIME.

17             TO PUT IT ANOTHER WAY, YOU SHOULD VOTE TO INDICT

18   WHEN THE EVIDENCE PRESENTED TO YOU IS SUFFICIENTLY STRONG TO

19   WARRANT A REASONABLE PERSON TO BELIEVE THAT THE ACCUSED IS

20   PROBABLY GUILTY OF THE OFFENSE WHICH IS PROPOSED.

21             EACH GRAND JUROR HAS THE RIGHT TO EXPRESS VIEWS ON

22   THE MATTER UNDER CONSIDERATION.  AND ONLY AFTER ALL GRAND

23   JURORS HAVE BEEN GIVEN A FULL OPPORTUNITY TO BE HEARD SHOULD

24   YOU VOTE ON THE MATTER BEFORE YOU.  YOU MAY DECIDE AFTER

25   DELIBERATION AMONG YOURSELVES THAT YOU NEED MORE EVIDENCE,

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

24

1  THAT MORE EVIDENCE SHOULD BE CONSIDERED BEFORE A VOTE IS

2  TAKEN.  IN SUCH CASES, THE U.S ATTORNEY OR THE ASSISTANT U.S.

3  ATTORNEY CAN BE DIRECTED TO SUBPOENA ADDITIONAL DOCUMENTS OR

4  WITNESSES FOR YOU TO CONSIDER IN ORDER TO MAKE YOUR

5  DETERMINATION.

6       WHEN YOU'VE DECIDED TO VOTE, THE FOREPERSON SHOULD

7  KEEP A RECORD OF THE VOTE.  THAT RECORD SHOULD BE FILED WITH

8  THE CLERK OF THE COURT.  THE RECORD DOESN'T INCLUDE THE NAMES

9  OF THE JURORS OR HOW THEY VOTED, BUT ONLY THE NUMBER OF VOTES

10  FOR THE INDICTMENT.  SO IT'S AN ANONYMOUS VOTE.  YOU'LL KNOW

11  AMONG YOURSELVES WHO VOTED WHICH WAY, BUT THAT INFORMATION

12  DOES NOT GET CAPTURED OR RECORDED, JUST THE NUMBER OF PEOPLE

13  VOTING FOR INDICTMENT.

14       IF 12 OR MORE MEMBERS OF THE GRAND JURY AFTER

15  DELIBERATION BELIEVE THAT AN INDICTMENT IS WARRANTED, THEN

16  YOU'LL REQUEST THE UNITED STATES ATTORNEY TO PREPARE A FORMAL

17  WRITTEN INDICTMENT IF ONE'S NOT ALREADY BEEN PREPARED AND

18  PRESENTED TO YOU.  IN MY EXPERIENCE, MOST OF THE TIME THE U.S.

19  ATTORNEY WILL SHOW UP WITH THE WITNESSES AND WILL HAVE THE

20  PROPOSED INDICTMENT WITH THEM.  SO YOU'LL HAVE THAT TO

21  CONSIDER.  YOU'LL KNOW EXACTLY WHAT THE PROPOSED CHARGES ARE.

22       THE INDICTMENT WILL SET FORTH THE DATE AND THE PLACE

23  OF THE ALLEGED OFFENSE AND THE CIRCUMSTANCES THAT THE U.S.

24  ATTORNEY BELIEVES MAKES THE CONDUCT CRIMINAL.  IT WILL

25  IDENTIFY THE CRIMINAL STATUTES THAT HAVE ALLEGEDLY BEEN

PDF created with pdfFactory trial version www.pdffactory.com

25

1    VIOLATED.

2            THE FOREPERSON, UPON THE GRAND JURY VOTING TO RETURN

3    THE INDICTMENT, WILL THEN ENDORSE OR SIGN THE INDICTMENT,

4    WHAT'S CALLED A TRUE BILL OF INDICTMENT.  THERE'S A SPACE

5    PROVIDED BY THE WORD -- OR FOLLOWED BY THE WORD "FOREPERSON."

6    THE FOREPERSON IS TO SIGN THE INDICTMENT IF THE GRAND JURY

7    BELIEVES THAT THERE'S PROBABLE CAUSE.  A TRUE BILL SIGNIFIES

8    THAT 12 OR MORE GRAND JURORS HAVE AGREED THAT THE CASE OUGHT

9    TO GO FORWARD WITH PROBABLE CAUSE TO BELIEVE THAT THE PERSON

10   PROPOSED FOR THE CHARGE IS GUILTY OF THE CRIME.

11           IT'S THE DUTY OF THE FOREPERSON TO ENDORSE OR SIGN

12   EVERY INDICTMENT VOTED ON BY AT LEAST 12 MEMBERS EVEN IF THE

13   FOREPERSON HAS VOTED AGAINST RETURNING THE INDICTMENT.  SO IF

14   YOU'VE BEEN DESIGNATED A FOREPERSON OR AN ASSISTANT

15   FOREPERSON, EVEN IF YOU VOTED THE OTHER WAY OR YOU'RE

16   OUT-VOTED, IF THERE'S AT LEAST 12 WHO VOTED FOR THE

17   INDICTMENT, THEN YOU MUST SIGN THE INDICTMENT.

18           IF YOU WERE THE 12 MEMBERS OF THE GRAND JURY WHO

19   VOTED IN FAVOR OF THE INDICTMENT, THEN THE FOREPERSON WILL

20   ENDORSE THE INDICTMENT WITH THESE WORDS:  "NOT A TRUE BILL."

21   THEY'LL RETURN IT TO THE COURT.  THE COURT WILL IMPOUND IT.

22           THE INDICTMENTS WHICH HAVE BEEN ENDORSED AS A TRUE

23   BILL ARE PRESENTED EITHER TO ONE OF OUR MAGISTRATE JUDGES OR

24   TO A DISTRICT JUDGE IN OPEN COURT BY YOUR FOREPERSON AT THE

25   CONCLUSION OF EACH SESSION OF THE GRAND JURY.  THIS IS THE

PDF created with pdfFactory trial version www.pdffactory.com

26

1    PROCEDURE THAT YOU HEARD ME ALLUDE TO.  IN THE ABSENCE OF THE

2    FOREPERSON, THE DEPUTY FOREPERSON SHALL PERFORM ALL THE

3    FUNCTIONS AND DUTIES OF THE FOREPERSON.

4          LET ME EMPHASIZE AGAIN IT'S EXTREMELY IMPORTANT FOR

5    THOSE OF YOU WHO ARE GRAND JURORS TO REALIZE THAT UNDER OUR

6    CONSTITUTION, THE GRAND JURY IS AN INDEPENDENT BODY.  IT'S

7    INDEPENDENT OF THE UNITED STATES ATTORNEY.  IT'S NOT AN ARM OR

8    AN AGENT OF FEDERAL BUREAU OF INVESTIGATION OF THE DRUG

9    ENFORCEMENT ADMINISTRATION, THE IRS, OR ANY OTHER GOVERNMENT

10   AGENCY CHARGED WITH PROSECUTING THE CRIME.

11         I USED THE CHARACTERIZATION EARLIER THAT YOU STAND

12   AS A BUFFER BETWEEN OUR GOVERNMENT'S ABILITY TO ACCUSE SOMEONE

13   OF A CRIME AND THEN PUTTING THAT PERSON THROUGH THE BURDEN OF

14   STANDING TRIAL.  YOU ACT AS AN INDEPENDENT BODY OF CITIZENS.

15         IN RECENT YEARS, THERE HAS BEEN CRITICISM OF THE

16   INSTITUTION OF THE GRAND JURY.  THE CRITICISM GENERALLY IS THE

17   GRAND JURY ACTS AS RUBBER STAMPS AND APPROVES PROSECUTIONS

18   THAT ARE BROUGHT BY THE GOVERNMENT WITHOUT THOUGHT.

19         INTERESTINGLY ENOUGH, IN MY DISCUSSION WITH

20   PROSPECTIVE GRAND JURORS, WE HAD ONE FELLOW WHO SAID, "YEAH,

21   THAT'S THE WAY I THINK IT OUGHT TO BE."  WELL, THAT'S NOT THE

22   WAY IT IS.  AS A PRACTICAL MATTER, YOU WILL WORK CLOSELY WITH

23   GOVERNMENT LAWYERS.  THE U.S. ATTORNEY AND THE ASSISTANT U.S.

24   ATTORNEYS WILL PROVIDE YOU WITH IMPORTANT SERVICES AND HELP

25   YOU FIND YOUR WAY WHEN YOU'RE CONFRONTED WITH COMPLEX LEGAL

PDF created with pdfFactory trial version www.pdffactory.com

27

1    MATTERS.  IT'S ENTIRELY PROPER THAT YOU SHOULD RECEIVE THE

2    ASSISTANCE FROM THE GOVERNMENT LAWYERS.

3         BUT AT THE END OF THE DAY, THE DECISION ABOUT

4    WHETHER A CASE GOES FORWARD AND AN INDICTMENT SHOULD BE

5    RETURNED IS YOURS AND YOURS ALONE.  IF PAST EXPERIENCE IS ANY

6    INDICATION OF WHAT TO EXPECT IN THE FUTURE, THEN YOU CAN

7    EXPECT THAT THE U.S. ATTORNEYS THAT WILL APPEAR IN FRONT OF

8    YOU WILL BE CANDID, THEY'LL BE HONEST, THAT THEY'LL ACT IN

9    GOOD FAITH IN ALL MATTERS PRESENTED TO YOU.

10        HOWEVER, AS I SAID, ULTIMATELY YOU HAVE TO DEPEND ON

11   YOUR INDEPENDENT JUDGMENT IN MAKING THE DECISION THAT YOU ARE

12   CHARGED WITH MAKING AS GRAND JURORS.  YOU'RE NOT AN ARM OF THE

13   U.S. ATTORNEY'S OFFICE.  YOU'RE NOT AN ARM OF ANY GOVERNMENT

14   AGENCY.  THE GOVERNMENT'S LAWYERS ARE PROSECUTORS, AND YOU'RE

15   NOT.

16        IF THE FACTS SUGGEST TO YOU THAT YOU SHOULD NOT

17   INDICT, THEN YOU SHOULD NOT DO SO EVEN IN THE FACE OF

18   OPPOSITION OR STATEMENTS OR ARGUMENTS FROM ONE OF THE

19   ASSISTANT UNITED STATES ATTORNEYS.  YOU SHOULD NOT SURRENDER

20   AN HONESTLY OR CONSCIOUSLY HELD BELIEF WITHOUT THE WEIGHT OF

21   THE EVIDENCE AND SIMPLY DEFER TO THE U.S. ATTORNEY.  THAT'S

22   YOUR DECISION TO MAKE.

23        JUST AS YOU MUST MAINTAIN YOUR INDEPENDENCE IN YOUR

24   DEALINGS WITH GOVERNMENT LAWYERS, YOUR DEALINGS WITH THE COURT

25   MUST BE ON A FORMAL BASIS, ALSO.  IF YOU HAVE A QUESTION FOR

PDF created with pdfFactory trial version www.pdffactory.com

28

1   THE COURT OR A DESIRE TO MAKE A PRESENTMENT OR A RETURN OF AN

2   INDICTMENT TO THE COURT, THEN YOU MAY CONTACT ME THROUGH MY

3   CLERK.  YOU'LL BE ABLE TO ASSEMBLE IN THE COURTROOM OFTENTIMES

4   FOR THESE PURPOSES.

5        LET ME TELL YOU ALSO THAT EACH GRAND JUROR IS

6   DIRECTED TO REPORT IMMEDIATELY TO THE COURT ANY ATTEMPT BY

7   ANYBODY UNDER ANY PRETENSE WHATSOEVER TO ADDRESS YOU OR

8   CONTACT YOU FOR THE PURPOSE OF TRYING TO GAIN INFORMATION

9   ABOUT WHAT'S GOING ON IN FRONT OF THE GRAND JURY.  THAT SHOULD

10  NOT HAPPEN.  IF IT DOES HAPPEN, I SHOULD BE INFORMED OF THAT

11  IMMEDIATELY BY ANY OF YOU, COLLECTIVELY OR INDIVIDUALLY.  IF

12  ANY PERSON CONTACTS YOU OR ATTEMPTS TO INFLUENCE YOU IN ANY

13  MANNER IN CARRYING OUT YOUR DUTIES AS A GRAND JUROR, LET ME

