1  KAREN P. HEWITT
   United States Attorney
2  STEWART M. YOUNG
   Assistant U.S. Attorney
3  California State Bar No. 234889
   United States Attorney's Office
4  Federal Office Building
   880 Front Street, Room 6293
5  San Diego, California  92101-8893
   Telephone: (619) 557-6228
6
   Attorneys for Plaintiff
7  UNITED STATES OF AMERICA

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,        )    CRIMINAL CASE NO. 3:08-CR-1626 WQH
                                     )
12                                   )    DATE:        June 30, 2008
                  Plaintiff,         )    TIME:        2:00 P.M.
13                                   )
                                     )    GOVERNMENT'S RESPONSE AND
14       v.                          )    OPPOSITION TO DEFENDANTS' MOTIONS
                                     )
15                                   )    [10-1] TO COMPEL DISCOVERY;
    MARTIN MENDEZ-LAGUNAS,           )    [10-2] TO PRESERVE EVIDENCE;
16                                   )    [10-3] FOR LEAVE TO FILE FURTHER
                  Defendant.         )    MOTIONS;
17                                   )    [11-1] TO SUPPRESS STATEMENTS; AND
                                     )    [11-2] TO DISMISS THE INDICTMENT DUE
18                                   )    TO MISINSTRUCTION OF THE GRAND
                                     )    JURY;
19                                   )
                                     )    TOGETHER WITH A STATEMENT OF THE
20  _____ )    FACTS AND THE MEMORANDUM OF
                                          POINTS AND AUTHORITIES, AND
21                                        GOVERNMENT'S MOTIONS FOR:

22                                        (1) RECIPROCAL DISCOVERY

23
                                          _____
24       COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

25  KAREN P. HEWITT, United States Attorney, and Stewart M. Young, Assistant United States Attorney,

26  hereby files its Response and Opposition to Defendant's Motion to Compel Discovery, Preserve

27  Evidence, to Suppress Statements, to Dismiss the Indictment Due to Misinstruction of the Grand Jury,

28  for Leave to File Further Motions, and its Motion for Reciprocal Discovery.  This response and motion

    is based upon the files and records of the case together with the attached statement of facts and

memorandum of points and authorities.

## I

## STATEMENT OF THE CASE

On May 21, 2008, the Government filed a one-count indictment charging Martin Mendez-Lagunas ("Defendant") with violating 8 U.S.C. § 1326(a) and (b), deported alien found in the United States.  On May 22, 2008, Defendant was arraigned on the Indictment and entered a plea of not guilty.

## II

## STATEMENT OF FACTS

On April 26, 2008, Border Patrol Agent Jeffrey Bottcher was performing linewatch duties approximately ½ mile west of the Calexico Port of Entry.  At approximately 12:01 am, a Remote Video Surveillance System (RVSS) operator advised agents that four persons were attempting to enter the United States by swimming or wading north through the New River (the river flowing north from the United States and Mexico border).

BPA Bottcher responded to the location identified by the RVSS operator.  He saw four persons in the river and identified himself as a Border Patrol Agent.  After identifying himself, he requested the four subjects exit the river.  He then conducted field interviews regarding citizenship and nationality.  One of the four subjects, later identified as the Defendant, stated he was a citizen and national of Mexico, and further stated he did not have immigration documents allowing him to enter or remain in the United States.  All four persons were arrested and transported to the Calexico Border Patrol Station for processing.

On that day, from approximately 11:45 pm, to 3:00 am, on April 26, 2008, the Calexico Border Patrol Station was experiencing technical difficulties with the Department of Homeland Security IDENT/IAFIS database.  Accordingly, Border Patrol was unable to process Defendant, or determine his identity (and criminal record) through fingerprint checks until after 3:00 am.  During this processing, which included contacting the El Centro Border Patrol Station for a more in-depth criminal history check (once his identity was determined through fingerprint processing), it was determined that Defendant had been previously deported from the United States on at least one occasion, including February 25, 2003.

### III

**GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION FOR DISCOVERY**

The United States intends to fully comply with its discovery obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Jenks Act, 18 U.S.C. § 3500, and Rule 16 of the Federal Rules of Criminal Procedure. Thus far, the United States has produced over 143 pages of discovery as well as tapes of the Defendant at Border Patrol processing. Government counsel has provided relevant copies of all discoverable documents in the defendant's A-File. Defendant's specific requests are addressed below.

**(1) The Defendant's Statements**

The United States recognizes its obligation under Rule 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and Defendant's written statements. The United States has produced all of Defendant's oral and written statements that are known to the undersigned Assistant U.S. Attorney at this date. If the United States discovers additional written or oral statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant.

The United States has no objection to the preservation of the handwritten notes taken by any of the United States' agents and officers. <u>See</u> <u>United States v. Harris</u>, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the United States objects to providing Defendant with a copy of any rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. <u>See</u> <u>United States v. Brown</u>, 303 F.3d 582, 590 (5th Cir. 2002); <u>United States v. Coe</u>, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The United States is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined under 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. <u>United States v. Spencer</u>, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute "statements" in accordance with the Jencks Act.

See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendants that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to the Defendants.

### (2) Arrest Reports, Notes and Dispatch Tapes

The United States has provided the Defendant with arrest reports. As noted previously, agent rough notes, if any exist, will be preserved, but they will not be provided as part of Rule 16 discovery. The United States is unaware of any dispatch tapes regarding Defendant's apprehension, but has requested the Border Patrol to preserve these if they do exist. If the United States becomes aware of such dispatch tapes, and those tapes fall under Rule 16 discovery obligations, the United States will provide those tapes. **Additionally, the United States will not provide the location of any permanent remote surveillance devices. Such a request is wholly outside of the scope of any discovery request, nor is germane to the prosecution of Defendant. Unless Defendant can articulate some relevant theory under which this material is relevant to his defense, the United States opposes this request outright.**

### (3) Brady Material

The United States is well aware of, and will continue to perform, its duty under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case. As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information

08-CR-1626 WQH

favorable to the defense that meets the appropriate standard of materiality." Id. at 774-775 (citation omitted).