14  KNOW ABOUT IT.

15       LET ME TALK A LITTLE BIT MORE ABOUT THE OBLIGATION

16  OF SECRECY, WHICH I'VE MENTIONED AND ALLUDED TO.  AS I TOLD

17  YOU BEFORE, THE HALLMARK OF THE GRAND JURY, PARTICULARLY OUR

18  FEDERAL GRAND JURY, IS THAT IT OPERATES SECRETLY.  IT OPERATES

19  IN SECRECY, AND ITS PROCEEDINGS ARE ENTIRELY SECRET.

20       YOUR PROCEEDINGS AS GRAND JURORS ARE ALWAYS SECRET,

21  AND THEY MUST REMAIN SECRET PERMANENTLY UNLESS AND UNTIL THE

22  COURT DETERMINES OTHERWISE.  YOU CAN'T RELATE TO YOUR FAMILY,

23  THE NEWS MEDIA, TELEVISION REPORTERS, OR TO ANYONE WHAT

24  HAPPENED IN FRONT OF THE GRAND JURY.  IN FACT, TO DO SO IS TO

25  COMMIT A CRIMINAL OFFENSE.  YOU COULD BE HELD CRIMINALLY

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

29

1    LIABLE FOR REVEALING WHAT OCCURRED IN FRONT OF THE GRAND JURY.

2         THERE ARE SEVERAL IMPORTANT REASONS WHY WE DEMAND

3    SECRECY IN THE INSTITUTION OF THE GRAND JURY.  FIRST -- AND I

4    MENTIONED THIS, AND THIS IS OBVIOUS -- THE PREMATURE

5    DISCLOSURE OF INFORMATION THAT THE GRAND JURY IS ACTING ON

6    COULD VERY WELL FRUSTRATE THE ENDS OF JUSTICE IN PARTICULAR

7    CASES.  IT MIGHT GIVE AN OPPORTUNITY FOR SOMEONE WHO'S ACCUSED

8    OF A CRIME TO ESCAPE OR BECOME A FUGITIVE OR TO DESTROY

9    EVIDENCE THAT MIGHT OTHERWISE BE UNCOVERED LATER ON.  YOU

10   DON'T WANT TO DO THAT.

11        IN THE COURSE OF AN INVESTIGATION, IT'S ABSOLUTELY

12   IMPERATIVE THAT THE INVESTIGATION AND THE FACTS OF THE

13   INVESTIGATION REMAIN SECRET, AND YOU SHOULD KEEP THAT FOREMOST

14   IN YOUR MIND.  ALSO, IF THE TESTIMONY OF A WITNESS IS

15   DISCLOSED, THE WITNESS MAY BE SUBJECT TO INTIMIDATION OR

16   SOMETIMES RETALIATION OR BODILY INJURY BEFORE THE WITNESS IS

17   ABLE TO TESTIFY.  IT IS SOMETHING THAT THE LAW ENFORCEMENT --

18   IT'S SOMETIMES THE CASE THAT LAW ENFORCEMENT WILL TELL A

19   WITNESS WHO IS COOPERATING WITH AN INVESTIGATION THAT THEIR

20   SECRECY IS GUARANTEED.  IT SOMETIMES TAKES THAT KIND OF

21   ASSURANCE FROM THE POLICE OR LAW ENFORCEMENT AGENTS TO GET A

22   WITNESS TO TELL WHAT THEY KNOW.  AND THAT GUARANTEE CAN ONLY

23   BE SECURED IF YOU MAINTAIN THE OBLIGATION OF SECRECY.

24        THE GRAND JURY IS FORBIDDEN BY LAW FROM DISCLOSING

25   ANY INFORMATION ABOUT THE GRAND JURY PROCESS WHATSOEVER.  IT'S

PDF created with pdfFactory trial version www.pdffactory.com

30

1    ON THE BASIS SOMETIMES OF REPRESENTATIONS LIKE THAT RELUCTANT

2    WITNESSES DO COME FORWARD.  AGAIN, IT UNDERSCORES THE

3    IMPORTANCE OF SECRECY.

4           AS I'VE ALSO MENTIONED, THE REQUIREMENT OF SECRECY

5    PROTECTS INNOCENT PEOPLE WHO MAY HAVE COME UNDER

6    INVESTIGATION, BUT WHO ARE CLEARED BY THE ACTIONS OF THE GRAND

7    JURY.  IT'S A TERRIBLE THING TO BE IMPROPERLY ACCUSED OF A

8    CRIME.  IT'S LIKE A SCARLET LETTER THAT PEOPLE SOMETIMES WEAR

9    FOREVER.  IT'S WORSE IF THE CRIME OR THE ACCUSATION NEVER

10   BECOMES FORMAL.  JUST THE IDEA THAT SOMEONE IS UNDER

11   INVESTIGATION CAN HAVE DISASTROUS CONSEQUENCES FOR THAT PERSON

12   OR HIS OR HER BUSINESS OR HIS OR HER FAMILY.  THIS IS ANOTHER

13   IMPORTANT REASON WHY THE GRAND JURY PROCEEDINGS MUST REMAIN

14   SECRET.

15          IN THE EYES OF SOME PEOPLE, INVESTIGATION BY THE

16   GRAND JURY ALONE CARRIES WITH IT THE STIGMA OR SUGGESTION OF

17   GUILT.  SO GREAT INJURY CAN BE DONE TO A PERSON'S GOOD NAME

18   EVEN THOUGH ULTIMATELY YOU DECIDE THAT THERE'S NO EVIDENCE

19   SUPPORTING AN INDICTMENT OF THE PERSON.

20          TO ENSURE THE SECRECY OF THE GRAND JURY PROCEEDINGS,

21   THE LAW PROVIDES THAT ONLY AUTHORIZED PEOPLE MAY BE IN THE

22   GRAND JURY ROOM WHILE EVIDENCE IS BEING PRESENTED.  AS I'VE

23   MENTIONED TO YOU NOW SEVERAL TIMES, THE ONLY PEOPLE WHO MAY BE

24   PRESENT DURING THE FUNCTIONING OF THE GRAND JURY ARE THE GRAND

25   JURORS THEMSELVES, THE UNITED STATES ATTORNEY OR AN ASSISTANT

PDF created with pdfFactory trial version www.pdffactory.com

31

1    WHO'S PRESENTING THE CASE, A WITNESS WHO IS THEN UNDER

2    EXAMINATION, A COURT REPORTER, AND AN INTERPRETER, IF

3    NECESSARY.  ALL THE OTHERS EXCEPT THE GRAND JURORS GO OUT

4    DURING THE DELIBERATION AND VOTING.

5          YOU MAY DISCLOSE TO THE U.S. ATTORNEY WHO IS

6    ASSISTING THE GRAND JURY CERTAIN INFORMATION.  AS I SAID, IF

7    YOU HAVE QUESTIONS, IF GRAND JURORS HAVE QUESTIONS THAT THEY

8    WANT ANSWERED, OBVIOUSLY THAT INFORMATION IS TO BE CONVEYED TO

9    THE U.S. ATTORNEY TO GET THE QUESTIONS ANSWERED.

10          BUT YOU SHOULD NOT DISCLOSE THE CONTEXT OF YOUR

11   DELIBERATIONS OR THE VOTE OF ANY PARTICULAR GRAND JUROR TO

12   ANYONE, EVEN THE GOVERNMENT LAWYERS, ONCE THE VOTE HAS BEEN

13   DONE.  THAT'S ONLY THE BUSINESS OF THE GRAND JURY.  IN OTHER

14   WORDS, YOU'RE NOT TO INFORM THE GOVERNMENT LAWYER WHO VOTED

15   ONE WAY ON THE INDICTMENT AND WHO VOTED THE OTHER WAY.

16          LET ME CONCLUDE NOW -- I APPRECIATE YOUR PATIENCE,

17   AND IT'S BEEN A LONG SESSION THIS MORNING -- BY SAYING THAT

18   THE IMPORTANCE OF THE SERVICE YOU PERFORM IS DEMONSTRATED BY

19   THE VERY IMPORTANT AND COMPREHENSIVE OATH WHICH YOU TOOK A

20   SHORT WHILE AGO.  IT'S AN OATH THAT IS ROOTED IN OUR HISTORY

21   AS A COUNTRY.  THOUSANDS OF PEOPLE BEFORE YOU HAVE TAKEN A

22   SIMILAR OATH.  AND AS GOOD CITIZENS, YOU SHOULD BE PROUD TO

23   HAVE BEEN SELECTED TO ASSIST IN THE ADMINISTRATION OF JUSTICE.

24          IT HAS BEEN MY PLEASURE TO MEET YOU.  I WOULD BE

25   HAPPY TO SEE YOU IN THE FUTURE IF THE NEED ARISES.  AT THIS

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

32

1   POINT, THE U.S. ATTORNEY, MR. ROBINSON, WILL ASSIST YOU IN

2   FURTHER ORGANIZATION.  SO THIS PART OF THE ADMINISTRATION OF

3   YOUR RESPONSIBILITY AS GRAND JURORS INVOLVING THE COURT IS

4   OVER.

5           IT MIGHT BE APPROPRIATE TO TAKE A BREAK BEFORE WE GO

6   ON TO THE NEXT PROCEEDING.  I'VE HELD THESE FOLKS FOR A LONG

7   TIME.

8           LADIES AND GENTLEMEN, MY GREAT PLEASURE TO MEET ALL

9   OF YOU.  GOOD LUCK WITH YOUR GRAND JURY SERVICE.  I THINK

10  YOU'LL FIND IT REWARDING AND INTERESTING AND COMPELLING.

11                          --OOO--

12

13

14

15          I HEREBY CERTIFY THAT THE TESTIMONY

16          ADDUCED IN THE FOREGOING MATTER IS

17          A TRUE RECORD OF SAID PROCEEDINGS.

18

19          _____

20

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

# APPENDIX 2

1

2

3

4

5

6

7

8

9

10          PROSPECTIVE JUROR:  MY NAME IS .

11    I LIVE IN SAN DIEGO IN THE MISSION HILLS AREA.  I'M RETIRED.

12    I WAS A CLINICAL SOCIAL WORKER.  I'M SINGLE.  NO CHILDREN.

13    I'VE BEEN CALLED FOR JURY SERVICE A NUMBER OF TIMES, BUT I'VE

14    NEVER ACTUALLY BEEN SELECTED AS A JUROR.  CAN I BE FAIR?  I'LL

15    TRY.  BECAUSE OF THE NATURE OF THE WORK THAT I DID, I HAVE

16    SOME FAIRLY STRONG OPINIONS ABOUT SOME OF THE PEOPLE WHO COME

17    INTO THE LEGAL SYSTEM.  BUT I WOULD TRY TO WORK WITH THAT.

18          THE COURT:  WE'RE ALL PRODUCTS OF OUR EXPERIENCE.

19    WE'RE NOT GOING TO TRY TO DISABUSE YOU OF EXPERIENCES OR

20    JUDGMENTS THAT YOU HAVE.  WHAT WE ASK IS THAT YOU NOT ALLOW

21    THOSE TO CONTROL INVARIABLY THE OUTCOME OF THE CASES COMING IN

22    FRONT OF YOU; THAT YOU LOOK AT THE CASES FRESH, YOU EVALUATE

23    THE CIRCUMSTANCES, LISTEN TO THE WITNESS TESTIMONY, AND THEN

24    MAKE AN INDEPENDENT JUDGMENT.

25          DO YOU THINK YOU CAN DO THAT?

16

1      PROSPECTIVE JUROR:  I'LL DO MY BEST.

2      THE COURT:  IS THERE A CERTAIN CATEGORY OF CASE THAT
3  YOU THINK MIGHT BE TROUBLESOME FOR YOU TO SIT ON THAT YOU'D BE
4  INSTINCTIVELY TILTING ONE WAY IN FAVOR OF INDICTMENT OR THE
5  OTHER WAY AGAINST INDICTING JUST BECAUSE OF THE NATURE OF THE
6  CASE?