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

Finally, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

**(4) Sentencing Information**

Defendant claims that the United States must disclose any information affecting Defendant's sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963). The United States respectfully contends that it has no such disclosure obligation under Brady.

The United States is not obligated under Brady to furnish a defendant with information which he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the defendant. In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect their guideline ranges, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to his sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Additionally, the United States is unaware of any cooperation, or even attempted cooperation, provided by Defendant. Accordingly, Defendant's demand for this information is

premature.

### (5) Defendant's Prior Record

The United States will provide the Defendant with a copy of his criminal record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(B). In fact, the United States has already provided that in its most recent discovery to Defendant.

### (6) Proposed 404(b) and 609 Evidence

Should the United States seek to introduce any similar act evidence pursuant to Federal Rules of Evidence 404(b) or 609, the United States will provide Defendant with official notice of its proposed use of such evidence and information about such bad acts at the time the United States' trial memorandum is filed.

### (7) Evidence Seized

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or intended for use by the United States as evidence in chief at trial, or obtained from or belongs to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

### (8) Preservation of Evidence

The United States will preserve all evidence to which Defendant is entitled pursuant to the relevant discovery rules. However, the United States objects to any blanket request to preserve all physical evidence.

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or intended for use by the United States as evidence in chief at trial, or obtained from or belong to Defendant, including photographs. The United States has made the evidence available to Defendant and his investigators and will comply with any request for inspection.

**(9) Henthorn Evidence**

The United States will continue to comply with its obligations pursuant to <u>United States v.</u> <u>Henthorn</u>, 931 F.2d 29 (9th Cir. 1991). To comply, the United States will request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. <u>United States v. Booth</u>, 309 F.3d 566, 574 (9th Cir. 2002) (<u>citing</u> <u>United States v. Jennings</u>, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an <u>in camera</u> inspection and review.

**(10) Tangible Objects**

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or intended for use by the United States as evidence during its case-in-chief at trial, or obtained from or belongs to Defendant. The United States need not, however, produce rebuttal evidence in advance of trial. <u>United States v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984).

**(11) Expert Witnesses**

The United States will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Federal Rules of Evidence 702, 703 or 705.

**(12) Evidence of Bias or Motive to Lie**

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

**(13) Impeachment Evidence**

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

**(14) Criminal Investigation of Government Witness**

Defendant is not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities.  "[T]he criminal records of such [Government] witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a defendant with the criminal records of the Government's intended witnesses.") (citing Taylor, 542 F.2d at 1026).

The United States will, however, provide the conviction record, if any, which could be used to impeach witnesses the United States intends to call in its case-in-chief.  When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

**(15) Evidence Affecting Perception, Recollection, Communication or Truth-Telling**

The United States is unaware of any evidence indicating that a prospective witness has a problem with perception, recollection, communication, or truth-telling.

**(16) Witness Addresses**

The United States has provided Defendant with the reports containing the names of the agents involved in the apprehension and interviews of Defendant.  A defendant in a non-capital case, however, has no right to discover the identity of prospective Government witnesses prior to trial.  See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996).   Nevertheless, in its trial memorandum, the United States will provide Defendants with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required.  See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).

The United States objects to any request that it provide a list of every witness to the crimes

charged who will not be called as a United States witness. "There is no statutory basis for granting such broad requests," and a request for the names and addresses of witnesses who will not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(C)." United States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)). The United States is not required to produce all possible information and evidence regarding any speculative defense claimed by Defendants. Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under Brady).

The United States will not provide the defendant with the witness addresses of the three persons also caught with the defendant sneaking into the United States, unless the defendant can articulate a theory under which such evidence will be relevant and germane to his defense. If the United States is in possession of those addresses, the United States will then provide them to defendant. But, the United States objects to a blanket request for such addresses as stated above.

### (17) Witnesses Favorable to the Defendant

As stated earlier, the United States will continue to comply with its obligations under Brady and its progeny. At the present time, the United States is not aware of any witnesses who have made an arguably favorable statements concerning Defendant or who could not identify him or who were unsure of his identity or participation in the crime charged.

### (18) Statements Relevant to the Defense

To reiterate, the United States will comply with all of its discovery obligations. However, "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Gardner, 611 F.2d at 774-775 (citation omitted).

### (19) Jencks Act Material

The Jencks Act, 18 U.S.C. § 3500, requires that, after a United States witness has testified on direct examination, the United States must give the Defendant any "statement" (as defined by the Jencks Act) in its possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks Act is (1) a written statement made by

the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e).  If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).  While the United States is only required to produce all Jencks Act material after the witness testifies, the United States plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

Additionally, no witness who testified before the grand jury will testify at trial, so the United States does not anticipate that it will have to provide any of the Grand Jury transcripts to Defendant.

### (20) Giglio Information

As stated previously, the United States will comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and Giglio v. United States, 405 U.S. 150 (1972).

### (21) Agreements Between the Government and Witnesses

The United States is unaware of any agreement between it and any cooperating witnesses, who have committed crimes, but were not charged, so that they may testify for the Government in this case. The United States will comply with all of its obligations under Brady, Giglio, Jencks Act, and Rule 16, regarding any potential cooperating witness, including any of the material witnesses.  Again, at this time, the United States is unaware of any agreement between any of these potential witnesses, but will provide any relevant and pertinent information if such an agreement arises.