7      PROSPECTIVE JUROR:  WELL, I HAVE SOME FAIRLY STRONG
8  FEELINGS REGARDING DRUG CASES.  I DO NOT BELIEVE THAT ANY
9  DRUGS SHOULD BE CONSIDERED ILLEGAL, AND I THINK WE'RE SPENDING
10  A LOT OF TIME AND ENERGY PERSECUTING AND PROSECUTING CASES
11  WHERE RESOURCES SHOULD BE DIRECTED IN OTHER AREAS.

12      I ALSO HAVE STRONG FEELINGS ABOUT IMMIGRATION CASES.
13  AGAIN, I THINK WE'RE SPENDING A LOT OF TIME PERSECUTING PEOPLE
14  THAT WE SHOULD NOT BE.

15      THE COURT:  WELL, LET ME TELL YOU, YOU'VE HIT ON THE
16  TWO TYPES OF CASES THAT ARE REALLY KIND OF THE STAPLE OF THE
17  WORK WE DO HERE IN THE SOUTHERN DISTRICT OF CALIFORNIA.  AS I
18  MENTIONED IN MY INITIAL REMARKS, OUR PROXIMITY TO THE BORDER
19  KIND OF MAKES US A FUNNEL FOR BOTH DRUG CASES AND IMMIGRATION
20  CASES.  YOU'RE GOING TO BE HEARING THOSE CASES I CAN TELL YOU
21  FOR SURE.  JUST AS DAY FOLLOWS NIGHT, YOU'RE HEAR CASES LIKE
22  THAT.

23      NOW, THE QUESTION IS CAN YOU FAIRLY EVALUATE THOSE
24  CASES?  JUST AS THE DEFENDANT ULTIMATELY IS ENTITLED TO A FAIR
25  TRIAL AND THE PERSON THAT'S ACCUSED IS ENTITLED TO A FAIR

COMPUTER-AIDED TRANSCRIPTION

17

1  APPRAISAL OF THE EVIDENCE OF THE CASE THAT'S IN FRONT OF YOU,

2  SO, TOO, IS THE UNITED STATES ENTITLED TO A FAIR JUDGMENT.  IF

3  THERE'S PROBABLE CAUSE, THEN THE CASE SHOULD GO FORWARD.  I

4  WOULDN'T WANT YOU TO SAY, "WELL, YEAH, THERE'S PROBABLE CAUSE.

5  BUT I STILL DON'T LIKE WHAT OUR GOVERNMENT IS DOING.  I

6  DISAGREE WITH THESE LAWS, SO I'M NOT GOING TO VOTE FOR IT TO

7  GO FORWARD."  IF THAT'S YOUR FRAME OF MIND, THEN PROBABLY YOU

8  SHOULDN'T SERVE.  ONLY YOU CAN TELL ME THAT.

9           PROSPECTIVE JUROR:  WELL, I THINK I MAY FALL IN THAT

10  CATEGORY.

11           THE COURT:  IN THE LATTER CATEGORY?

12           PROSPECTIVE JUROR:  YES.

13           THE COURT:  WHERE IT WOULD BE DIFFICULT FOR YOU TO

14  SUPPORT A CHARGE EVEN IF YOU THOUGHT THE EVIDENCE WARRANTED

15  IT?

16           PROSPECTIVE JUROR:  YES.

17           THE COURT:  I'M GOING TO EXCUSE YOU, THEN.  I

18  APPRECIATE YOUR HONEST ANSWERS.

19

20

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPTION

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14          PROSPECTIVE JUROR:  MAY NAME IS ████████.  I

15  LIVE IN SAN DIEGO.  I'M A REAL ESTATE AGENT.  NOT MARRIED.  NO

16  KIDS.  HAVE NOT SERVED.  AND AS FAR AS BEING FAIR, IT KIND OF

17  DEPENDS UPON WHAT THE CASE IS ABOUT BECAUSE THERE IS A

18  DISPARITY BETWEEN STATE AND FEDERAL LAW.

19          THE COURT:  IN WHAT REGARD?

20          PROSPECTIVE JUROR:  SPECIFICALLY, MEDICAL

21  MARIJUANA.

22          THE COURT:  WELL, THOSE THINGS -- THE CONSEQUENCES

23  OF YOUR DETERMINATION SHOULDN'T CONCERN YOU IN THE SENSE THAT

24  PENALTIES OR PUNISHMENT, THINGS LIKE THAT -- WE TELL TRIAL

25  JURORS, OF COURSE, THAT THEY CANNOT CONSIDER THE PUNISHMENT OR

COMPUTER-AIDED TRANSCRIPTION

25

1  THE CONSEQUENCE THAT CONGRESS HAS SET FOR THESE THINGS.  WE'D

2  ASK YOU TO ALSO ABIDE BY THAT.  WE WANT YOU TO MAKE A

3  BUSINESS-LIKE DECISION AND LOOK AT THE FACTS AND MAKE A

4  DETERMINATION OF WHETHER THERE WAS A PROBABLE CAUSE.

5         COULD YOU DO THAT?  COULD YOU PUT ASIDE STRONG

6  PERSONAL FEELINGS YOU MAY HAVE?

7         PROSPECTIVE JUROR:  IT DEPENDS.  I HAVE A VERY

8  STRONG OPINION ON IT.  WE LIVE IN THE STATE OF CALIFORNIA, NOT

9  FEDERAL CALIFORNIA.  THAT'S HOW I FEEL ABOUT IT VERY STRONGLY.

10        THE COURT:  WELL, I DON'T KNOW HOW OFTEN MEDICAL

11 MARIJUANA USE CASES COME UP HERE.  I DON'T HAVE A GOOD FEEL

12 FOR THAT.  MY INSTINCT IS THEY PROBABLY DON'T ARISE VERY

13 OFTEN.  BUT I SUPPOSE ONE OF THE SOLUTIONS WOULD BE IN A CASE

14 IMPLICATING MEDICAL USE OF MARIJUANA, YOU COULD RECUSE

15 YOURSELF FROM THAT CASE.

16        ARE YOU WILLING TO DO THAT?

17        PROSPECTIVE JUROR:  SURE.

18        THE COURT:  ALL OTHER CATEGORIES OF CASES YOU COULD

19 GIVE A FAIR, CONSCIENTIOUS JUDGMENT ON?

20        PROSPECTIVE JUROR:  FOR THE MOST PART, BUT I ALSO

21 FEEL THAT DRUGS SHOULD BE LEGAL.

22        THE COURT:  OUR LAWS ARE DIFFERENT FROM THAT.  AND

23 AS YOU HEARD ME EXPLAIN TO ███████████, A LOT OF THE CASES

24 THAT COME THROUGH IN OUR COURT ARE DRUG CASES.  YOU'LL BE

25 CALLED UPON TO EVALUATE THOSE CASES OBJECTIVELY AND THEN MAKE

1   THE TWO DETERMINATIONS THAT I STARTED OFF EXPLAINING TO

2   �they    "DO I HAVE A REASONABLE BELIEF THAT A CRIME WAS

3   COMMITTED?  WHETHER I AGREE WITH WHETHER IT OUGHT TO BE A

4   CRIME OR NOT, DO I BELIEVE THAT A CRIME WAS COMMITTED AND THAT

5   THE PERSON THAT THE GOVERNMENT IS ASKING ME TO INDICT WAS

6   SOMEHOW INVOLVED IN THIS CRIME, EITHER COMMITTED IT OR HELPED

7   WITH IT?"

8          COULD YOU DO THAT IF YOU SIT AS A GRAND JUROR?

9          PROSPECTIVE JUROR:  THE LAST JURY I WAS ASKED TO SIT

10  ON, I GOT EXCUSED BECAUSE OF THAT REASON.

11         THE COURT:  YOU SAID YOU COULDN'T DO IT?  YOUR

12  SENTIMENTS ARE SO STRONG THAT THEY WOULD IMPAIR YOUR

13  OBJECTIVITY ABOUT DRUG CASES?

14         PROSPECTIVE JUROR:  I THINK RAPISTS AND MURDERERS

15  OUGHT TO GO TO JAIL, NOT PEOPLE USING DRUGS.

16         THE COURT:  I THINK RAPISTS AND MURDERERS OUGHT TO

17  GO TO JAIL, TOO.  IT'S NOT FOR ME AS A JUDGE TO SAY WHAT THE

18  LAW IS.  WE ELECT LEGISLATORS TO DO THAT.  WE'RE SORT OF AT

19  THE END OF THE PIPE ON THAT.  WE'RE CHARGED WITH ENFORCING THE

20  LAWS THAT CONGRESS GIVES US.

21         I CAN TELL YOU SOMETIMES I DON'T AGREE WITH SOME OF

22  THE LEGAL DECISIONS THAT ARE INDICATED THAT I HAVE TO MAKE.

23  BUT MY ALTERNATIVE IS TO VOTE FOR SOMEONE DIFFERENT, VOTE FOR

24  SOMEONE THAT SUPPORTS THE POLICIES I SUPPORT AND GET THE LAW

25  CHANGED.  IT'S NOT FOR ME TO SAY, "WELL, I DON'T LIKE IT.  SO

27

1    I'M NOT GOING TO FOLLOW IT HERE."

2         YOU'D HAVE A SIMILAR OBLIGATION AS A GRAND JUROR

3    EVEN THOUGH YOU MIGHT HAVE TO GRIT YOUR TEETH ON SOME CASES.

4    PHILOSOPHICALLY, IF YOU WERE A MEMBER OF CONGRESS, YOU'D VOTE

5    AGAINST, FOR EXAMPLE, CRIMINALIZING MARIJUANA.  I DON'T KNOW

6    IF THAT'S IT, BUT YOU'D VOTE AGAINST CRIMINALIZING SOME DRUGS.

7         THAT'S NOT WHAT YOUR PREROGATIVE IS HERE.  YOUR

8    PREROGATIVE INSTEAD IS TO ACT LIKE A JUDGE AND TO SAY, "ALL

9    RIGHT.  THIS IS WHAT I'VE GOT TO DEAL WITH OBJECTIVELY.  DOES

10   IT SEEM TO ME THAT A CRIME WAS COMMITTED?  YES.  DOES IT SEEM

11   TO ME THAT THIS PERSON'S INVOLVED?  IT DOES."  AND THEN YOUR

12   OBLIGATION, IF YOU FIND THOSE THINGS TO BE TRUE, WOULD BE TO

13   VOTE IN FAVOR OF THE CASE GOING FORWARD.

14        I CAN UNDERSTAND IF YOU TELL ME "LOOK, I GET ALL

15   THAT, BUT I JUST CAN'T DO IT OR I WOULDN'T DO IT."  I DON'T

16   KNOW WHAT YOUR FRAME OF MIND IS.  YOU HAVE TO TELL ME ABOUT

17   THAT.

18        PROSPECTIVE JUROR:  I'M NOT COMFORTABLE WITH IT.

19        THE COURT:  DO YOU THINK YOU'D BE INCLINED TO LET

20   PEOPLE GO ON DRUG CASES EVEN THOUGH YOU WERE CONVINCED THERE

21   WAS PROBABLE CAUSE THEY COMMITTED A DRUG OFFENSE?

22        PROSPECTIVE JUROR:  IT WOULD DEPEND UPON THE CASE.

23        THE COURT:  IS THERE A CHANCE THAT YOU WOULD DO

24   THAT?

25        PROSPECTIVE JUROR:  YES.

COMPUTER-AIDED TRANSCRIPTION

28

1          THE COURT:  I APPRECIATE YOUR ANSWERS.  I'LL EXCUSE

2    YOU AT THIS TIME.

38

```
 1
 2
 3
 4
 5
 6
 7
 8
 9          PROSPECTIVE JUROR:  I'M ███████.  I LIVE IN
10    ENCINITAS.  I WORK FOR AN INSURANCE COMPANY HERE IN SAN DIEGO.
11    I'M MARRIED.  MY WIFE IS A P.E. TEACHER AT A MIDDLE SCHOOL.  I
12    HAVE TWO KIDS AGE 14 AND 16.  I'VE BEEN A JUROR BEFORE
13    PROBABLY TEN YEARS AGO ON KIND OF A LOW-LEVEL CRIMINAL CASE.
14    AND IN THE NAME OF FULL DISCLOSURE, I'D PROBABLY SUGGEST I'D
15    BE THE FLIPSIDE OF SOME OF THE INDIVIDUALS WHO HAVE CONVEYED
16    THEIR CONCERNS PREVIOUSLY.  I HAVE A STRONG BIAS FOR THE U.S.
17    ATTORNEY, WHATEVER CASES THEY MIGHT BRING.  I DON'T THINK
18    THEY'RE HERE TO WASTE OUR TIME, THE COURT'S TIME, THEIR OWN
19    TIME.  I APPRECIATE THE EVIDENTIARY STANDARDS, I GUESS, MORE
20    OR LESS, AS A LAYPERSON WOULD; THAT THEY ARE CALLED UPON IN
21    ORDER TO BRING THESE CASES OR SEEK AN INDICTMENT.
22          AND THE GATEKEEPER ROLE THAT I GUESS WE'RE BEING
23    ASKED TO PLAY IS ONE THAT I'D HAVE A DIFFICULT TIME, IN ALL
24    HONESTY.  I'M PROBABLY SUGGESTING THAT THE U.S. ATTORNEY'S
25    CASE WOULD BE ONE THAT I WOULD BE WILLING TO STAND IN FRONT
```