### (22) Informants and Cooperating Witnesses

If the Government determines that there is a confidential informant whose identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," it will disclose that person's identity to the Court for in-chambers inspection. See Roviaro v. United States, 353 U.S. 53, 60-61 (1957); United States v. Ramirez-Rangel, 103 F.3d 1501, 1505 (9th Cir. 1997).

The United States has already stated it will comply with its Brady, Giglio, Jencks Act, and further Rule 16 discovery obligations.  The United States will comply with the structure of Roviaro if it

determines that any confidential informant information is "relevant and helpful to the defense of [the] accused, or is essential to the fair determination of a cause." Roviaro, 353 U.S. at 60.

As the Court is aware, the Supreme Court has declined to adopt an absolute rule requiring disclosure of an informant's identity whenever it is relevant or helpful to a defendant's case. See Roviaro v. United States, 353 U.S. at 62. Indeed, as the D.C. Circuit stated in United States v. Skeens, 449 F.2d 1066, 1071 (D.C. Cir.1971), a "heavy burden ... rests on an accused to establish that the identity of an informant is necessary to his defense." Id. at 1070. "Mere speculation" that an informant's testimony may assist the defendant is not sufficient to meet this burden. United States v. Mangum, 100 F.3d 164, 172 (D.C. Cir.1996). In determining whether the Defendant has met this burden, the Court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense," all the while "taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Roviaro, 353 U.S. at 62. The United States will comply with its Rovario obligations, but it also requests that any information provided to the Defendants be subject to in camera review by the Court.

**(23) Bias by Informants or Cooperating Witnesses**

As stated above, the United States is unaware of any evidence indicating that any prospective witness, whether Government agent, Informant, or Cooperating Witness, is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses, whether Government agent, Informant, or Cooperating Witness, have a motive to falsify or distort testimony. It will comply with its Giglio obligations if it becomes aware of any indication of bias on behalf of any of these witnesses.

**(24) Personnel Records**

The United States will comply with its obligations under Henthorne. The United States objects to any further blanket request by the defendant absent a specific showing of necessity.

**(25) Inspection and Copying of the A-File**

The United States has provided 112 pages from the A-File, which includes all documents in the A-File except DACS print-outs and attorney notes. The United States has complied with its obligations to provide all of the relevant A-File documents to the defendant. If the Court deems that an order for

an A-File viewing is warranted, the United States submits that defendant will be able to see exactly all of the documents that it has turned over in discovery.

### (25) Residual Request

The United States has already complied with Defendant's request for prompt compliance with its discovery obligations prior to Indictment. The United States will continue to comply with all of its discovery obligations, but objects to the broad nature of Defendant's further discovery requests.

### IV

### NO OPPOSITION TO PRESERVATION OF THE EVIDENCE

Defendant has requested that the Court issue an order to preserve the evidence. The Government does not oppose such a preservation order.

### V

### DENY ANY MOTION TO SUPPRESS DEFENDANT'S STATEMENTS

Defendant moves to suppress statements made by him to agents prior to his arrest and post-arrest. It is important to note that defendant states that he made statements after arrest and then during an interrogation. It should be noted that the field statements occurred prior to defendant's arrest.

Furthermore, no required declaration has been filed to support either argument. Defendant also requests an evidentiary hearing to establish the facts and to aid the Court in deciding his suppression motion; however, he does not support his request with the required declaration. Accordingly, the United States believes that the requirements for such a suppression hearing have not been met. If the Court chooses to hold an evidentiary hearing on Defendant's motion at a future date, the United States would prove that Defendant's statements were voluntary and are, therefore, admissible.

A. Field Statements

Defendant argues that his statements made prior to his arrest were made while in custody. The Ninth Circuit has not articulated a bright-line rule for determining when an investigatory stop constitutes an arrest. Courts are instructed to considered the totality of the circumstances and whether reasonable people would conclude they were under arrest. See United States v. Alvarez, 899 F.2d 833, 836 (9th Cir. 1990). However, routine biographical questions have been found by the Supreme Court and the Ninth Circuit to be insufficient to trigger constitutional protections. See United States v. Brignoni-Ponce, 422

U.S. 873, 878-89 (1975); <u>United States v. Gonzalez-Sandoval</u>, 894 F.2d 1043, 1046 (9th Cir. 1990); <u>United States v. Perez</u>, 776 F.2d 797, 799 (9th Cir. 1985); <u>see also</u> <u>United States v. Galindo-Gallegos</u>, 244 F.3d 728, 731 (9th Cir.), <u>modified by</u> 255 F.3d 1154 (9th Cir. 2001).

Here, an agent came upon a group of four people swimming or wading through the New River north of the United States/Mexico border, and approximately ½ a mile from the Calexico Port of Entry. The entire group were wading in the New River. BPA Bottcher asked each person in the group as to their citizenship and whether they had documents allowing them to be present in the United States. The defendant stated that he was a citizen of Mexico and did not possess the requisite documents. All of this was manifestly proper procedure. Indeed, it would be improper for the agents to begin placing people under arrest before such a baseline inquiry was made. Therefore, Defendant's responses should be wholly admissible. <u>See</u> <u>Pennsylvania v. Muniz</u>, 496 U.S. 582, 601-04 (1990) (even if incriminating, answers elicited prior to <u>Miranda</u> warnings during procedures "necessarily attendant to the police procedure [are] held by the court to be legitimate" and admissible). Following discovery of the narcotics, agents timely advised Defendant that he was under arrest. Defendant was also timely advised of his <u>Miranda</u> warnings after his arrest. He further read through the <u>Miranda</u> warnings in Spanish, initialed each warning, and signed at the bottom in agreement of waiving his <u>Miranda</u> rights. Thus, all statements prior to Defendant's arrest are admissible; and this Court should deny the motion to suppress any statements made in the field or after his arrest.