COMPUTER-AIDED TRANSCRIPTION

39

1    OF; IN OTHER WORDS, PREVENT FROM GOING TO A JURY.

2         THE COURT:  IT SOMETIMES HAPPENS THAT AT THE TIME

3    THE CASE IS INITIALLY PRESENTED TO THE U.S. ATTORNEY'S OFFICE,

4    THINGS APPEAR DIFFERENTLY THAN 10 DAYS LATER, 20 DAYS LATER

5    WHEN IT'S PRESENTED TO A GRAND JURY.  THAT'S WHY THIS

6    GATEKEEPER ROLE IS VERY, VERY IMPORTANT.

7         YOU'RE NOT PART OF THE PROSECUTING ARM.  YOU'RE

8    INTENDED TO BE A BUFFER INDEPENDENT OF THE U.S. ATTORNEY'S

9    OFFICE.  AND THE REAL ROLE OF THE GRAND JURY IS TO MAKE SURE

10   THAT UNSUBSTANTIATED CHARGES DON'T GO FORWARD.

11        YOU'VE HEARD MY GENERAL COMMENTS.  YOU HAVE AN

12   APPRECIATION ABOUT HOW AN UNSUBSTANTIATED CHARGE COULD CAUSE

13   PROBLEMS FOR SOMEONE EVEN IF THEY'RE ULTIMATELY ACQUITTED.

14        YOU APPRECIATE THAT; RIGHT?

15        PROSPECTIVE JUROR:  I THINK I COULD APPRECIATE THAT,

16   YES.

17        THE COURT:  AND SO WE'RE -- LOOK, I'LL BE HONEST

18   WITH YOU.  THE GREAT MAJORITY OF THE CHARGES THAT THE GRAND

19   JURY PASSES ON THAT ARE PRESENTED BY THE U.S. ATTORNEY'S

20   OFFICE DO GO FORWARD.  MOST OF THE TIME, THE GRAND JURY PUTS

21   ITS SEAL OF APPROVAL ON THE INITIAL DECISION MADE BY THE U.S.

22   ATTORNEY.

23        OBVIOUSLY, I WOULD SCREEN SOMEBODY OUT WHO SAYS, "I

24   DON'T CARE ABOUT THE EVIDENCE.  I'M NOT GOING TO PAY ATTENTION

25   TO THE EVIDENCE.  IF THE U.S. ATTORNEY SAYS IT'S GOOD, I'M

COMPUTER-AIDED TRANSCRIPTION

40

1   GOING TO GO WITH THAT."  IT DIDN'T SOUND LIKE THAT'S WHAT YOU

2   WERE SAYING.  YOU WERE SAYING YOU GIVE A PRESUMPTION OF GOOD

3   FAITH TO THE U.S. ATTORNEY AND ASSUME, QUITE LOGICALLY, THAT

4   THEY'RE NOT ABOUT THE BUSINESS OF TRYING TO INDICT INNOCENT

5   PEOPLE OR PEOPLE THAT THEY BELIEVE TO BE INNOCENT OR THE

6   EVIDENCE DOESN'T SUBSTANTIATE THE CHARGES AGAINST.  THAT'S

7   WELL AND GOOD.

8         YOU MUST UNDERSTAND THAT AS A MEMBER OF THE GRAND

9   JURY, YOU'RE THE ULTIMATE ARBITER.  THEY DON'T HAVE THE

10  AUTHORITY TO HAVE A CASE GO FORWARD WITHOUT YOU AND FELLOW

11  GRAND JURORS' APPROVAL.  I WOULD WANT YOU NOT TO JUST

12  AUTOMATICALLY DEFER TO THEM OR SURRENDER THE FUNCTION AND

13  GIVER THE INDICTMENT DECISION TO THE U.S. ATTORNEY.  YOU HAVE

14  TO MAKE THAT INDEPENDENTLY.

15        YOU'RE WILLING TO DO THAT IF YOU'RE RETAINED HERE?

16        PROSPECTIVE JUROR:  I'M NOT A PERSON THAT THINKS OF

17  ANYBODY IN THE BACK OF A POLICE CAR AS NECESSARILY GUILTY, AND

18  I WOULD DO MY BEST TO GO AHEAD AND BE OBJECTIVE.  BUT AGAIN,

19  JUST IN THE NAME OF FULL DISCLOSURE, I FELT LIKE I SHOULD LET

20  YOU KNOW THAT I HAVE A VERY STRONG PRESUMPTION WITH RESPECT TO

21  ANY DEFENDANT THAT WOULD BE BROUGHT IN FRONT OF US.

22        THE COURT:  I UNDERSTAND WHAT YOU'RE SAYING.  LET ME

23  TELL YOU THE PROCESS WILL WORK MECHANICALLY.  THEY'RE GOING TO

24  CALL WITNESSES.  AND WHAT THEY'RE GOING TO ASK YOU TO DO IS

25  EVALUATE THE TESTIMONY YOU HEAR FROM WITNESSES.

COMPUTER-AIDED TRANSCRIPTION

41

1        BEFORE YOU REACH A POINT WHERE YOU VOTE ON ANY

2   INDICTMENT, THE U.S. ATTORNEY AND THE STENOGRAPHER LEAVE.  THE

3   ONLY PEOPLE LEFT WHEN THE VOTE IS TAKEN ARE THE GRAND JURORS

4   THEMSELVES.  THAT'S THE WAY THE PROCESS IS GOING TO WORK.

5        YOU'RE GOING TO HAVE TO SAY EITHER "WELL, IT HAS THE

6   RING OF TRUTH TO ME, AND I THINK IT HAPPENED THE WAY IT'S

7   BEING SUGGESTED HERE.  AT LEAST I'M CONVINCED ENOUGH TO LET

8   THE CASE GO FORWARD" OR "THINGS JUST DON'T HAPPEN LIKE THAT IN

9   MY EXPERIENCE, AND I THINK THIS SOUNDS CRAZY TO ME.  I WANT

10  EITHER MORE EVIDENCE OR I'M NOT CONVINCED BY WHAT'S BEEN

11  PRESENTED AND I'M NOT GOING TO LET IT GO FORWARD."

12       CAN YOU MAKE AN OBJECTIVE ON FACTS LIKE THE ONES

13  I'VE JUST DESCRIBED?

14       PROSPECTIVE JUROR:  I WOULD DO MY BEST TO DO THAT.

15  I CERTAINLY WOULD WANT ME SITTING ON A GRAND JURY IF I WERE A

16  DEFENDANT COMING BEFORE THIS GRAND JURY.  HAVING SAID THAT, I

17  WOULD DO MY BEST.  I HAVE TO ADMIT TO A STRONG BIAS IN FAVOR

18  OF THE U.S. ATTORNEY THAT I'M NOT SURE I COULD OVERCOME.

19       THE COURT:  ALL I'M TRYING TO GET AT IS WHETHER

20  YOU'RE GOING TO AUTOMATICALLY VOTE TO INDICT IRRESPECTIVE OF

21  THE FACTS.

22       A FEW YEARS AGO, I IMPANELED A FELLOW HERE THAT WAS

23  A SERGEANT ON THE SHERIFF'S DEPARTMENT.  AND YEARS AGO WHEN I

24  WAS A PROSECUTOR, I WORKED WITH HIM.  HE WAS ALL ABOUT

25  ARRESTING AND PROSECUTING PEOPLE.  BUT WHEN HE GOT HERE, HE

COMPUTER-AIDED TRANSCRIPTION

42

1   SAID, "LOOK, I UNDERSTAND THAT THIS IS A DIFFERENT FUNCTION.

2   I CAN PERFORM THAT FUNCTION." HE SERVED FAITHFULLY AND WELL

3   FOR A NUMBER OF -- OVER A YEAR, I THINK. 18 MONTHS, MAYBE.

4   HE EVENTUALLY GOT A PROMOTION, SO WE RELIEVED HIM FROM THE

5   GRAND JURY SERVICE.

6          BUT, YOU KNOW, HE TOOK OFF ONE HAT AND ONE UNIFORM

7   AND PUT ON A DIFFERENT HAT ON THE DAYS HE REPORTED TO THE

8   GRAND JURY. HE WAS A POLICEMAN. HE'D BEEN INVOLVED IN

9   PROSECUTING CASES. BUT HE UNDERSTOOD THAT THE FUNCTION HE WAS

10  PERFORMING HERE WAS DIFFERENT, THAT IT REQUIRED HIM TO

11  INDEPENDENTLY AND OBJECTIVELY ANALYZE CASES AND ASSURED ME

12  THAT HE COULD DO THAT, THAT HE WOULD NOT AUTOMATICALLY VOTE TO

13  INDICT JUST BECAUSE THE U.S. ATTORNEY SAID SO.

14         AGAIN, I DON'T WANT TO PUT WORDS IN YOUR MOUTH. BUT

15  I DON'T HEAR YOU SAYING THAT THAT'S THE EXTREME POSITION THAT

16  YOU HAVE. I HEAR YOU SAYING INSTEAD THAT COMMON SENSE AND

17  YOUR EXPERIENCE TELLS YOU THE U.S. ATTORNEY'S NOT GOING TO

18  WASTE TIME ON CASES THAT LACK MERIT. THE CONSCIENTIOUS PEOPLE

19  WHO WORK FOR THE U.S. ATTORNEY'S OFFICE AREN'T GOING TO TRY TO

20  TRUMP UP PHONY CHARGES AGAINST PEOPLE.

21         MY ANECDOTAL EXPERIENCE SUPPORTS THAT, TOO. THAT

22  DOESN'T MEAN THAT EVERY CASE THAT COMES IN FRONT OF ME I SAY,

23  "WELL, THE U.S. ATTORNEY'S ON THIS. THE PERSON MUST BE

24  GUILTY." I CAN'T DO THAT. I LOOK AT THE CASES STAND-ALONE,

25  INDEPENDENT, AND I EVALUATE THE FACTS. I DO WHAT I'M CHARGED

COMPUTER-AIDED TRANSCRIPTION

43

1    WITH DOING, WHICH IS MAKING A DECISION BASED ON THE EVIDENCE
2    THAT'S PRESENTED.
3          SO THAT'S THE QUESTION I HAVE FOR YOU.  I CAN
4    UNDERSTAND THE DEFERENCE TO THE U.S. ATTORNEY.  AND FRANKLY, I
5    AGREE WITH THE THINGS THAT YOU'RE SAYING.  THEY MAKE SENSE TO
6    ME.  BUT AT THE END OF THE DAY, YOUR OBLIGATION IS STILL TO
7    LOOK AT THESE CASES INDEPENDENTLY AND FORM AN INDEPENDENT
8    CONSCIENTIOUS BUSINESS-LIKE JUDGMENT ON THE TWO QUESTIONS THAT
9    I'VE MENTIONED EARLIER:  DO I HAVE A REASONABLE BELIEF THAT A
10   CRIME WAS COMMITTED?  DO I HAVE A REASONABLE BELIEF THAT THE
11   PERSON TO BE CHARGED COMMITTED IT OR HELPED COMMIT IT?
12         CAN YOU DO THAT?
13         PROSPECTIVE JUROR:  AGAIN, I WOULD DO MY BEST TO DO
14   THAT.  BUT I DO BRING A VERY, VERY STRONG BIAS.  I BELIEVE
15   THAT, FOR EXAMPLE, THE U.S. ATTORNEY WOULD HAVE OTHER FACTS
16   THAT WOULD RISE TO LEVEL THAT THEY'D BE ABLE TO PRESENT TO US
17   THAT WOULD BEAR ON THE TRIAL.  I WOULD LOOK AT THE CASE AND
18   PRESUME AND BELIEVE THAT THERE ARE OTHER FACTS OUT THERE THAT
19   AREN'T PRESENTED TO US THAT WOULD ALSO BEAR ON TAKING THE CASE
20   TO TRIAL.  I'D HAVE A VERY DIFFICULT TIME.
21         THE COURT:  YOU WOULDN'T BE ABLE TO DO THAT.  WE
22   WOULDN'T WANT YOU TO SPECULATE THAT THERE'S OTHER FACTS THAT
23   HAVEN'T BEEN PRESENTED TO YOU.  YOU HAVE TO MAKE A DECISION
24   BASED ON WHAT'S BEEN PRESENTED.
25         BUT LOOK, I CAN TELL YOU I IMAGINE THERE'S PEOPLE IN