### B. Post-Arrest, the Government Properly Mirandized Defendant.

In this case, Miranda warnings preceded custodial interrogation of Defendant. When a person has been deprived of his or her freedom of action in a significant way, Government agents must administer Miranda warnings prior to questioning the person. Miranda v. Arizona, 384 U.S. 436 (1966). Such a requirement, however, has two components: (1) custody, and (2) interrogation. Id. at 477-78.

### C. Defendant Waived His Miranda Rights and Agreed to Speak with Agents

No threats, physical intimidation, or psychological pressure was exerted by the agents to induce Defendant's statements. <u>Hutto v. Ross</u>, 429 U.S. 28, 30 (1976); <u>Townsend v. Sain</u>, 372 U.S. 293, 307 (1963). While the Government argues that Defendants' statements were not coerced or involuntarily provided and argues that any <u>Miranda</u> waiver was voluntary, the Government does not oppose an

evidentiary hearing conducted by the court on this issue.

According to <u>Davis v. Washington</u>, 512 U.S. 452, 458 (1994), and <u>United States v. Younger</u>, 398 F.3d 1179, 1187 (9th Cir. 2005), officers are free to question a suspect as long as he or she effectively waives the right to counsel. In this case, defendant was asked whether he wanted to speak with agents after being read his <u>Miranda</u> rights. Although he first received his administrative rights, he was then Mirandized and explained these rights. Defendant waived his <u>Miranda</u> rights and agreed to speak to agents.

Defendant's post-arrest statements are admissible because, as demonstrated on the video recorded statement and the transcript, he knowingly, intelligently, and voluntarily waived his <u>Miranda</u> rights. A statement made in response to custodial interrogation is admissible under <u>Miranda v. Arizona</u>, 384 U.S. 437 (1966) and 18 U.S.C. § 3501 if a preponderance of the evidence indicates that the statement was made after an advisement of rights, and was not elicited by improper coercion. <u>See</u> <u>Colorado v. Connelly</u>, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and <u>Miranda</u> determinations; valid waiver of <u>Miranda</u> rights should be found in the "absence of police overreaching"). Although the totality of circumstances, including characteristics of the defendant and details of the interview, should be considered, improper coercive activity must occur for suppression of any statement. <u>See</u> <u>id.</u> (noting that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'"); <u>cf.</u> <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226 (1973) ("Some of the factors taken into account have included the youth of the accused; his lack of education, or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep.") (citations omitted). While it is possible for a defendant to be in such a poor mental or physical condition that they cannot rationally waive their rights (and misconduct can be inferred based on police knowledge of such condition, <u>Connelly</u>, 479 U.S. at 167-68), the condition must be so severe that the defendant was rendered utterly incapable of rational choice. <u>See</u> <u>United States v. Kelley</u>, 953 F.2d 562, 564 (9th Cir.1992) (collecting cases rejecting claims of physical/mental impairment as insufficient to prevent exercise of rational choice).

Defendant argues that under <u>United States v. San Juan Cruz</u>, 314 F.3d 384 (9th Cir. 2002), any

statements that he made post-Miranda should be suppressed because he was first advised of his

administrative rights.  Again, a declaration by the defendant would be helpful at this juncture, because

the touchstone of this argument is whether the administrative rights reading, and then the subsequent

Miranda warning, were done in a manner that would be confusing or would be "clear and not susceptible

to equivocation."  Id. at 387.  Indeed, if the agents read the administrative rights to the defendant, placed

him in the holding cell, and then returned and brought him back out, to read him his Miranda rights, a

clear break would be noted between the two rights.  Additionally, it is unknown whether the agents

clearly identified that his administrative rights did not now apply, and that these were new and separate

rights in connection with a prosecution, given that defendant has not provided a copy of the transcript

to the Court (nor a declaration from the defendant that these agents did not inform him that his

administrative rights were void).  Accordingly, if the Court is inclined to consider this motion, the

United States would not oppose a evidentiary hearing on this issue, given the allegations of the

defendant.

Here, at least according to the DVD recording, Defendant was properly advised of his Miranda

rights following arrest.  Again, as demonstrated on the DVD recording, Defendant acknowledged that

he understood his rights and agreed to answer questions without the presence of an attorney.

C. No Violation of 18 U.S.C. §3501

As stated in the agent reports, the IDENT/IAFIS database in the Calexico Border Patrol Station

was experiencing technical difficulties from 11:45 pm until 3:00 am.  Accordingly, the Border Patrol

was unable to even begin processing persons apprehended after 11:45 pm until 3:00 pm.  Although

arrested around 12:10 am, the delay in processing, and a determination about whether Defendant was

eligible for prosecution under 8 U.S.C. § 1326, was due to the computer database not working until 3:00

am.  Given that Border Patrol then identified Defendant as eligible for 1326 prosecution (given his

criminal record), he received his Miranda warnings within six hours of the database being back up and

running at the Calexico Border Patrol Station.  The United States submits that these circumstances do

not violate 18 U.S.C. § 3501.

15                    08-CR-1626 WQH

1

### D. No Required Declaration Submitted by Defendant

2    Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal

3   Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when

4   the defendant adduces specific facts sufficient to require the granting of the defendant's motion.