COMPUTER-AIDED TRANSCRIPTION

44

1   THE U.S. ATTORNEY'S OFFICE THAT DISAGREE WITH ONE ANOTHER

2   ABOUT THE MERITORIOUSNESS OF A CASE OR WHETHER A CASE CAN BE

3   WON AT A JURY TRIAL.

4           IS THAT RIGHT, MR. ROBINSON?

5           MR. ROBINSON:  ON OCCASION, YOUR HONOR.  NOT VERY

6   OFTEN.

7           THE COURT:  IT COMES UP EVEN IN AN OFFICE WITH

8   PEOPLE CHARGED WITH THE SAME FUNCTION.  I DON'T WANT TO BEAT

9   YOU UP ON THIS, ▓▓▓▓▓▓▓   I'M EQUALLY CONCERNED WITH

10  SOMEBODY WHO WOULD SAY, "I'M GOING TO AUTOMATICALLY DROP THE

11  TRAP DOOR ON ANYBODY THE U.S ATTORNEY ASKS."  I WOULDN'T WANT

12  YOU TO DO THAT.  IF YOU THINK THERE'S A POSSIBILITY YOU'LL DO

13  THAT, THEN I'D BE INCLINED TO EXCUSE YOU.

14          PROSPECTIVE JUROR:  I THINK THAT THERE'S A

15  POSSIBILITY I WOULD BE INCLINED TO DO THAT.

16          THE COURT:  I'M GOING TO EXCUSE YOU, THEN.  THANK

17  YOU.  I APPRECIATE YOUR ANSWERS.

18

19

20

21

22

23    1

24

25

COMPUTER-AIDED TRANSCRIPTION

1
2
3
4
5                    **UNITED STATES DISTRICT COURT**
6                    **SOUTHERN DISTRICT OF CALIFORNIA**
7

8   UNITED STATES OF AMERICA,              CASE NO. 07cr1372 JAH

9                            Plaintiff,    **AMENDED ORDER DENYING**
                                           **DEFENDANT'S MOTION TO**
10       v.                                **DISMISS THE INDICTMENT**

11  DIANA JIMENEZ-BERMUDEZ,

12                           Defendant.

13

14          Defendant Diana Jimenez-Bermudez has filed a Motion to Dismiss the Indictment

15  Due to Erroneous Grand Jury Instruction.  For the reasons discussed below, Defendant's

16  motion is **DENIED**.

17                            **I.  BACKGROUND**

18          On February 28, 2007, a federal grand jury empaneled in this district on January

19  11, 2007 returned a two-count Indictment charging Defendant with Importation of

20  Methamphetamine, in violation of 21 U.S.C. §§ 952 and 960, and Possession of

21  Methamphetamine with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1).

22                    **II.  CHALLENGED INSTRUCTIONS**[1]

23  A.  **Voir Dire Session**

24          Before commencing voir dire, the empaneling judge, the Hon. Larry A. Burns,

25  explained the function of the grand jury to the prospective jurors as follows: "The grand

26  _____

27          [1]In her reply brief, Defendant makes a passing reference to the fact that the grand
    jurors were shown a video presentation on the role of the grand jury, however there is no
28  substantive challenge to the use of the video, and thus use of the video will not be
    discussed in depth herein.

                                    1                          07cr1372 JAH

jury is determining really two factors: 'Do we have a reasonable – collectively, do we have a reasonable belief that a crime was committed? And second, do we have a reasonable belief that the person that they propose that we indict committed the crime?' If the answer is 'yes' to both of those, then the case should move forward. If the answer to either of the questions is 'no,' then the grand jury should hesitate and not indict." App. 2 to Gov't Response at 8.

During voir dire, Judge Burns explained to the potential grand jurors that the presentation of the evidence to the grand jury was going to be one-sided. <u>Id.</u> at 14. However, Judge Burns stated, "Now, having told you that, my experience is that the prosecutors don't play hide-the-ball. If there's something adverse or that cuts against the charge, you'll be informed of that. They have a duty to do that." <u>Id.</u> at 14-15.

One prospective juror, a retired clinical social worker, indicated that he did not believe that any drugs should be considered illegal. <u>Id.</u> at 16. He also stated that he had strong feelings about immigration cases and thought the government was spending a lot of time unnecessarily persecuting people. <u>Id.</u> The following exchange occurred:

> The Court: Now, the question is can you fairly evaluate those cases? Just as the Defendant ultimately is entitled to a fair trial and the person that's accused is entitled to a fair appraisal of the evidence of the case that's in front of you, so, too, is the United States entitled to a fair judgment. If there's probable cause, then the case should go forward. I wouldn't want you to say, "Well, yeah, there's probable cause. But I still don't like what our Government is doing. I disagree with these laws, so I'm not going to vote for it to go forward." If that's your frame of mind, then probably you shouldn't serve. Only you can tell me that.

> Prospective Juror: Well, I think I may fall in that category.

> The Court: In the latter category?

> Prospective Juror: Yes.

> The Court: Where it would be difficult for you to support a charge even if you thought the evidence warranted it?

> Prospective Juror: Yes.

> The Court: I'm going to excuse you, then. I appreciate your honest answers.

<u>Id.</u> at 16-17.

Later, another prospective juror, a real estate agent, expressed a concern regarding

the disparity between state and federal law with respect to medical marijuana. Judge Burns responded:

> Well, those things – the consequences of your determination shouldn't concern you in the sense that penalties or punishment, things like that – we tell trial jurors, of course, that they cannot consider the punishment or the consequence that Congress has set for these things. We'd ask you to also abide by that. We want you to make a business-like decision and look at the facts and make a determination of whether there was a [sic] probable cause.

Id. at 25.

Subsequently, the prospective juror stated that he felt that drugs should be legal and that rapists and murderers, not people using drugs, should go to jail. Id. at 25-26. The following exchange ensued:

> The Court: I think rapists and murderers ought to go to jail too. It's not for me as a judge to say what the law is. We elect legislators to do that. We're sort of at the end of the pipe on that. We're charged with enforcing the laws that Congress gives us.
> I can tell you sometimes I don't agree with some of the legal decisions that are indicated that I have to make. But my alternative is to vote for someone different, vote for someone that supports the policies I support and get the law changed. It's not for me to say, "Well, I don't like it. So I'm not going to follow it here."
> You'd have a similar obligation as a grand juror even though you might have to grit your teeth on some cases. Philosophically, if you were a member of congress, you'd vote against, for example, criminalizing marijuana. I don't know if that's it but you'd vote against criminalizing some drugs.
> That's not what your prerogative is here. Your prerogative instead is to act like a judge and to say, "All right. This is what I've got to deal with objectively. Does it seem to me that a crime was committed? Yes. Does it seem to me that this person's involved? It does." And then your obligation, if you find those things to be true, would be to vote in favor of the case going forward.
> I can understand if you tell me, "Look, I get all that, but I just can't do it or I wouldn't do it." I don't know what your frame of mind is. You have to tell me about that.
>
> Prospective Juror: I'm not comfortable with it.
>
> The Court: Do you think you'd be inclined to let people go on drug cases even though you were convinced there was probable cause they committed a drug offense?
>
> Prospective Juror: It would depend upon the case.
>
> The Court: Is there a chance that you would do that?
>
> Prospective Juror: Yes.
>
> The Court: I appreciate your answers. I'll excuse you at this time.

07cr1372 JAH

1   Id. at 26-28.

2       Later, a potential juror said that he was "soft" on immigration because he had done

3   volunteer work with immigrants in the field, but that he could be fair and objective.  Judge

4   Burns stated: "As you heard me explain earlier to one of the prospective grand jurors, we're

5   not about trying to change people's philosophies and attitudes here.  That's not my

6   business.  But what I have to insist on is that you follow the law that's given to us by the

7   United States Congress.  We enforce the federal laws here."  Id. at 61.  This juror was not

8   excused.

9   **B.  Charge to Impaneled Grand Jury**

10      After the grand jury was impaneled, Judge Burns gave further instructions regarding

11  the responsibilities of the grand jurors.

12      With respect to the enforcement of federal laws, Judge Burns explained:

13          But it's not for you to judge the wisdom of the criminal laws enacted
        by Congress; that is, whether or not there should be a federal law or should
14      not be a federal law designating certain activity is [sic] criminal is not up to
        you.  That's a judgment that Congress makes.
15          And if you disagree with that judgment made by Congress, then your
        option is not to say, 'Well, I'm going to vote against indicting even though
16      I think that the evidence is sufficient' or 'I'm going to vote in favor of
        [indictment] even though the evidence may be insufficient.'  Instead, your
17      obligation is to contact your congressman or advocate for a change in the
        laws, but not to bring your personal definition of what the law ought to be
18      and try to impose that through applying it in a grand jury setting.
            Furthermore, when you're deciding whether to indict or not to indict,
19      you shouldn't be concerned with punishment that attaches to the charge.
        I think I also alluded to this in the conversation with one gentleman.  Judges
20      alone determine punishment.  We tell trial juries in criminal cases that
        they're not to be concerned with the matter of punishment either.  Your
21      obligation at the end of the day is to make a business-like decision on facts
        and apply those facts to the law as it's explained and read to you.
22
23  App. 1 to Gov't Response at 8-9.

24      With respect to exculpatory evidence, Judge Burns stated: "As I told you, in most

25  instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what

26  they may be asking you to do if they're aware of that evidence."  Id. at 20.  Later, Judge

27  Burns  said, "If past experience is any indication of what to expect in the future, then you

    can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll
28
    be honest, that they'll act in good faith in all matters presented to you."  Id. at 27.

4

### III.  DISCUSSION

**A.  Instructions Re: Role of Grand Jury**

Defendant contends that Judge Burns' instructions and the dismissal of two potential jurors deprived Defendant of the traditional functioning of the Grand Jury. Specifically, Defendant claims that the challenged statements in combination with the dismissal of the two potential jurors "flatly prohibited grand jurors from exercising their constitutional discretion to not indict even if probable cause supports the charge." (Def.'s Reply Br. 8.)  Looking at the instructions as a whole, the Court disagrees.

Judge Burns made it clear that the jurors were not to refuse to indict in the face of probable cause *on the ground that they disagreed with Congress's decision to criminalize certain activity*.  Judge Burns did not err in doing so.  In <u>United States v. Navarro-Vargas</u>, 408 F.3d 1184 (9th Cir. 2005) ("Navarro-Vargas II"), the Ninth Circuit upheld the model grand jury instruction that states: "You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal.  That is to be determined by Congress and not by you."  The majority opinion observed that the instruction was not contrary to any long-standing historical practice surrounding the grand jury and noted that shortly after the adoption of the Bill of Rights, federal judges charged grand juries with a duty to submit to the law and to strictly enforce it.  <u>Id.</u> at 1193, 1202-03.  "We cannot say that the grand jury's power to judge the wisdom of the laws is so firmly established that the district court must either instruct the jury on its power to nullify the laws or remain silent."  <u>Id.</u> at 1204.