5   See United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (where "defendant, in his motion to

6   suppress, failed to dispute any material fact in the government's proffer, . . . . the district court was not

7   required to hold an evidentiary hearing"); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274

8   (S.D. Cal. 1991) (boilerplate motion containing indefinite and unsworn allegations was insufficient to

9   require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1.  The local

10  rule further provides that "the Court need not grant an evidentiary hearing where either party fails to

11  properly support its motion for opposition."

12    No rights are infringed by the requirement of such a declaration.  Requiring a declaration from

13  a defendant in no way compromises defendant's constitutional rights, as declarations in support of a

14  motion to suppress cannot be used by the United States at trial over a defendant's objection.  See Batiste,

15  868 F.2d at 1092 (proper to require declaration in support of Fourth Amendment motion to suppress );

16  Moran-Garcia, 783 F. Supp. at 1271-74 (extending Batiste to Fifth Amendment motion to suppress).

17  Moreover, Defendant has as much information as the Government in regards to the statements he made.

18  See Batiste, 868 F.2d at 1092.  At least in the context of motions to suppress statements, which require

19  police misconduct incurred by Defendant while in custody, Defendant certainly should be able to provide

20  the facts supporting the claim of misconduct. Finally, any objection that 18 U.S.C. § 3501 requires an

21  evidentiary hearing in every case is of no merit.  Section 3501 requires only that the Court make a

22  pretrial determination of voluntariness "out of the presence of the jury."  Nothing in section 3501 betrays

23  any intent by Congress to alter the longstanding rule vesting the form of proof on matters for the court

24  in the discretion of the court.  Batiste, 868 F.2d at 1092 ("Whether an evidentiary hearing is appropriate

25  rests in the reasoned discretion of the district court.") (citation and quotation marks omitted).

26    The Ninth Circuit has expressly stated that a United States proffer based on the statement of facts

27  attached to the complaint is alone adequate to defeat a motion to suppress where the defense fails to

28  adduce specific and material facts.  See Batiste, 868 F.2d at 1092.  Moreover, the Ninth Circuit has held

that a District Court may properly deny a request for an evidentiary hearing on a motion to suppress evidence because the defendant did not properly submit a declaration pursuant to a local rule. See United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991); United States v. Howell, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."); see also United States v. Walczak, 783 F. 2d 852, 857 (9th Cir. 1986) (holding that evidentiary hearings on a motion to suppress are required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to whether contested issues of fact exist). Even if Defendant provides factual allegations, the Court may still deny an evidentiary hearing if the grounds for suppression consist solely of conclusory allegations of illegality. See United States v. Wilson, 7 F.3d 828, 834-35 (9th Cir. 1993) (District Court Judge Gordon Thompson did not abuse his discretion in denying a request for an evidentiary hearing where the appellant's declaration and points and authorities submitted in support of motion to suppress indicated no contested issues of fact).

As Defendant in this case has failed to provide declarations alleging specific and material facts, the Court would be within its discretion to deny Defendant's motion. Indeed, such a denial may properly be made based solely on the statement of facts attached to the complaint in this case, without any further showing by the United States. Moreover, Defendant had an opportunity, in his moving papers, to proffer any facts alleging violations of his rights. However, Defendant fails to generate a disputed factual issue requiring an evidentiary hearing. See Howell, 231 F.3d at 623.

## IV

### THE INDICTMENT SHOULD NOT BE DISMISSED BECAUSE THE GRAND JURY INSTRUCTIONS PROVIDED TO THE JANUARY 2007 GRAND JURY DO NOT RUN AFOUL OF CURRENT NINTH CIRCUIT LAW

A.    THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND THE INDICTMENT SHOULD NOT BE DISMISSED

1.    Introduction

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by District Judge Larry A. Burns on January 10, 2007. [Memorandum of Points and

Authorities, pp.8 (hereinafter "Memorandum")[1/]  Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found these two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the indictment should be dismissed.

In making his arguments concerning the grand jury instructions Defendant urges this Court to dismiss the indictment on two separate basis relating to grand jury procedures both of which were discussed in United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992).   Concerning the first attacked instruction, Defendant urges this Court to dismiss the indictment by exercising its supervising powers over grand jury procedures.  [Memorandum p.22.]  This is a practice the Supreme Court discourages as Defendant acknowledges citing United States v. Williams, 504 U.S. 36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure. ").  [Id.]  Isgro reiterated:

> [A] district court may draw on its supervisory powers to dismiss an indictment. The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice." Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct.   Absent such prejudice-that is, absent " 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]"-a dismissal is not warranted.

974 F.2d at 1094 (Citation omitted, Emphasis added).  Concerning the second attacked instruction, in an attempt to dodge the holding in Williams, Defendant appears to base his contentions on the Constitution as a reason to dismiss the indictment.  Concerning that kind of a contention Isgro stated:

> [A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant." Constitutional error may also be found "if [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."

---

[1/]     Defendant supplies a "Partial Transcript" of the grand jury proceedings which records the instructions to the impaneled grand jurors after the voir dire had been conducted. [Appendix 1.] To amplify the record herein, we are supplying a redacted "Supplemental Transcript" which records relevant portions of the voir dire proceedings.  [Appendix 2.]

08-CR-1626 WQH

974 F.2d at 1094 (Citation omitted)[2/]

The portions of the two relevant instructions approved in <u>Navarro-Vargas</u> were:

You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal.   That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems.   It is entirely proper that you should receive this assistance.   If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury nullification.'"[3/]  408 F.3d at 1203 (Footnote omitted).   "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law;   it receives no briefs or arguments from the parties.   The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'"  <u>Id</u>.