A prohibition against judging the wisdom of the criminal laws enacted by Congress amounts to the same thing as a prohibition against refusing to indict based on disagreement with the laws.  It is true that Judge Burns used stronger language that, viewed in isolation, could be misconstrued as requiring the return of an indictment in *all* cases where probable cause can be found.  Particularly troubling is the following statement made to the real estate agent: "Your prerogative instead is to act like a judge and to say, 'All right.  This is what I've got to deal with objectively.  Does it seem to me that a crime

07cr1372 JAH

1   was committed? Yes. Does it seem to me that this person's involved? It does.' *And then*
2   *your obligation*, if you find those things to be true, *would be to vote in favor of the case going*
3   *forward*." App. 2 to Gov't Response at 26. However, viewed in context, Judge Burns was
4   not mandating the issuance of an indictment in *all* cases where probable cause is found;
5   he was explaining that disagreement with the laws should not be an obstacle to the
6   issuance of an indictment.[2]

7       Furthermore, the word "obligation" is not materially different than the word
8   "should." In <u>Navarro-Vargas II</u>, the majority opinion held that the model instruction that
9   the jurors "should" indict if they find probable cause does not violate the grand jury's
10  independence. The majority explained, "As a matter of pure semantics, it does not
11  'eliminate discretion on the part of the grand jurors,' leaving room for the grand jury to
12  dismiss even if it finds probable cause." <u>Navarro-Vargas II</u>, 408 F.3d at 1205 (quoting
13  <u>United States v. Marcucci</u>, 299 F.3d 1156, 1159 (9th Cir. 2002)). The dissenting opinion
14  notes that the word "should" is used "to express a duty [or] *obligation*." <u>Id.</u> at 1121
15  (quoting The Oxford American Diction And Language Guide 931 (1999)) (emphasis
16  added).[3]

17      Defendant also argues that Judge Burns improperly forbade the grand jury from
18  considering the potential punishment for crimes when deciding whether or not to indict.
19  Defendant relies on the following statement:

20          Well, those things – the consequences of your determination shouldn't
            concern you in the sense that penalties or punishment, things like that – we
21          tell trial jurors, of course, that they cannot consider the punishment or the

22
23      [2] The Supreme Court has recognized that a grand jury is not required to indict in
    every case where probable cause exists. In <u>Vasquez v. Hillery</u>, 474 U.S. 254, 263 (1986),
24  the Supreme Court explained: "The grand jury does not determine only that probable
    cause is to believe that a defendant committed a crime, or that it does not. In the
25  hands of the grand jury lies the power to charge a greater offense or a lesser offense;
    numerous counts or a single count; and perhaps most significant of all, a capital offense
26  or a noncapital offense - all on the basis of the same facts. Moreover, '[t]he grand jury is
    not bound to indict in every case where a conviction can be obtained.' <u>United States v.</u>
27  <u>Ciambrone</u>, 601 F.2d 616, 629 (2d Cir. 1979) (Friendly, J., dissenting)."

28      [3] Defendant concedes that at other times Judge Burns instructed that upon a finding
    of probable cause, the case "should" go forward. App. 2 to Gov't Response at 8, 17; App.
    1 to Gov't Response at 4, 23.

1    consequence that Congress has set for these things.  *We'd ask you to also abide*
2    *by that.*  We want you to make a business-like decision and look at the facts
     and make a determination of whether there was a probable cause.

3    App. 2 to Gov't Response at 25.  (Emphasis added.)  Although Judge Burns stated that

4    trial jurors *cannot* consider punishment, he did not impose such a restriction on the grand

5    jurors.  Instead, Judge Burns *requested* that the grand jurors follow the same principle.

6    Similarly, during the formal charge, Judge Burns stated, "[y]ou *shouldn't* be concerned with

7    punishment that attaches to the charge."  App. 1 to Gov't Response at 8.  (Emphasis

8    added.)

9        In United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006), the Ninth

10   Circuit upheld a jury instruction that stated: "[W]hen deciding whether or not to indict,

11   you *should not* be concerned about punishment in the event of conviction; judges alone

12   determine punishment."  (Emphasis added.)  Consistent with the reasoning in Marcucci

13   and Navarro-Vargas II, the Ninth Circuit held that the instruction did not place an

14   absolute bar on considering punishment and was therefore constitutional.    The

15   instructions given by Judge Burns regarding the consideration of punishment were

16   substantially the same as the instruction in Cortez-Rivera.

17       Judge Burns did not pronounce a general prohibition against jurors exercising their

18   discretion to refuse to return an indictment in the face of probable cause.   In any case,

19   "history demonstrates that grand juries do not derive their independence from a judge's

20   instruction.  Instead they derive their independence from an unreviewable power to decide

21   whether to indict or not."  Navarro-Vargas II, 408 F.3d at 1204.

22       Judge Burns informed the jurors about the utmost secrecy of the grand jury

23   proceedings and their deliberations.  In addition, a video shown to the potential grand

24   jurors titled, "The Federal Grand Jury: The People's Panel," which was intended to educate

25   potential grand jurors about their  responsibilities as grand jurors, also informed the jurors

26   of the secrecy of the proceedings.  Judge Burns and the video also emphasized to the jury

27   that they were independent of the Government and did not have to return an indictment

28   just because the Assistant U.S. Attorney asked them to.  Judge Burns characterized the

7

07cr1372 JAH

1   jury as "a buffer between our Government's ability to accuse someone of a crime and then

2   putting that person through the burden of standing trial."  App. 1 to Gov't Response at

3   26.  Judge Burns also told the jurors that they were not to be a "rubber stamp" and were

4   expected to depend on their independent judgment.  Id, at 27.

5          Even though the jurors were not explicitly instructed that they could use their

6   discretion to refuse to return an indictment, they retained that power by virtue of the

7   secrecy surrounding their deliberations and the unreviewability of their decisions.  Nothing

8   that Judge Burns said or did impinged on the jurors' independence in this regard.

9          Defendant counters that the dismissal of the two potential jurors undermined the

10  grand jury's independence from the very start.  According to Defendant, when Judge Burns

11  dismissed the jurors, the message was clear that they were to indict in every case where

12  there was probable cause or they would be excused.  Defendant contends that the

13  remaining grand jurors could not have understood Judge Burns' actions in any other way.

14  (Reply Br. 18.)  The Court disagrees.

15         Upon reading the voir dire transcript, it is apparent that the jurors were excused

16  because they were biased against the government with respect to a whole category of

17  criminal laws, not simply because they were independent-minded and might refuse to

18  return an indictment in a case where probable cause exists.  Judge Burns explained to the

19  clinical social worker, "We're all products of our experience.  We're not going to try to

20  disabuse you of experiences or judgments that you have.  What we ask is that you not

21  allow those to control invariably the outcome of the cases coming in front of you; that you

22  look at the cases fresh, you evaluate the circumstances, listen to the witness testimony, and

23  then make an independent judgment."  App. 2 to Gov't Response at 15.  Judge Burns

24  excused the social worker after he admitted that it would be difficult for him to return an

25  indictment in drug or immigration cases.

26         Similarly, the real estate agent expressed that he thought drugs should be legal and

27  that people using drugs should not be sent to jail.  App. 2 to Gov't Response at 25-26.

28  The real estate agent said that he was not comfortable with indicting in drug cases.

8

Although he did not say that he would refuse to indict in all cases involving drugs, he admitted that because of his beliefs, there was a chance that he would refuse to return an indictment in a drug case even though there was probable cause. <u>Id.</u> at 27. The real estate agent's responses established that he had serious concerns regarding the criminalization of drugs and could not be impartial with respect to these cases

That bias was the reason for the dismissal of the first two potential jurors is confirmed by the dismissal of a third potential juror. This juror stated that he had a strong bias for the Government. App. 2 to Gov't Response at 38. Judge Burns cautioned the juror that he should not "automatically defer to [the Government] or surrender the function and give the indictment decision to the U.S. Attorney. You have to make that independently." <u>Id.</u> at 40. Judge Burns emphasized once again the responsibility of the jurors to evaluate the facts of each case independently based on the evidence presented. <u>Id.</u> at 42-43. Demonstrating his even-handedness, Judge Burns explained, "I'm equally concerned with somebody who would say, 'I'm going to automatically drop the trap door on anybody the U.S. Attorney asks.' I wouldn't want you to do that." <u>Id.</u> at 44.

A reasonable grand juror would not have interpreted the dismissal of the first two potential jurors as a message that they must indict in all cases where probable cause is found or risk being excused from service. It was apparent to the other jurors that a lack of impartiality with respect to certain types of cases, *not* independence, was the reason for all three dismissals.

In sum, Judge Burns did not err in instructing the grand jurors that they were not to refuse to return an indictment on the ground that they disagreed with the laws. Furthermore, nothing in the video or Judge Burns' instructions nullified the grand jury's inherent power to refuse to indict for any reason whatsoever. As the Ninth Circuit noted in <u>Navarro-Vargas II</u>, 408 F.3d at 1204, the grand jury's independence results from the secrecy of their deliberations and the unreviewability of their decisions. Nothing in the record shows any impediment to that independence.

**B.**     **Instructions re: Assistant U.S. Attorneys**

07cr1372 JAH

1   Defendant also contends that Judge Burns committed structural error by making

2   comments about the Assistant U.S. Attorney's duty to present evidence that "cuts against

3   the charge."  According to Defendant, not only did Judge Burns' comments contradict

4   United States v. Williams, 504 U.S. 36 (1992), but also discouraged independent

5   investigation, leading to inaccurate probable cause determinations.  Defendant reasons

6   that given Judge Burns' comments, the grand jurors would have assumed that if the

7   prosecutor did not present any exculpatory evidence, then none exists, rendering further

8   investigation a waste of time.

9    Under Williams, prosecutors do not have a duty to present substantial exculpatory

10  evidence to the grand jury.  Although Assistant U.S. Attorneys apparently have an

11  employment duty to disclose "substantial evidence that directly negates the guilt" of a

12  subject of investigation (United States Attorneys' Manual § 9-11.233), it does not appear

13  that they have a broad duty to disclose all evidence that may be deemed exculpatory or

14  adverse to the Government's position.

15  Accordingly, Judge Burns' comments regarding the duty of Assistant U.S. Attorneys

16  to present adverse evidence were inaccurate.  However, Judge Burns' comments do not rise

17  to the level of structural error.  As discussed above, the video and Judge Burns stressed that

18  the grand jury was independent of the Government.  The video and Judge Burns also

19  explained to the jury that they could direct the Assistant U.S. Attorney to subpoena

20  additional documents or witnesses.  App. 1 to Gov't Response at 11, 24.  The jurors were

21  also told about their right to pursue their own investigation, even if the Assistant U.S.

22  Attorney disagrees with the grand jury's decision to pursue the subject.  Id. at 12.

23  In light of the foregoing instructions, the Court does not agree that the grand jurors

24  would assume that if the Government did not present any exculpatory evidence, none

25  exists.  A reasonable juror would understand that the Assistant U.S. Attorney may not be

26  aware of certain exculpatory evidence, whether due to legitimate circumstances or

27  inadequate investigation, and that further investigation by the grand jury may be needed

28  to properly evaluate the evidence before them.  Furthermore, Judge Burns told the jury

10                                                    07cr1372 JAH

that "in *most* instances" the U.S. Attorneys are duty-bound to present exculpatory evidence. App. 1 to Gov't Response at 20. Based on this qualifying language, the grand jurors would have understood that the prosecutor is not always bound to present exculpatory evidence. Thus, "the structural protections of the grand jury" have not "been so compromised as to render the proceedings fundamentally unfair." Bank of Nova Scotia v. United States, 487 U.S. 250, 257 (1988).

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss the Indictment Due to Erroneous Grand Jury Instruction is **DENIED**.