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction, the court stated:

We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution.    The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . . .  The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

_____

[2/]      In <u>Isgro</u> the defendants choose the abrogation of constitutional rights route when asserting that prosecutors have a duty to present exculpatory evidence to grand juries.   They did not prevail.   974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to support the dismissal of the indictment."  (relying on <u>Williams</u>)).

[3/]      The Court acknowledged that as a matter of fact jury nullification does take place, and there is no way to control it.  "We recognize and do not discount that some grand jurors might <u>in fact</u> vote to return a no bill because they regard the law as unwise at best or even unconstitutional.   For all the reasons we have discussed, there is <u>no post hoc</u> remedy for that;   the grand jury's motives are not open to examination."  408 F.3d at 1204 (Emphasis in original.)

08-CR-1626 WQH

1   408 F.3d at 1207. "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury

2   of the presumption of regularity and good faith that the branches of government ordinarily afford each

3   other." Id.

4               2.    The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper

5        Concerning whether the new grand jurors should concern themselves with the wisdom of the

6   criminal laws enacted by Congress, Judge Burns' full instruction stated:

7        You understood from the questions and answers that a couple of people were excused,
         I think three in this case, because they could not adhere to the principle that I'm about to
8        tell you.

9               But it's not for you to judge the wisdom of the criminal laws enacted by congress;
         that is, whether or not there should be a federal law or should not be a federal law
10       designating certain activity is criminal is not up to you. That's a judgment that congress
         makes.

11              And if you disagree with the judgment made by congress, then your option is not
12       to say "Well I'm going to vote against indicting even though I think that the evidence is
         sufficient" or "I'm going to vote in favor of even though the evidence may be
13       insufficient." Instead, your obligation is to contact your congressman or advocate for
         a change in the laws, but not to bring your personal definition of what the law ought to
14       be and try to impose that through applying it in a grand jury setting.

15   Partial Transcript pp. 8-9.[4/]

16       Defendant acknowledges that in line with Navarro-Vargas, 'Judge Bums instructed the grand

17   jurors that they were forbidden 'from judg[ing] the wisdom of the criminal laws enacted by Congress;

18   that is, whether or not there should be a federal law or should not be a federal law designating certain

19   activity [as] criminal is not up to you.'" [Memorandum p. 9.] Defendant notes, however, that  "[t]he

20   instructions go beyond that, however, and tell the grand jurors that, should 'you disagree with that

21   judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting even

22   though I think that the evidence is sufficient' or 'I'm going to vote in favor of even though the evidence

23   maybe insufficient.'" Id. Defendant contends that this addition to the approved instruction, "flatly bars

24   the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution."

25

26       [4/]    The Supplemental Transcript supplied herewith (Appendix 1) recounts the excusing of
         the three individuals. This transcript involves the voir dire portion of the grand jury selection process,
27   and has been redacted, to include redaction of the individual names, to provide only the relevant three
         incidents wherein prospective grand jurors were excused. Specifically, the pages of the Supplemental
28   Transcript supplied are: page 15, line 10 - page 17, line 18; page 24, line 14 - page 28, line 2; page 38,
         line 9 - page 44, line 17.

08-CR-1626 WQH

Id.  Defendant further contends that the flat prohibition was preemptively reinforced by Judge Burns when he "referred to an instance in the grand juror selection process in which he excused three potential jurors," which resulted in his "not only instruct[ing] the grand jurors on his view of their discretion; [but his] enforc[ing] that view on pain of being excused from service as a grand juror."[5/] Id.

In concocting his theory of why Judge Burns erred, Defendant posits that the expanded instruction renders irrelevant the debate about what the word "should" means. [Memorandum p. 16-20.] Defendant contends, "the instruction flatly bars the grand jury from declining to indict because they disagree with a proposed prosecution."  Id.  This argument mixes-up two of the holdings in Navarro-Vargas in the hope they will blend into one.  They do not.

Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom of the criminal laws.  The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted by Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an expression of discretion.  Jury nullification is forbidden although acknowledged as a sub rosa fact in grand jury proceedings.  408 F.3d at 1204.  In this respect Judge Burns was absolutely within his rights, and within the law, when he excused the three prospective grand jurors because of their expressed inability to apply the laws passed by Congress.  Similarly, it was proper for him to remind the impaneled grand jurors that they could not question the wisdom of the laws.  As we will establish this reminder did not pressure the grand jurors to give up their discretion not to return an indictment.  Judge Burns' words cannot be parsed to say that they flatly bars the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution because they do not say that.  That aspect of a grand jury's discretionary power (i.e. disagreement with the prosecution) was dealt with in Navarro-Vargas in its discussion of another instruction wherein the term "should" was germane.[6/]  408 F.3d at 1204-06

---

[5/]    See Appendix 1.

[6/]    That instruction is not at issue here.  It read as follows:

[Y]our task is to determine whether the government's evidence as presented to you is sufficient to cause you to conclude that there is probable cause to believe that the accused is guilty of the offense charged.  To put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged.

08-CR-1626 WQH

("'Should' Indict if Probable Cause Is Found"). This other instruction bestows discretion on the grand jury not to indict.[7/] In finding this instruction constitutional, the court stated in words that ring true here, "It is the grand jury's position in the constitutional scheme that gives it its independence, not any instructions that a court might offer." 408 F.3d at 1206. The other instruction was also given by Judge Burns in his own fashion as follows:

> The function of the grand jury, in federal court at least, is to determine probable cause. That's the simple formulation that I mentioned to a number of you during the jury selection process. Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that an whether a certain person is associated with the commission of that crime, committed it or helped commit it.

> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward. If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Partial Transcript pp. 3-4.

> Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime. Either they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.

> To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

Partial Transcript p. 23.