DATED:  December 5, 2007

HON. JOHN A. HOUSTON
United States District Judge

**IT IS SO ORDERED.**

11

07cr1372 JAH

1
2
3
4
5    **UNITED STATES DISTRICT COURT**
6    **SOUTHERN DISTRICT OF CALIFORNIA**
7

8    UNITED STATES OF AMERICA,                    CASE NO. 07cr0491 BTM

9                                    Plaintiff,    **ORDER DENYING DEFENDANT'S**
                                                   **MOTION TO DISMISS THE**
10        v.                                       **INDICTMENT**

11    MANUEL MARTINEZ-COVARRUBIAS,

12                                   Defendant.

13

14        Defendant Manuel Martinez-Covarrubias has filed a Motion to Dismiss the Indictment

15    Due to Erroneous Grand Jury Instruction.  For the reasons discussed below, Defendant's

16    motion is **DENIED**.

17                              **I.  BACKGROUND**

18        On February 28, 2007, a federal grand jury empaneled in this district on January 11,

19    2007 returned a two-count Indictment charging Defendant with Importation of

20    Methamphetamine, in violation of 21 U.S.C. §§ 952 and 960, and Possession of

21    Methamphetamine with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1).

22

23                      **II.  CHALLENGED INSTRUCTIONS**

24    A.  Video Presentation

25        Prior to the selection of the grand jury jury, the potential grand jurors were shown a

26    video titled "The Federal Grand Jury: The People's Panel."  The video's apparent purpose

27    is to educate potential grand jurors about their civic duty to serve, the function of the grand

28    jury, and their responsibilities as grand jurors.

                                    1

1    The video presents the story of a woman who serves on a grand jury for the first time.

2    In one scene, after the woman receives the summons, her son tells her what he has learned

3    about the function of a grand jury.  Reading from a civics book, the son states that if the "jury

4    finds that probable cause does exist, then it will return a written statement of charges called

5    an indictment . . . ."

6    When charging the impaneled grand jury, the fictional judge explains that if the grand

7    jury finds that there is probable cause, "you will return an indictment."

8    Later, the foreperson tells the other grand jurors that there are two purposes of the

9    grand jury: (1)  when there is a finding of probable cause, to bring the accused to trial fairly

10   and swiftly; and (2) to protect the innocent against unfounded prosecution.

11

12   B. <u>Voir Dire Session</u>

13   Before commencing voir dire, the empaneling judge, the Hon. Larry A. Burns,

14   explained the function of the grand jury to the prospective jurors as follows: "The grand jury

15   is determining really two factors: 'Do we have a reasonable – collectively, do we have a

16   reasonable belief that a crime was committed? And second, do we have a reasonable belief

17   that the person that they propose that we indict committed the crime?'  If the answer is 'yes'

18   to both of those, then the case should move forward.  If the answer to either of the questions

19   is 'no,' then the grand jury should hesitate and not indict." App. 2 to Gov't Response at 8.

20   During voir dire, Judge Burns explained to the potential grand jurors that the

21   presentation of the evidence to the grand jury was going to be one-sided.  <u>Id.</u> at 14.

22   However, Judge Burns stated, "Now, having told you that, my experience is that the

23   prosecutors don't play hide-the-ball.  If there's something adverse or that cuts against the

24   charge, you'll be informed of that.  They have a duty to do that."  <u>Id.</u> at 14-15.

25   One prospective juror, a retired clinical social worker, indicated that he did not believe

26   that any drugs should be considered illegal.  <u>Id.</u> at 16.  He also stated that he had strong

27   feelings about immigration cases and thought the government was spending a lot of time

28   unnecessarily persecuting people.  <u>Id.</u>  The following exchange occurred:

2

The Court: Now, the question is can you fairly evaluate those cases? Just as the Defendant ultimately is entitled to a fair trial and the person that's accused is entitled to a fair appraisal of the evidence of the case that's in front of you, so, too, is the United States entitled to a fair judgment. If there's probable cause, then the case should go forward. I wouldn't want you to say, "Well, yeah, there's probable cause. But I still don't like what our Government is doing. I disagree with these laws, so I'm not going to vote for it to go forward." If that's your frame of mind, then probably you shouldn't serve. Only you can tell me that.

Prospective Juror: Well, I think I may fall in that category.

The Court: In the latter category?

Prospective Juror: Yes.

The Court: Where it would be difficult for you to support a charge even if you thought the evidence warranted it?

Prospective Juror: Yes.

The Court: I'm going to excuse you, then. I appreciate your honest answers.

Id. at 16-17.

Later, another prospective juror, a real estate agent, expressed a concern regarding the disparity between state and federal law with respect to medical marijuana. Judge Burns responded:

Well, those things – the consequences of your determination shouldn't concern you in the sense that penalties or punishment, things like that – we tell trial jurors, of course, that they cannot consider the punishment or the consequence that Congress has set for these things. We'd ask you to also abide by that. We want you to make a business-like decision and look at the facts and make a determination of whether there was a [sic] probable cause.

Id. at 25.

Subsequently, the prospective juror stated that he felt that drugs should be legal and that rapists and murderers, not people using drugs, should go to jail. Id. at 25-26. The following exchange ensued:

The Court: I think rapists and murderers ought to go to jail too. It's not for me as a judge to say what the law is. We elect legislators to do that. We're sort of at the end of the pipe on that. We're charged with enforcing the laws that Congress gives us.

I can tell you sometimes I don't agree with some of the legal decisions that are indicated that I have to make. But my alternative is to vote for someone different, vote for someone that supports the policies I support and get the law changed. It's not for me to say, "Well, I don't like it. So I'm not going to follow it here."

You'd have a similar obligation as a grand juror even though you might

3

1   have to grit your teeth on some cases. Philosophically, if you were a member
2   of congress, you'd vote against, for example, criminalizing marijuana. I don't
    know if that's it but you'd vote against criminalizing some drugs.
3           That's not what your prerogative is here. Your prerogative instead is to
    act like a judge and to say, "All right. This is what I've got to deal with
4   objectively. Does it seem to me that a crime was committed? Yes. Does it
    seem to me that this person's involved? It does." And then your obligation, if
5   you find those things to be true, would be to vote in favor of the case going
    forward.
6           I can understand if you tell me, "Look, I get all that, but I just can't do it
    or I wouldn't do it." I don't know what your frame of mind is. You have to tell
7   me about that.
8   Prospective Juror: I'm not comfortable with it.
9   The Court: Do you think you'd be inclined to let people go on drug cases even
    though you were convinced there was probable cause they committed a drug
10  offense?
11  Prospective Juror: It would depend upon the case.
12  The Court: Is there a chance that you would do that?
13  Prospective Juror: Yes.
14  The Court: I appreciate your answers. I'll excuse you at this time.

    Id. at 26-28.
15
16          Later, a potential juror said that he was "soft" on immigration because he had done
17  volunteer work with immigrants in the field, but that he could be fair and objective. Judge
18  Burns stated: "As you heard me explain earlier to one of the prospective grand jurors, we're
19  not about trying to change people's philosophies and attitudes here. That's not my business.
20  But what I have to insist on is that you follow the law that's given to us by the United States
21  Congress. We enforce the federal laws here." Id. at 61. This juror was not excused.

22
23  C.  Charge to Impaneled Grand Jury
24          After the grand jury was impaneled, Judge Burns gave further instructions regarding
25  the responsibilities of the grand jurors.
26          With respect to the enforcement of federal laws, Judge Burns explained:
27          But it's not for you to judge the wisdom of the criminal laws enacted by
    Congress; that is, whether or not there should be a federal law or should not
28  be a federal law designating certain activity is [sic] criminal is not up to you.
    That's a judgment that Congress makes.
            And if you disagree with that judgment made by Congress, then your

4

1   option is not to say, 'Well, I'm going to vote against indicting even though I
2   think that the evidence is sufficient' or 'I'm going to vote in favor of [indictment]
    even though the evidence may be insufficient.' Instead, your obligation is to
3   contact your congressman or advocate for a change in the laws, but not to
    bring your personal definition of what the law ought to be and try to impose that
    through applying it in a grand jury setting.
4           Furthermore, when you're deciding whether to indict or not to indict, you
5   shouldn't be concerned with punishment that attaches to the charge. I think
    I also alluded to this in the conversation with one gentleman. Judges alone
6   determine punishment. We tell trial juries in criminal cases that they're not to
    be concerned with the matter of punishment either. Your obligation at the end
7   of the day is to make a business-like decision on facts and apply those facts
    to the law as it's explained and read to you.

8   App. 1 to Gov't Response at 8-9.

9       With respect to exculpatory evidence, Judge Burns stated: "As I told you, in most

10  instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they

11  may be asking you to do if they're aware of that evidence." Id. at 20.   Later, Judge Burns

12  said, "If past experience is any indication of what to expect in the future, then you can expect

13  that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that

14  they'll act in good faith in all matters presented to you." Id. at 27.

15

16                          **III. DISCUSSION**

17

18  A. Instructions Re: Role of Grand Jury

19      Defendant contends that statements made in the video, Judge Burns' instructions, and

20  the dismissal of two potential jurors deprived Defendant of the traditional functioning of the

21  Grand Jury. Specifically, Defendant claims that the challenged statements in combination

22  with the dismissal of the two potential jurors "flatly prohibited grand jurors from exercising

23  their constitutional discretion to not indict even if probable cause supports the charge."

24  (Def.'s Reply Br. 8.) Looking at the video presentation and the instructions as a whole, the

25  Court disagrees.

26      Judge Burns made it clear that the jurors were not to refuse to indict in the face of

27  probable cause *on the ground that they disagreed with Congress's decision to criminalize*

28  *certain activity.* Judge Burns did not err in doing so. In United States v. Navarro-Vargas, 408

07cr0491 BTM

1    F.3d 1184 (9th Cir. 2005) ("Navarro-Vargas II"), the Ninth Circuit upheld the model grand jury

2    instruction that states: "You cannot judge the wisdom of the criminal laws enacted by

3    Congress, that is, whether or not there should or should not be a federal law designating

4    certain activity as criminal.  That is to be determined by Congress and not by you."   The

5    majority opinion observed that the instruction was not contrary to any long-standing historical

6    practice surrounding the grand jury and noted that shortly after the adoption of the Bill of

7    Rights, federal judges charged grand juries with a duty to submit to the law and to strictly

8    enforce it.  Id. at 1193,1202-03.   "We cannot say that the grand jury's power to judge the

9    wisdom of the laws is so firmly established that the district court must either instruct the jury

10   on its power to nullify the laws or remain silent."  Id. at 1204.

11          A prohibition against judging the wisdom of the criminal laws enacted by Congress

12   amounts to the same thing as a prohibition against refusing to indict based on disagreement

13   with the laws.  It is true that Judge Burns used stronger language that, viewed in isolation,

14   could be misconstrued as requiring the return of an indictment in *all* cases where probable

15   cause can be found.  Particularly troubling is the following statement made to the real estate

16   agent: "Your prerogative instead is to act like a judge and to say, 'All right.  This is what I've

17   got to deal with objectively.  Does it seem to me that a crime was committed?  Yes.  Does

18   it seem to me that this person's involved?  It does.'  *And then your obligation*, if you find

19   those things to be true, *would be to vote in favor of the case going forward.*"  App. 2 to Gov't

20   Response at 26.  However, viewed in context, Judge Burns was not mandating the issuance

21   of an indictment in *all* cases where probable cause is found; he was explaining that

22   disagreement with the laws should not be an obstacle to the issuance of an indictment.[1]

23          Furthermore, the word "obligation" is not materially different than the word "should."

24   _____

25       [1]  The Supreme Court has recognized that a grand jury is not required to indict in
     every case where probable cause exists.  In Vasquez v. Hillery, 474 U.S. 254, 263 (1986),
26   the Supreme Court explained: "The grand jury does not determine only that probable cause
     exists to believe that a defendant committed a crime, or that it does not.  In the hands of the
27   grand jury lies the power to charge a greater offense or a lesser offense; numerous counts
     or a single count; and perhaps most significant of all, a capital offense or a noncapital offense
28   - all on the basis of the same facts.  Moreover, '[t]he grand jury is not bound to indict in every
     case where a conviction can be obtained.'  United States v. Ciambrone, 601 F.2d 616, 629
     (2d Cir. 1979) (Friendly, J., dissenting)."