While the new grand jurors were told by Judge Burns that they could not question the wisdom of the criminal laws per Navarro-Vargas, they were also told by Judge Burns they had the discretion not

---

408 F.3d at 1187.

[7/]     The court upheld the instruction stating:

> This instruction does not violate the grand jury's independence. The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause. As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir.2002) (Per curiam)). "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment. 408 F.3d at 1206.

1  to return an indictment per <u>Navarro-Vargas</u>.  Further, if a potential grand juror could not be dissuaded

2  from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential

3  jury nullification advocate.  <u>See</u>  <u>Merced v. McGrath</u>, 426 F.3d 1076, 1079-80 (9th Cir. 2005).  Thus,

4  there was no error requiring dismissal of this indictment or any other indictment by this Court exercising

5  its supervisory powers.

6       Further, a reading of the dialogues between Judge Burns and the three excused jurors found in

7  the Supplemental Transcript excerpts (Appendix 2) reflects a measured, thoughtful, almost mutual

8  decision, that those three individuals should not serve on the grand jury because of their views.  Judge

9  Burns' reference back to those three colloquies cannot be construed as pressuring the impaneled grand

10  jurors, but merely bespeaks a reminder to the grand jury of their duties.

11       Finally, even if there was an error, Defendant has not demonstrated he was actually prejudiced

12  thereby, a burden he has to bear. "Absent such prejudice-that is, absent 'grave' doubt that the decision

13  to indict was free from the substantial influence of [the misconduct]'-a dismissal is not warranted."

14  <u>Isgro</u>, 974 F.2d at 1094.

15       3.    The Addition to the "United States Attorney and his Assistant United
              States Attorneys" Instruction Did Not Violate the Constitution

16  Concerning the new grand jurors' relationship to the United States Attorney and the Assistant

17  U.S. Attorneys, Judge Burns variously stated:

18       [T]here's a close association between the grand jury and the U.S. Attorney's Office.
          . . .
19       You'll work closely with the U.S. Attorney's Office in your investigation of cases.

20  Partial Transcript p. 11

21       [I]n my experience here in the over 20 years in this court, that kind of tension does not
          exist on a regular basis, that I can recall, between the U.S. Attorney and the grand juries.
22        They generally work together.

23  Partial Transcript p. 12.

24       Now, again, this emphasizes the difference between the function of the grand jury
          and the trial jury.  You're all about probable cause.  If you think that there's evidence out
25        there that might cause you to say "well, I don't think probable cause exists," then it's
          incumbent upon you to hear that evidence as well.  As I told you, in most instances, the
26        U.S. Attorneys are duty-bound to present evidence that cuts against what they may be
          asking you to do if they're aware of that evidence.
27

28

Partial Transcript p. 20.[8/]

As a practical matter, you will work closely with government lawyers.  The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters.  It's entirely proper that you should receive the assistance from the government lawyers.

But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone.  If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

Partial Transcript pp. 26-27.

Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," Defendant proposes that by making that statement, "Judge Burns also assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause." [Memorandum p.22-24.]  Defendant then ties this statement to the later instruction which "advis[ed] the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and ... they'll act in good faith in all matters presented to you.'"  Id.  From this lash-up Defendant contends:

These instructions create a presumption that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:

(1) I have to consider evidence that undercuts probable cause.

(2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.

(3) Because no such evidence was presented to me, I may conclude that there is none. Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

The instructions therefore discourage investigation--if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be week

---

[8/]     Just prior to this instruction, Judge Burns had informed the grand jurors that:

[T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

08-CR-1626 WQH

[sic], but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

[Memorandum p.23-24.] (Emphasis added.)[9/]

Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," is directly contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."[10/] (Emphasis added)). See also, United States v. Haynes, 216 F.3d 789, 798 (9th Cir. 2000) ("Finally, their challenge to the government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury." (citing Williams)) (Emphasis added).

However, the analysis does not stop there. Prior to assuming his judicial duties, Judge Burns was a member of the United States Attorney's Office, and made appearances in front of the federal grand

---

[9/]    The term "presumption" is too strong a word in this setting. The term "inference" is more appropriate. See McClean v. Moran, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three. 963 F.2d at 1308-09 (discussing Francis v. Franklin, 471 U.S. 314 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Ulster County Court v. Allen, 442 U.S. 140, 157 & n. 16 (1979)). See also United States v. Warren, 25 F.3d 890, 897 (9th Cir.1994).

[10/]    Note that in Williams the Court established:

Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury. Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress," he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

504 U.S. at 45 (Citation omitted). The Court concluded, "we conclude that courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings." 504 U.S. at 55. See also, United States v. Haynes, 216 F.3d 789, 797-98 (9th Cir. 2000). However, the Ninth Circuit in Isgro used Williams' holding that the supervisory powers would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms. 974 F.2d at 1096.

jury.[11]/  As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual ("USAM").[12]/  Specifically, it appears he is aware of USAM Section 9-11.233 thereof which reads:

> In <u>United States v. Williams</u>, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the <u>policy</u> of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of <u>substantial evidence that directly negates the guilt</u> of a subject of the investigation, the prosecutor <u>must present or otherwise disclose</u> such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should <u>not result in dismissal of an indictment,</u> appellate courts <u>may refer violations of the policy to the Office of Professional Responsibility</u> for review.

(Emphasis added.)[13]/  This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose '<u>substantial evidence</u> that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, <u>see</u> USAM § 9-11.233 ." (Emphasis added.)[14]/

The facts that Judge Burns' statement contradicts <u>Williams</u>, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant. No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-imposed duty to the new grand jurors.  Simply stated, in the vast majority of the cases the reason the

---

[11]/      He recalled those days when instructing the new grand jurors. [Partial Transcript pp. 12, 14-16, 17-18.]