6

1    In <u>Navarro-Vargas II</u>, the majority opinion held that the model instruction that the jurors

2    "should" indict if they find probable cause does not violate the grand jury's independence.

3    The majority explained, "As a matter of pure semantics, it does not 'eliminate discretion on

4    the part of the grand jurors,' leaving room for the grand jury to dismiss even if it finds

5    probable cause." <u>Navarro-Vargas II</u>, 408 F.3d at 1205 (quoting <u>United States v. Marcucci</u>,

6    299 F.3d 1156, 1159 (9th Cir. 2002)).  The dissenting opinion notes that the word "should"

7    is used "to express a duty [or] *obligation*." <u>Id.</u> at 1121 (quoting The Oxford American Diction

8    And Language Guide 931 (1999))(emphasis added).[2]

9    　　　　Defendant points to the language in the video where first the son, then the judge, state

10    that if there is a finding of probable cause, the grand jury "will" return an indictment.

11    However, no emphasis is placed on the word "will."  As spoken by the actors, the statements

12    are not directives, mandating the return of an indictment upon the finding of probable cause,

13    but, rather, descriptions of what is expected to occur.  Similarly, the foreperson's statement

14    that one of the purposes of the grand jury is to bring an accused to trial when there is a

15    finding of probable cause is a general statement of the grand jury's function, not a command

16    to return an indictment in *every* case where probable cause exists.

17    　　　　Defendant also argues that Judge Burns improperly forbade the grand jury from

18    considering the potential punishment for crimes when deciding whether or not to indict.

19    Defendant relies on the following statement:

20    　　　　Well, those things – the consequences of your determination shouldn't concern
      　　　　you in the sense that penalties or punishment, things like that – we tell trial
21    　　　　jurors, of course, that they cannot consider the punishment or the
      　　　　consequence that Congress has set for these things.  *We'd ask you to also*
22    　　　　*abide by that.*  We want you to make a business-like decision and look at the
      　　　　facts and make a determination of whether there was a probable cause.

23    App. 2 to Gov't Response at 25.  (Emphasis added.)  Although Judge Burns stated that trial

24    jurors *cannot* consider punishment, he did not impose such a restriction on the grand jurors.

25    Instead, Judge Burns *requested* that the grand jurors follow the same principle.  Similarly,

26

27    ─────────────────

28    　　[2] Defendant concedes that at other times Judge Burns instructed that upon a finding
      of probable cause, the case "should" go forward.  App. 2 to Gov't Response at 8, 17; App.
      1 to Gov't Response at 4, 23.

07cr0491 BTM

1    during the formal charge, Judge Burns stated, "[y]ou *shouldn't* be concerned with punishment

2    that attaches to the charge."  App. 1 to Gov't Response at 8.  (Emphasis added.)

3         In United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006), the Ninth Circuit

4    upheld a jury instruction that stated: "[W]hen deciding whether or not to indict, you *should not*

5    be concerned about punishment in the event of conviction; judges alone determine

6    punishment." (Emphasis added.)  Consistent with the reasoning in Marcucci and Navarro-

7    Vargas II, the Ninth Circuit held that the instruction did not place an absolute bar on

8    considering punishment and was therefore constitutional.  The instructions given by Judge

9    Burns regarding the consideration of punishment were substantially the same as the

10   instruction in Cortez-Rivera.

11        Neither Judge Burns nor the video pronounced a general prohibition against jurors

12   exercising their discretion to refuse to return an indictment in the face of probable cause.

13   In any case, "history demonstrates that grand juries do not derive their independence from

14   a judge's instruction.  Instead they derive their independence from an unreviewable power

15   to decide whether to indict or not."  Navarro-Vargas II, 408 F.3d at 1204.

16        Both the video and Judge Burns informed the jurors about the utmost secrecy of the

17   grand jury proceedings and their deliberations.  The video and Judge Burns also emphasized

18   to the jury that they were independent of the Government and did not have to return an

19   indictment just because the Assistant U.S. Attorney asked them to.  In the video, the judge

20   expressed approval at the fact that the grand jury did not return an indictment as to the

21   alleged driver of the get-away car. Judge Burns characterized the jury as "a buffer between

22   our Government's ability to accuse someone of a crime and then putting that person through

23   the burden of standing trial."  App. 1 to Gov't Response at 26.  Judge Burns also told the

24   jurors that they were not to be a "rubber stamp" and were expected to depend on their

25   independent judgment.  Id, at 27.

26        Even though the jurors were not explicitly instructed that they could use their

27   discretion to refuse to return an indictment, they retained that power by virtue of the secrecy

28   surrounding their deliberations and the unreviewability of their decisions.  Nothing that Judge

07cr0491 BTM

1    Burns said or did impinged on the jurors' independence in this regard.

2        Defendant counters that the dismissal of the two potential jurors undermined the grand

3    jury's independence from the very start.  According to Defendant, when Judge Burns

4    dismissed the jurors, the message was clear that they were to indict in every case where

5    there was probable cause or they would be excused.  Defendant contends that the remaining

6    grand jurors could not have understood Judge Burns' actions in any other way.  (Reply Br.

7    18.)  The Court disagrees.

8        Upon reading the voir dire transcript, it is apparent that the jurors were excused

9    because they were biased against the government with respect to a whole category of

10   criminal laws, not simply because they were independent-minded and might refuse to return

11   an indictment in a case where probable cause exists.  Judge Burns explained to the clinical

12   social worker, "We're all products of our experience.  We're not going to try to disabuse you

13   of experiences or judgments that you have.  What we ask is that you not allow those to

14   control invariably the outcome of the cases coming in front of you; that you look at the cases

15   fresh, you evaluate the circumstances, listen to the witness testimony, and then make an

16   independent judgment."  App. 2 to Gov't Response at 15.  Judge Burns excused the social

17   worker after he admitted that it would be difficult for him to return an indictment in drug or

18   immigration cases.

19       Similarly, the real estate agent expressed that he thought drugs should be legal and

20   that people using drugs should not be sent to jail.  App. 2 to Gov't Response at 25-26.   The

21   real estate agent said that he was not comfortable with indicting in drug cases.  Although he

22   did not say that he would refuse to indict in all cases involving drugs, he admitted that

23   because of his beliefs, there was a chance that he would refuse to return an indictment in a

24   drug case even though there was probable cause.  Id. at 27.  The real estate agent's

25   responses established that he had serious concerns regarding the criminalization of drugs

26   and could not be impartial with respect to these cases

27       That bias was the reason for the dismissal of the first two potential  jurors is confirmed

28   by the dismissal of a third potential juror.  This juror stated that he had a strong bias for the

07cr0491 BTM

1   Government.  App. 2 to Gov't Response at 38.  Judge Burns cautioned the juror that he

2   should not "automatically defer to [the Government] or surrender the function and give the

3   indictment decision to the U.S. Attorney.  You have to make that independently." Id. at 40.

4   Judge Burns emphasized once again the responsibility of the jurors to evaluate the facts of

5   each case independently based on the evidence presented.  Id. at 42-43.  Demonstrating his

6   even-handedness, Judge Burns explained, "I'm equally concerned with somebody who would

7   say, 'I'm going to automatically drop the trap door on anybody the U.S. Attorney asks.'  I

8   wouldn't want you to do that." Id. at 44.

9        A reasonable grand juror would not have interpreted the dismissal of the first two

10  potential jurors as a message that they must indict in all cases where probable cause is

11  found or risk being excused from service.  It was apparent to the other jurors that a lack of

12  impartiality with respect to certain types of cases, not independence, was the reason for all

13  three dismissals.

14       In sum, Judge Burns did not err in instructing the grand jurors that they were not to

15  refuse to return an indictment on the ground that they disagreed with the laws.  Furthermore,

16  nothing in the video or Judge Burns' instructions nullified the grand jury's inherent power to

17  refuse to indict for any reason whatsoever.  As the Ninth Circuit noted in Navarro-Vargas II,

18  408 F.3d at 1204, the grand jury's independence results from the secrecy of their

19  deliberations and the unreviewability of their decisions.  Nothing in the record shows any

20  impediment to that independence.

21

22  B.    Instructions re: Assistant U.S. Attorneys

23       Defendant also contends that Judge Burns committed structural error by making

24  comments about the Assistant U.S. Attorney's duty to present evidence that "cuts against the

25  charge."  According to Defendant, not only did Judge Burns' comments contradict United

26  States v. Williams, 504 U.S. 36 (1992), but also discouraged independent investigation,

27  leading to inaccurate probable cause determinations.  Defendant reasons that given Judge

28  Burns' comments, the grand jurors would have assumed that if the prosecutor did not present

1    any exculpatory evidence, then none exists, rendering further investigation a waste of time.

2        Under <u>Williams</u>, prosecutors do not have a duty to present substantial exculpatory

3    evidence to the grand jury.  Although Assistant U.S. Attorneys apparently have an

4    employment duty to disclose "substantial evidence that directly negates the guilt" of a subject

5    of investigation (United States Attorneys' Manual § 9-11.233), it does not appear that they

6    have a broad duty to disclose all evidence that may be deemed exculpatory or adverse to

7    the Government's position.

8        Accordingly, Judge Burns' comments regarding the duty of Assistant U.S. Attorneys

9    to present adverse evidence were inaccurate.  However, Judge Burns' comments do not rise

10   to the level of structural error.  As discussed above, the video and Judge Burns stressed that

11   the grand jury was independent of the Government.  The video and Judge Burns also

12   explained to the jury that they could direct the Assistant U.S. Attorney to subpoena additional

13   documents or witnesses.  App. 1 to Gov't Response at 11, 24.   The jurors were also told

14   about their right to pursue their own investigation, even if the Assistant U.S. Attorney

15   disagrees with the grand jury's decision to pursue the subject.  <u>Id.</u> at 12.

16       In light of the foregoing instructions, the Court does not agree that the grand jurors

17   would assume that if the Government did not present any exculpatory evidence, none exists.

18   A reasonable juror would understand that the Assistant U.S. Attorney may not be aware of

19   certain exculpatory evidence, whether due to legitimate circumstances or inadequate

20   investigation, and that further investigation by the grand jury may be needed to properly

21   evaluate the evidence before them.   Furthermore, Judge Burns told the jury that "in *most*

22   instances" the U.S. Attorneys are duty-bound to present exculpatory evidence.  App. 1 to

23   Gov't Response at 20.  Based on this qualifying language, the grand jurors would have

24   understood that the prosecutor is not always bound to present exculpatory evidence.  Thus,

25   "the structural protections of the grand jury" have not "been so compromised as to render the

26   proceedings fundamentally unfair."  <u>Bank of Nova Scotia v. United States</u>, 487 U.S. 250, 257

27   (1988).

28       If Defendant can establish that the Government in fact knew of exculpatory evidence

11

07cr0491 BTM

1  that was not presented to the grand jury and that this failure to present exculpatory evidence,

2  in conjunction with Judge Burns' comments, "substantially influenced the grand jury's

3  decision to indict" or raises "grave doubt" that the decision to indict was free from the

4  substantial influence of such events, the Court may dismiss the indictment under its

5  supervisory powers. <u>Bank of Nova Scotia</u>, 487 U.S. at 256. Therefore, the Court will grant

6  Defendant leave to conduct discovery regarding what evidence was presented to the grand

7  jury. If, based upon the discovery, Defendant can establish that he suffered actual prejudice,

8  Defendant may renew his motion to dismiss the indictment.

9

10                          **IV. <u>CONCLUSION</u>**

11         For the reasons discussed above, Defendant's Motion to Dismiss the Indictment Due

12  to Erroneous Grand Jury Instruction is **DENIED WITHOUT PREJUDICE**.

13

14  **IT IS SO ORDERED.**

15

16  DATED:  October 11, 2007

17                                    _Barry Ted Moskowitz_

18                                    Honorable Barry Ted Moskowitz
                                      United States District Judge

19

20

21

22

23

24

25

26

27

28

07cr0491 BTM