[12]/      The USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/ usam/index.html

[13]/      <u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, because of the accessability of the USAM on the internet, as the District Judge overseeing the grand jury he certainly could determine the required duties of the United States Attorneys appearing before the grand jury from that source.

[14]/      <u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm

Similarly, this new section does not bestow any procedural or substantive rights on defendants.

Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶ "E".  <u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm

prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory evidence exists.[15/]  If it does exist, as mandated by the USAM, the evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by an Office of Professional Responsibility investigation.  Even if there is some nefarious slant to the grand jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there is none, the negative inference created thereby in the minds of the grand jurors is legitimate.  In cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from its investigation or from submissions tendered by the defendant.[16/]  There is nothing wrong  in this scenario with a grand juror inferring from this state-of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution.  In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992) the Ninth Circuit while reviewing Williams established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything  to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does not require dismissal of the indictment.  974 F.2d at 1096 ("Williams clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations.").  That the USAM imposes a duty on

---

[15/]     Recall Judge Burns also told the grand jurors that:

[T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

[16/]     Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause]," Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no competent defense attorney is going to preview the defendant's defense story prior to trial assuming one will be presented to a fact-finder.  Therefore, defense submissions to the grand jury will be few and far between.

1    United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant since

2    by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed

3    policy.[17]/ Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was

4    unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast

5    an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or

6    any case.  The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates

7    Attorneys are "good guys," which was authorized by Navarro-Vargas. 408 F.3d at 1206-07 ("laudatory

8    comments . . . not vouching for the prosecutor").  But he also repeatedly "remind[ed] the grand jury that

9    it stands between the government and the accused and is independent,"  which was also required by

10   Navarro-Vargas. 408 F.3d at 1207.  In this context the unnecessary "duty-bound" statement does not

11   mean the instructions were constitutionally defective requiring dismissal of this indictment or any

12   indictment.

13          The "duty bound" statement constitutional contentions raised by Defendant do not indicate that

14   the "'structural protections of the grand jury have been so compromised as to render the proceedings

15   fundamentally unfair, allowing the presumption of prejudice' to the defendant," and "[the] defendant

16   can[not] show a history of prosecutorial misconduct that is so systematic and pervasive that it affects

17   the fundamental fairness of the proceeding or if the independence of the grand jury is substantially

18   infringed."  Isgro, 974 F.2d at 1094 (Citation omitted).  Therefore, this indictment, or any other

19   indictment, need not be dismissed.

20          Additionally, on October 11, 2007, Judge Moskowitz recently denied a similar motion presented

21   to him in United States v. Manuel Martinez-Covarrubias, Case 07-CR-491 BTM.  And on December

22   5, 2007, Judge Houston denied a similar motion presented to him in United States v. Diana Jimenez-

23   Bermudez, Case 07-1372 JAH.  The United States agrees with a substantial portion of the Judge

24   Moskowitz decision, and agrees with the Judge Houston decision.  While not authorities for this Court,

25   the United States believes the reasoning, especially of the Judge Houston decision, are persuasive and

26   attaches both orders as Attachment 3 and 4 for the Court's perusal.

27   _____

28          [17]/     The apparent irony is that although an Assistant U.S. Attorney will not lose a case for failure to present exculpatory information to a grand jury per Williams, he or she could lose his or her job with the United States Attorney's Office for such a failure per the USAM.

## VII

## NO OPPOSITION TO DEFENDANT'S REQUEST FOR LEAVE TO FILE FURTHER MOTIONS

The United States does not object to the granting of leave to allow Defendants to file further motions, as long as the order applies equally to both parties and additional motions are based on newly discovered evidence or discovery provided by the United States subsequent to the instant motion at issue.

## VIII

## MOTION FOR RECIPROCAL DISCOVERY

The United States hereby moves for reciprocal discovery from the Defendant. To date Defendant has not provided any. The United States, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, requests that Defendant permit the United States to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of Defendant and which Defendant intends to introduce as evidence in their case-in-chief at trial.

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of Defendant, which Defendant intend to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendants intend to call as a witness. Because the United States will comply with Defendant's request for delivery of reports of examinations, the United States is entitled to the items listed above under Rule 16(b)(1) of the Federal Rules of Criminal Procedure. The United States also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the United States receives the discovery to which it is entitled.

In addition, Rule 26.2 of the Federal Rules of Criminal Procedure requires the production of prior statements of all witnesses, except a statement made by Defendant. This rule thus provides for the reciprocal production of Jencks statements. The time frame established by the rule requires the statement to be provided after the witness has testified. To expedite trial proceedings, the United States hereby requests that Defendant be ordered to supply all prior statements of defense witnesses by a

reasonable date before trial to be set by the Court.  Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and/or reports.

**IX**

**CONCLUSION**

For the above stated reasons, the United States respectfully submits its Response and Opposition to Defendant's Motions for Discovery and to Suppress Defendant's Statements, and requests that its Motion for Reciprocal Discovery be granted.

DATED: June 26, 2008

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney


*s/Stewart M. Young*
STEWART M. YOUNG
Assistant U.S. Attorney
Email: stewart.young@usdoj.gov

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08-CR-1626 WQH |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| MARTIN MENDEZ-LAGUNAS, | ) | |
| Defendants. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, Stewart M. Young, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the United States' Response and Opposition to Defendant's Motions for Discovery and to Suppress Statements and its Motion for Reciprocal Discovery on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. David M.C. Peterson, Esq.

2. Kris Krause, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 26, 2008.

s/ *Stewart M. Young*
Stewart M. Young