**DAVID M.C. PETERSON**
California Bar No. 254498
**KRIS J. KRAUS**
California State Bar No. 233699
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California  92101-5008
Telephone:  (619) 234-8467
david_peterson@fd.org

Attorneys for Mr. Mendez-Lagunas

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE WILLIAM Q. HAYES)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 08CR1626-WQH |
| Plaintiff, | ) ) | Date:   September 15, 2008 |
| v. | ) ) | Time:  2:00 p.m. |
| MARTIN MENDEZ-LAGUNAS, | ) ) | NOTICE OF MOTION AND MOTION TO: |
| Defendant. | ) ) ) | DISMISS THE INDICTMENT DUE TO AN INVALID DEPORTATION |

TO:    KAREN P. HEWITT. UNITED STATES ATTORNEY; AND
         STEWART YOUNG, ASSISTANT UNITED STATES ATTORNEY:

**PLEASE TAKE NOTICE** that on Monday, June 30, 2008, at 2:00 p.m., or as soon thereafter as counsel may be heard, the accused, Martin Mendez-Lagunas, by and through his attorneys, David M.C. Peterson, Kris J. Kraus, and Federal Defenders of San Diego, Inc., will ask this Court to enter an order granting the motions listed below.

## **MOTIONS**

Martin Mendez-Lagunas, the accused in this case, by and through his attorneys, David M.C. Peterson, Kris K. Kraus, and Federal Defenders of San Diego, Inc., pursuant to the Fourth, Fifth and Sixth Amendments to the United States Constitution, Federal Rules of Criminal Procedure, Rules 8, 12, 14 and 16, and all other applicable statutes, case law and local rules, hereby moves this court for an order to dismiss the indictment due to an invalid deportation.

1      This motion is based upon the instant motion and notice of motion, the attached statement of facts

2   and memorandum of points and authorities, and any and all other materials that may come to this Court's

3   attention at the time of the hearing on this motion.

4                                                              Respectfully submitted,

5

6   Dated: August 25, 2008                              */s/ David M.C. Peterson*
                                                         David M.C. Peterson
7                                                        Federal Defenders of San Diego, Inc.
                                                         Attorneys for Mr. Mendez-Lagunas
8                                                        david_peterson@fd.org

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **DAVID M.C. PETERSON**
   California State Bar No. 254498
2  FEDERAL DEFENDERS OF SAN DIEGO, INC.
   225 Broadway, Suite 900
3  San Diego, California  92101-5008
   Telephone:  (619) 234-8467
4  E-mail: david_peterson@fd.org

5  Attorneys for Mr. Mendez-Lagunas

6

7

8

9                          UNITED STATES DISTRICT COURT

10                        SOUTHERN DISTRICT OF CALIFORNIA

11                       **(HONORABLE WILLIAM Q. HAYES)**

12  UNITED STATES OF AMERICA,        )   Case No. 08cr1626-WQH
                                     )
13              Plaintiff,           )   Date:    September 15, 2008
                                     )   Time:    2:00 p.m.
14  v.                               )
                                     )   MEMORANDUM OF POINTS AND
15  MARTIN MENDEZ-LAGUNAS,           )   AUTHORITIES IN SUPPORT OF MR. MENDEZ-
                                     )   LAGUNAS' MOTION TO DISMISS
16              Defendant.           )
    _____    )

17

18  TO:    KAREN P. HEWITT, UNITED STATES ATTORNEY;
          STEWART YOUNG, ASSISTANT UNITED STATES ATTORNEY.

19

20         COMES NOW the accused, Martin Mendez-Lagunas, by and through his counsel, David M.C.

21  Peterson and Federal Defenders of San Diego, Inc., and hereby files his memorandum of points and

22  authorities in support of his motion to dismiss the indictment.

23  //

24  //

25  //

26  //

27  //

28  //

1

# I.

2

## STATEMENT OF FACTS[1]

3      Mr. Mendez-Lagunas became a Legal Permanent Resident ("LPR") on February 28, 1991.  On

4  February 20, 2003, he went before Immigration Judge ("IJ") Dennis R. James pursuant to a Notice to

5  Appear ("NTA").  Mr. Mendez-Lagunas was charged with removability on two grounds.  See Partial

6  Transcript of Deportation Hearing, attached hereto as Exhibit A.  First, he was charged with removability

7  under 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("the Act"), on allegations that "at any time

8  after admission [he had] been convicted of an aggravated felony as defined in Section 101(a)(43)(B) of the

9  Act, an offense relating to the illicit trafficking in a controlled substance, as described in Section 102 of

10  the Controlled Substance Act . . ."  See NTA, attached hereto as Exhibit B.  Second, he was charged with

11  removability under Section 237(a)(2)(B)(I) of the Act on allegations that "at any time after admission, [he

12  had] been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State,

13  the United States, or a foreign country relating to a controlled substance (as defined in Section 102 of the

14  Controlled Substances Act."  See Ex. B.  As a factual allegation in support of the above legal allegations,

15  the Notice To Appear alleged that Mr. Mendez-Lagunas was convicted on January 13, 2000, in the Superior

16  Court of California, County of Kern, for the offense of Possession of Methamphetamine, in violation of

17  Section 11377(a) of the California Health and Safety Code, for which he received a four-year sentence.

18  See Ex. B.

19      At the IJ hearing, Mr. Mendez Lagunas was not represented by counsel.  See Exh. A at 3.  The IJ

20  first advised all 13 respondents present of their right to counsel, without addressing them individually.  Id.

21  at 1.  The IJ required individuals at the beginning of the hearing to raise their hands if they wanted an

22  attorney.  Id.  However, the IJ did not determine individually whether the respondents understood their right

23  to counsel.  Id. at 1-2.  Mr. Mendez-Lagunas was never individually informed of or explained his right to

24  counsel.  Id. at 2.  He was never asked if he understood his right to counsel.  Id. at 2.  Further, before any

25  discussion regarding counsel, the IJ stated that Mr. Mendez-Lagunas was charged with removability based

26  both upon a conviction for an aggravated felony and a conviction for a controlled substance offense.  Id.

27

28      [1] Mr. Mendez-Lagunas hereby incorporates his statement of facts in his previously filed Motions.

at 3. 11377(a), possession of a controlled substance is not, however, an aggravated felony. Only after a colloquy in which the IJ recited to Mr. Mendez-Lagunas charges that would make him ineligible for any relief did the judge first discuss the issue of counsel with Mr. Mendez-Lagunas. Rather than ascertaining whether Mr. Mendez-Lagunas understood his right to counsel and voluntarily waived it, the IJ merely asked Mr. Mendez-Lagunas "have you hired an attorney," to which Mr. Mendez-Lagunas responded: "I don't want an attorney." Id. The IJ then asked Mr. Mendez-Lagunas if "you want to give up your right to be represented by an attorney?" Id. Mr. Mendez-Lagunas responded "Yes." Id.

Thereafter, the IJ elicited admissions from Mr. Mendez-Lagunas in order to ascertain whether the charges against him stood. Id. at 3-4. The immigration judge made no reference to any documents, and instead appears to have sustained the charges in the NTA based on Mr. Mendez-Lagunas' statements alone. See Exh. A. Upon a bare admission of the allegations contained in the NA, the judge stated that "based on what you've told me you are subject to removal as charged by the immigration service. With this conviction on your record and what you've explained to me, your testimony, you are not eligible to [sic] any other means of relief [UI] even voluntary departure from the United States. At this time I order your deportation from the United States to Mexico, as charged by the immigration service." Id. at 4. The IJ then asked Mr. Mendez-Lagunas if he wished to appeal, and Mr. Mendez-Lagunas stated he did not.

## II.

## ARGUMENT

"In a criminal prosecution under § 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." United States v. Zarate-Martinez, 133 F.3d 1194, 1197 (9th Cir. 1998) (overruled on other grounds, as recognized by United States v. Balleseteros-Ruiz, 319 F.3d 1101, 1104 (9th Cir. 2003). A defendant such as Mr. Mendez-Lagunas, who is charged with illegal reentry under § 1326, has a Fifth Amendment right to attack his removal order collaterally because the removal order serves as a predicate element of his conviction. United States v. Mendoza-Lopez, 481 U.S. 828, 837-38 (1987) ("Our cases establish that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding."). See also United States v.

1  Ubaldo-Figueroa, 364 F.3d 1042, 1047-48 (9th Cir. 2004) (citing Zarate-Martinez and Mendoza-Lopez for

2  these principles).

3  　　　To successfully collaterally attack his deportation, Mr. Mendez-Lagunas must demonstrate that:

4  1) he exhausted all administrative remedies available to him to appeal his removal order; 2) the underlying

5  removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial

6  review; and, 3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d); Ubaldo-Figueroa, 364

7  F.3d at 1048. "An underlying removal order is 'fundamentally unfair' if: '1) a defendant's due process

8  rights were violated by defects in his underlying deportation proceeding, and 2) he suffered prejudice as

9  a result of the defects.'" Ubaldo-Figueroa, 364 F.3d at 1048 (citing Zarate-Martinez, 113 F.3d at 1197)

10  (brackets omitted).

11  　　　Importantly, although Mr. Mendez-Lagunas carries the initial burden on the issue of prejudice, once

12  Mr. Mendez-Lagunas makes a prima facie showing of prejudice, *the burden shifts to the government to*

13  *demonstrate that the procedural violation could not have changed the proceedings' outcome.* United States

14  v. Gonzalez-Valerio, 342 F.3d 1051, 1054 (9th Cir. 2003) (emphasis added). As explained below,

15  Mr. Mendez-Lagunas can demonstrate each of the elements necessary for this Court to sustain his collateral

16  attack.

17  **A.　　Summary Of Argument**

18  　　　Mr. Mendez-Lagunas' deportation was invalid because it violated his Fifth Amendment Due Process

19  rights. First, Mr. Mendez-Lagunas was not deportable, because there were no documents supporting either

20  ground of deportability alleged in the NTA; therefore the judge's order of deportation violated Mr. Mendez-

21  Lagunas' due process rights. As to the first charge, that Mr. Mendez-Lagunas was conviction of an

22  aggravated felony drug trafficking offense, the IJ simply erred in finding that simple possession qualifies

23  as an aggravated felony. United States v. Figueroa-Ocampo, 494 F.3d 1211, 1214-15 (9th Cir. 2007) ("a

24  simple possession offense that is punishable as a felony under state law but a misdemeanor under federal

25  law [. . .] is not to be considered as an 'aggravated felony' under section 1101(a)(43)(B)"). As to the charge,

26  violation of a law relating to a controlled substance, the IJ failed to ascertain whether any documents from

27  Mr. Mendez-Lagunas' conviction supported such a claim under the approach required by Taylor v. United

28  States, 495 U.S. 575 (1990); Ruiz-Vidal v. Gonzales, 473 F.3d 1072 (9th Cir. 2007) (the "simple fact of

4

conviction under Cal. Health and Safety Code § 11377 is insufficient" to prove that the substance of conviction was actually among those listed in Section 102 of the Controlled Substances Act). Because the IJ ordered Mr. Mendez-Lagunas deported in fact he was not deportable or removable, his Due Process rights were violated. No showing of prejudice is required. United States v. Camacho-Lopez, 450 F.3d 928 (9th Cir. 2006) (because the defendant "was removed when he should not have been" he "clearly suffered prejudice"). This is per se prejudice requires dismissal of the proceedings.

Second, Mr. Mendez-Lagunas' right to counsel was violated because the IJ never individually advised Mr. Mendez-Lagunas of his right to counsel, elicited a mass silent waiver, never asked Mr. Mendez-Lagunas if he understood his right to counsel, and instead only asked him if he waived that right. Biwot v. Gonzalez, 403 F.3d 1094, 1100 (2005) ("[w]e have reiterated many times that an alien cannot appear pro se without a knowing and voluntary waiver of the right to counsel").

Third, because the IJ erroneously found Mr. Mendez-Lagunas' ineligible for any relief, "even voluntary departure," he affirmatively misadvised Mr. Mendez-Lagunas as to his legal rights and available relief. This rendered Mr. Mendez-Lagunas' waiver of appeal invalid. United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000) (finding due process violation in a section 1326 collateral appeal because IJ failed to tell the defendant about his eligibility for waiver of deportation).

Because of the denial of the right to counsel, the erroneous finding of deportability, the misadvisal as to his eligibility for relief, and the invalidity of his waiver of appeal, Mr. Mendez-Lagunas is legally excused for failing to exhaust his administrative remedies. Further, because of the misadvisal as to his relief and the invalidity of his waiver of appeal, he was deprived of judicial review.

Finally, the above Due Process violations prejudiced Mr. Mendez-Lagunas in three distinct ways,[2] and rendered his deportation fundamentally unfair.[3] First, Mr. Mendez-Lagunas was prejudiced because

---

[2] Because he was not actually deportable, Mr. Mendez-Lagunas need not show prejudice. However, Mr. Mendez-Lagunas does undertake the showing of prejudice in support of the other claimed due process violations.

[3] Mr. Mendez-Lagunas "does not have to show that he actually would have been granted relief. Instead, he must only show that he had a 'plausible' ground for relief from deportation." United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1050 (9th Cir. 2004) (citing United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000)). Once he has made this prima facie case, the government must prove that the procedural violations could not have changed the proceedings' outcome. Gonzalez-Valerio, 342 F.3d at 1054.

an attorney would forced the government to prove up the charges, educated the judge on the fact that possession is not an aggravated felony, ensured that Mr. Mendez-Lagunas was aware of his eligibility for relief, and appealed any adverse decision.  All of this "show[s] that the denial of his right to counsel potentially affected the outcome of the proceedings." Ram v. Mukasey, 529 F.3d 1238, 1242 (9th Cir. 2008)

Mr. Mendez-Lagunas was also prejudiced because he was misadvised of his eligibility for 212(h) relief. Arrieta, 224 F.3d at 1079 (where the defendant introduces credible evidence that his family would suffer serious hardship, it is plausible that relief would be granted).

Lastly, Mr. Mendez-Lagunas suffered additional prejudice when he was affirmatively misadvised and told he was not eligible for pre-conclusion voluntary departure. See United States v. Basuto-Pulido, 219 Fed.Appx. 717 (9th Cir. 2007) (failure to advise alien of eligibility for voluntary departure violated due process and prejudiced defendant; sufficient showing of prejudice based on the fact that alien had common law wife and three children who were United States citizens) (unpublished memorandum).  He remained eligible for both, and it is at the very least "plausible" that he would have received either 212(h) or voluntary departure. Ubaldo-Figueroa, 364 F.3d at 1050.

**B.    Mr. Mendez-Lagunas is Exempt from the Exhaustion Requirement**

Mr. Mendez-Lagunas' appellate waiver was invalid because the IJ misinformed Mr. Mendez-Lagunas of potential relief from deportation for which he was eligible.  A waiver of the right to appeal a removal order does not comport with due process when it is not "considered and intelligent." Id. See also United States v. Pallares-Galan, 359 F.3d 1088, 1096 (9th Cir. 2004); United States v. Leon-Paz, 340 F.3d 1003, 1005 (9th Cir. 2003).  As the Ninth Circuit held in Pallares-Galan:

> For a waiver to be valid, the government must establish by "clear and convincing evidence," Gete v. INS, 121 F.3d 1285, 1293 (9th Cir. 1997), **that the waiver is "considered and intelligent."** United States v. Lopez-Vasquez, 1 F.3d 751, 753-54 (9th Cir. 1993)(en banc); see also United States v. Gonzalez-Mendoza, 985 F.2d 1014, 1017 (9th Cir. 1993) (finding a due process violation where immigration judge failed to inquire whether right to appeal was knowingly and voluntarily waived).

Pallares-Galan, 359 F.3d at 1097 (emphasis added).  In this case, the government cannot establish by clear and convincing evidence that Mr. Mendez-Lagunas' appellate waiver was "considered and intelligent," because his waiver was based on inadequate and inaccurate advice regarding his rights.

An IJ's failure to advise the alien of his eligibility for relief from deportation renders the deportation proceeding defective. Ubaldo-Figueroa, 364 F.3d at 1048. See also Arce-Martinez-Valdez, 163 F.3d at 563 ("[W]here the record contains an inference that the petitioner is eligible for relief from deportation, the IJ must advise the alien of this possibility and give him the opportunity to develop the issue."); Lopez-Vasquez, 1 F.3d at 754 (holding that IJ hearing deprived petitioner's right to due process even where the IJ explained the right to appeal and provided petitioner with a form explaining his right to an appeal in Spanish because the information was given to him in a group format); Mendoza-Lopez, 471 U.S. at 840 (failure of IJ to advise alien of his right to appeal and his eligibility for a waiver of deportation violated his due process rights and "amounted to a complete deprivation of judicial review of the determination); Arrieta, 224 F.3d at 1079 (finding due process violation because IJ failed to tell defendant about his eligibility for a waiver of deportation); Moran-Enriquez v. INS, 884 F.2d 420, 423 (9th Cir. 1989) (where record, fairly reviewed by a person intimately familiar with the immigration laws (the IJ) raises a reasonable possibility that the petitioner may be eligible for relief, the IJ must advise the alien of this possibility, if the petitioner is not advised of this possibility, the appellate waiver is invalid) (citing 8 C.F.R. § 242.17(a)). It therefore is well-settled that Mr. Mendez-Lagunas' failure to appeal the IJ's order of deportation and exhaust his administrative remedies cannot bar collateral review of his deportation proceeding where the defects in the proceeding persuaded him that any appeal would be futile.

Here, the IJ concluded—and communicated to Mr. Mendez-Lagunas—that he had no form of relief available to him, "even involuntary departure." See Ex. A. This was error for three reasons. First, the IJ misinformed Mr. Mendez-Lagunas that he was deportable for a "controlled substance offense." Because the statute was overbroad for purposes of determining whether the offense involved a controlled substance offense, and there were no records to satisfy a Taylor analysis, the IJ misadvised Mr. Mendez-Lagunas of the most immediate and proper relief available to him: termination of the proceedings. 8 C.F.R. § 1240.12(c) (the "order of the immigration judge shall direct respondent's removal from the United States, or the termination of the proceedings"); see also In re Song, 23 I. & N. Dec. 173 (September 05, 2001) (because petitioner introduced evidence that conviction for which he was ordered deported did not, in fact, render him deportable, the BIA vacated order of deportation and ordered proceedings terminated). Second, the IJ incorrectly informed Mr. Mendez-Lagunas that his simple possession conviction was an aggravated

1    felony, and therefore he was ineligible for any relief.  United States v. Figueroa-Ocampo, 494 F.3d 1211,

2    1214-15 (9th Cir. 2007) ("a simple possession offense that is punishable as a felony under state law but a

3    misdemeanor under federal law [. . .] is not to be considered as an 'aggravated felony' under section

4    1101(a)(43)(B)").  Given that the simple possession offense was not an aggravated felony, it was a

5    reasonable inference that Mr. Mendez-Lagunas, an LPR of 12 years, had a qualifying relative and was

6    prima facie eligible for 212(h) relief.  Third, the IJ's incorrect advisal that Mr. Mendez-Lagunas was

7    ineligible for "even voluntary departure" rendered Mr. Mendez-Lagunas' waiver of appeal invalid.  Ex. A.

8    All of these misadvisals relieve Mr. Mendez-Lagunas from the exhaustion requirement.

9    **C.    Mr. Mendez-Lagunas Was Deprived of Judicial Review.**

10         To sustain a collateral attack on his removal order, Mr. Mendez-Lagunas must also demonstrate that

11    the deportation proceedings improperly deprived him of judicial review.  8 U.S.C. § 1326(d)(2).  As

12    explained above, Mr. Mendez-Lagunas was deprived of the opportunity for judicial review because the IJ

13    erroneously concluded he was ineligible for any relief, "even voluntary departure."  Ex. A.  Compare

14    Ubaldo-Figueroa, 364 F.3d at 1049-50 (holding that the failure to inform an immigrant of possible

15    eligibility for relief from removal is a denial of due process that invalidates the underlying deportation

16    proceeding).

17    **D.    Mr. Mendez-Lagunas Was Deported Although He Wasn't Deportable; This Is Per Se**
18        **Prejudice.**

19         **1.    Mr. Mendez-Lagunas Was Not Deportable For Being Convicted Of An Aggravated**
20              **Felony After Admission; § 11377(a) Is Not An Aggravated Felony Under Any**
               **Circumstances.**

21         Mr. Mendez-Lagunas was charged in the NTA with being deportable under Section 237(a)(2)(a)(iii)

22    of the Act, in that he was convicted of an "aggravated felony" as defined in Section 101(a)(43)(B), an

23    offense relating to the illicit trafficking in a controlled substance.  However, in Lopez v. Gonzales, 127

24    S.Ct. 625, 633 (2006) the Supreme Court held that "a state offense constitutes a 'felony punishable under

25    the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law."

26    The conviction for which Mr. Mendez-Lagunas was deemed deportable was for a conviction under

27

28

California Penal Code § 11377(a), in this case, allegedly possession of a controlled substance.[4]  Section

11377(a) is a crime of simple possession,[5] and is, therefore, a misdemeanor under federal law.

When a possession offense is a misdemeanor under federal law, it can never be an "aggravated

felony." United States v. Figueroa-Ocampo, 494 F.3d 1211, 1214-15 (9th Cir. 2007) ("a simple possession

offense that is punishable as a felony under state law but a misdemeanor under federal law [. . .] is not to

be considered as an 'aggravated felony' under section 1101(a)(43)(B)").

## 2.    Mr. Mendez-Lagunas Was Not Deportable For A Controlled Substance Offense Because 11377 Is Overbroad.

11377(a), the sole conviction alleged in the NTA, is overbroad for the purposes of establishing

removability under INA Section 237(a)(2)(a)(iii).  Ruiz-Vidal v. Gonzales, 473 F.3d 1072 (9th Cir. 2007)

This is because "in order to prove removability, the government must show that [the] criminal conviction

was for possession of a substance that is not only listed under California law, but also contained in the

federal schedules of the CSA." Id. at 1077-78.  "California law regulates the possession and sale of

numerous substances that are not similarly regulated by the CSA." Id. at 1078.  The "simple fact of

conviction under Cal. Health and Safety Code § 11377 is insufficient." Id.  That is precisely what the IJ

relied on in determining deportability; therefore, the IJ erred in finding Mr. Mendez-Lagunas deportable

for a controlled substance offense under INA Section 237(a)(2)(a)(iii).

The record indicates that the IJ found Mr. Mendez-Lagunas deportable based upon the "simple fact

of conviction under Cal. Health and Safety Code § 11377."  This was "insufficient."  Further, to date, the

government has produced to defense counsel documents relating to this conviction.  It appears that the

judge did not look at any of these documents, making his decision erroneous.  In addition, they prove that

the judge's decision would have remained erroneous upon a review of the documents.  Here, as in Ruiz-

---

[4]    Again, there are no judicially noticeable documents that the possession even involved a controlled substance, as opposed to a substance that does not qualify as a controlled substance under the Controlled Substances Act.  See Ruiz-Vidal, 473 F.3d 1072.

[5]

Except as authorized by law . . . every person who possesses any controlled substance . . . shall be punished by imprisonment in a county jail for a period of not more than one year or in the state prison.

Cal. Health & Safety Code, Section 11377(a).

9

1    _Vidal_, the record contains a charging document containing a bare allegation that Mr. Mendez-Lagunas did

2    willfully and unlawfully possess a controlled substance, "to wit: methamphetamine." Id. Here, as in _Ruiz-_

3    _Vidal_, there are no more judicially noticeable documents establishing that Mr. Mendez-Lagunas in fact pled

4    guilty to or admitted facts indicating a controlled substance offense. Id.

5       The government must, in an immigration proceeding, prove by "clear, unequivocal, and convincing

6    evidence that the facts alleged as grounds of [removability] are true." _Gameros-Hernandez v. INS_, 883

7    F.3d 839, 841 (9th Cir. 1989). Here, as in _Ruiz-Vidal_, the documents were at the time, and remain,

8    insufficient to support a finding of removability. Therefore, the IJ erred in finding Mr. Mendez-Lagunas

9    deportable for a controlled substance offense.

10      The Ninth Circuit has clearly stated what documents can establish removability when a conviction

11    is overbroad under _Taylor_, 495 U.S. 575. This court may consider "the charging documents in conjunction

12    with the plea agreement, the transcript of a plea proceeding, or the judgment to determine whether the

13    defendant pled guilty to the elements of the generic crime." _United States v. Corona-Sanchez_, 291 F.3d

14    1201, 1211 (9th Cir. 2002), superceded by statute on other grounds, as recognized by _United States v._

15    _Vidal_, 426 F.3d 1011 (9th Cir. 2005) (overruled on other grounds by _Vidal_, 504 F.3d 1072 (9th Cir. 2007)

16    (en banc)).

17      Charging papers are never, on their own, sufficient to meet the "demanding requirement" of _Taylor_.

18    _United States v. Parker_, 5 F.3d 1322, 1327 (9th Cir. 1993); see also _Shepard v. United States_, 544 U.S. 13,

19    24 (2005). They may be considered in combination with a signed plea agreement. _Corona-Sanchez_, 291

20    F.3d at 1211. It appears the A-file does not contain, and the IJ did not review, any signed plea agreement.

21    Therefore, the charging papers contained in the A-file are insufficient.

22      Even a charging document and abstract of judgment are insufficient to establish that an overbroad

23    offense meets the "demanding requirement" of _Taylor_. _United States v. Navidad-Marcos_, 367 F.3d 903,

24    908-909 (9th Cir. 2004) ("an abstract of judgment is not the judgment of conviction; it does not control if

25    different from the trial court's oral judgment and may not add to or modify the judgment it purports to

26    digest or summarize." Indeed, where the precise portion of the statute's overbreadth is confirmed only by

27    the abstract of judgment, that is "not sufficient to establish 'unequivocally' that [a defendant] entered a

28    guilty plea to a different charge from the one contained in the Information." Id. at 909. Here, as in

1    Navidad-Marcos, the "abstract of judgment fails to satisfy the 'rigorous standard' required by Taylor's

2    modified categorical approach."    Id.    It is worth noting that Navidad-Marcos involved a Taylor

3    determination at sentencing.  There, while the standard is still "rigorous," it is, if anything, lower than the

4    standard for establishing removability in an immigration proceeding. Because, in a removal proceeding the

5    Service must establish deportability by "clear, unequivocal, and convincing evidence."    Gameros-

6    Hernandez, 883 F.3d at 841 (emphasis added).

7            The documents do not demonstrate that Mr. Mendez-Lagunas was convicted of a controlled

8    substance offense.  Because the IJ found him deportable based on that ground—and apparently without

9    reviewing any documents—that determination of deportability was in error.

10   **E.    Mr. Mendez-Lagunas Was Denied The Right To Counsel; This Prejudiced Him.**

11           "Although there is no Sixth Amendment right to counsel in an immigration hearing, Congress has

12   recognized it among the rights stemming from the Fifth Amendment guarantee of due process that adhere

13   to individuals that are the subject of removal proceedings." Tawadrus v. Ashcroft, 364 F.3d 1099, 1103

14   (9th Cir. 2004).  "Although IJs may not be required to undertake Herculean efforts to afford the right to

15   counsel, at a minimum they must (1) inquire whether the petitioner wishes counsel, (2) determine a

16   reasonable period for obtaining counsel, and (3) assess whether any waiver of counsel is knowing and

17   voluntary." Biwot, 403 F.3d at 1100.

18           The government bears the burden of proving the validity of a waiver by clear and convincing

19   evidence. United States v. Pallares-Gallan, 359 F.3d 1088, 1097 (9th Cir. 2008) (citing United States v.

20   Lopez-Vasquez, 1 F.3d 751, 753-54 (9th Cir. 1993) (en banc).  The government cannot do so here.  First,

21   the initial waiver—which required individuals to raise their hands to assert their right to appeal—was a

22   mass silent waiver of the type repeatedly condemned by the Ninth Circuit.  United States v. Ahumada-

23   Aguilar, 295 F.3d 943, 949 (9th Cir. 2002) ("mass silent waiver impermissibly presume[s] acquiescence

24   in the loss of the right to appeal and fails to overcome the 'presumption against waiver") (internal quotes

25   and citations omitted); Zarate-Martinez, 133 F.3d at 1198 ("[t]he hand-raising request tended to stigmatize

26   detainees who wished to appeal and to convey a message that appeal was disfavored and contingent upon

27   further discussion with the immigration judge") (internal quotes and citations omitted); United States v.

28   Lopez-Vazquez, 1 F.3d 751, 754 (9th Cir. 1993) ("[m]ass silent waiver creates a risk that individual

1   detainees will feel coerced by the silence of their fellows"). The IJ simply informed the group of 13
2   unrepresented individuals of their right to counsel and asked them "is there anyone here that [*unintelligible*]
3   to give you a chance to hire an attorney [*unintelligible*] the list of attorneys or to [*unintelligible*] your
4   family is going to hire an attorney, raise your hand and I'll postpone your case for a reasonable period of
5   time." Ex. A at 2. The requirement that an individual raise their hand to assert a right has been repeatedly
6   condemned and does not constitute a valid waiver. See Ahumada-Aguilar, 295 F.3d at 949; Zarate-
7   Martinez, 133 F.3d at 1198; Lopez-Vazquez, 1 F.3d at 754.

8        Further, the individual colloquy between Mr. Mendez-Lagunas and the IJ does not constitute a valid
9   waiver of his right to counsel for several reasons. As an initial matter, given the mass silent waiver, Mr.
10  Mendez-Lagunas' had already been coerced by the IJ's message that seeking an attorney was disfavored,
11  and had already invalidly waived his right to counsel. See Ahumada-Aguilar, 295 F.3d at 949; Zarate-
12  Martinez, 133 F.3d at 1198; Lopez-Vazquez, 1 F.3d at 754,

13       Moreover, Mr. Mendez-Lagunas had already been (erroneously) advised that he was charged with
14  conviction of an aggravated felony, which would (if true) make him ineligible for any relief. This would
15  make any attempt at hiring an attorney futile, and makes his individual waiver invalid. Pallares-Galan, 359
16  F.3d at 1096 ("[b]ecause the IJ erred when she told Pallares that no relief was available . . . Pallares'  waiver
17  of his right to appeal was not 'considered and intelligent.' It is insufficient that Mr. Mendez-Lagunas knew
18  what an attorney was at the time that he allegedly waived his right to counsel; he had already been
19  misadvised as to the nature of the charges against him, and erroneously believed that he was not eligible
20  for any relief, due to the allegation of a conviction for an aggravated felony. See Pallares-Galan, at 1097
21  ("despite the IJ's specific, and thorough explanation of his rights, petitioner's waiver could not be deemed
22  'considered and intelligent'").

23       Any waiver during the individual colloquy was also not knowing and intelligent because the IJ never
24  explained to Mr. Mendez-Lagunas his right to counsel and never ensured that Mr. Mendez-Lagunas
25  understood it. The mass explanation and waiver of a specific right, followed by an individual colloquy
26  about "rights" generally is precisely what was found insufficient in Zarate-Martinez, 133 F.3d at 1198.
27  There, the IJ advised the group of their right to appeal, and then asked the individual respondent only if he
28  "understood [his] rights." This was not a sufficient colloquy to prove a knowing and intelligent waiver.

1   The requirement is, if anything, more strenuous when a judge seeks a waiver of an individual's right to

2   counsel.

3       Finally, the IJ simply never bothered to ensure that Mr. Mendez-Lagunas individually understood

4   his right to counsel, and never directed "any questions to [Mr. Mendez-Lagunas] concerning the

5   implications of proceeding without an attorney."  The IJ failed to assess whether Mr. Mendez-Lagunas'

6   "waiver of counsel [was] knowing and voluntary."  Biwot, 403 F.3d at 1100.  "'[A]t no time did [the IJ]

7   direct any questions to [Mr. Mendez-Lagunas] concerning the implications of' proceeding without an

8   attorney."  Ram v. Mukasey, 529 F.3d 1238, 1242 (citing Tawadrus, 364 F.3d at 1104).  Such failure is

9   particularly prejudicial in Mr. Mendez-Lagunas' case, where on its face the charging document alleged an

10  aggravated felony, something that (had he actually had one) would have made Mr. Mendez-Lagunas

11  removable for life.  The life-long implications of the deportation he was facing, combined with the fact that

12  the charging document contained an inference that at least one of the charges of removability was legally

13  insufficient certainly should have triggered a closer inquiry to ensure that Mr. Mendez-Lagunas knew the

14  "implications of proceeding without an attorney."  Ram, 529 F.3d at 1242.

15      Given the mass silent waiver, the erroneous statement of charges against Mr. Mendez-Lagunas that

16  would lead him to believe hiring an attorney would be futile, the IJ's failure to ensure that Mr. Mendez-

17  Lagunas understood his right to counsel, and the IJ's failure to ensure that the waiver was knowing and

18  voluntary, Mr. Mendez-Lagunas' waiver of the right to counsel was invalid.

19      To demonstrate prejudice based upon the denial of the right to counsel, an individual challenging

20  a deportation order "must show that the denial of his right to counsel potentially affected the outcome of

21  the proceedings."  Ram v. Mukasey, 529 F.3d 1238, 1242 (9th cir. 2008) (citing  Baltazar-Alcazar v. INS,

22  386 F.3d 940, 947 (9th Cir.2004).  The Ninth Circuit noted in Ram that "[i]n making this assessment, we

23  acknowledge the difficult situation in which Ram found himself. . .  The high stakes of a removal

24  proceeding and the maze of immigration rules and regulations make evident the necessity of the right to

25  counsel.  The proliferation of immigration laws and regulations has aptly been called a labyrinth that only

26  a lawyer could navigate") (internal quotations and citations omitted).

27      The Ninth Circuit has set an extremely low threshold for this finding.  Mr. Mendez-Lagunas need

28  only show that some relief was possible; he "need not explain exactly what evidence he would have

1    presented in support of his application." <u>Hernandez-Gil v. Gonzalez</u>, 476 F.3d 803, 808 (9th Cir. 2007).

2    In <u>Ram</u>, for example, the Ninth Circuit found the respondent had been prejudiced simply because "an

3    attorney would have helped Ram understand his criminal record as well as his legal rights and evidentiary

4    burden, so that he would not have admitted to allegations and charges that were spurious and that the DHS

5    could not substantiate with proper documentation"; because DHS might not be able to prove up the

6    aggravated felon charge; and because "with an attorney, he would not have been forced ... to present a case

7    with no evidence [and virtually no argument, and to] answer the IJ's inquiries without any idea of their legal

8    significance." <u>Id.</u> at 1242-43. The court identified no specific relief for which the defendant was eligible.

9    Moreover, while the panel noted that Ram would be eligible for asylum if the government could not sustain

10   its aggravated felony charge, *id.*, the Ninth Circuit did not require him to show it was plausible he would

11   have been granted relief. Indeed, the Ninth Circuit did not even require the respondent to show he would

12   have *applied* for such relief to conclude that the presence of an attorney could "potentially" have affected

13   the proceeding. Likewise, in <u>Biwot v. Gonzales</u>, 403 F.3d 1094 (2005), the Ninth Circuit concluded the

14   respondent "easily cleared" the prejudice hurdle without considering the merits of any claim. Prejudice

15   was established simply because "[w]ith an attorney, he would not have been forced to proceed *pro se*, to

16   present a case with no evidence, to answer the IJ's inquiries without any idea of their legal significance, or

17   to purport unwittingly to waive his appeal." <u>Id.</u> at 1100.

18        This case is no different. As in <u>Ram</u>, an attorney would not have permitted First, a minimally

19   competent lawyer would have insisted that the IJ review the documents containing the allegations in the

20   NTA before ordering their client deported. <u>See, e.g.</u>, <u>Padernal-Nye v. Gonzales</u>, 133 Fed.Appx. 403 (9th

21   Cir. 2005) (unpublished opinion) (ineffective assistance of counsel where lawyer failed to challenge

22   overbroad conviction where the record did not contain documents supporting finding under <u>Taylor</u>

23   analysis).[6] Second, a marginally more competent lawyer would have recognized that the violation of §

24   11377(a) was not, under any circumstances, an aggravated felony. Third, any lawyer worth his salt would

25   have argued that Mr. Mendez-Lagunas was in fact eligible for 212(h) relief and voluntary departure, should

26

27   _____

28        [6] While this unpublished opinion is not precedential authority, it indicates that effective counsel would have <u>had to</u> address the insufficiency of the <u>Taylor</u> documents in Mr. Mendez-Lagunas' deportation proceedings.

                                                    14

he choose to forego the fight to keep his papers. A competent attorney also would have assisted Mr. Mendez-Lagunas in seeking relief under INA §§ 212(h); he or she would have interviewed the relevant family, would have documented Mr. Mendez-Lagunas' rehabilitative efforts in prison, and would have presented evidence of his importance to his ailing mother, work history, and extensive family ties in the United States. Fourth, assuming an adverse decision from the IJ on any of the above, any effective lawyer would have appealed the order and decision of the IJ. Thus, there are four points at which counsel <u>likely</u> <u>would</u> have affected the outcome of the proceedings. That is not, however, the test. All that Mr. Mendez-Lagunas need show is that denial of the right to counsel "potentially" affected the outcome. <u>Ram</u>, 529 F.3d at 1242. Given these many potential equities, it is inconceivable that the presence of an attorney could not "potentially [have] affected the outcome of the proceedings." <u>Id.</u> Therefore the denial of the right to counsel prejudiced Mr. Mendez-Lagunas, given the numerous ways that having counsel would have affected the outcome of the proceedings.

**F.    Mr. Mendez-Lagunas Was Eligible For 212(h) Relief, And A Competent Attorney Would Have Assisted Him In Obtaining It.**

Mr. Mendez-Lagunas was eligible to waive the voluntary manslaughter conviction pursuant to INA 212(h), 8 U.S.C. § 1182(h)(1)(B). That section permits an application for adjustment of status to waive any crime involving moral turpitude upon a showing that his deportation would result in "extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien." *Id.*

Here, the IJ should have advised Mr. Villa-Anquiano of the possibility of INA 212(h) relief. An Immigration Judge has a duty to advise the respondent of any "apparent" relief. *See* 8 C.F.R. § 1240.11(a)(2) (2006) ("The immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing.") Here, the IJ knew, at a minimum, that Mr. Mendez-Lagunas likely had qualifying relatives, given that he had been a lawful permanent resident for 12 years. It was a reasonable inference from the record that Mr. Mendez-Lagunas would have a qualifying relative. The IJ, erroneously believing that simple possession was an aggravated felony, never asked Mr. Mendez-Lagunas. However, Mr. Mendez-Lagunas had a mother who was a legal permanent resident. She was 78 at the time of Mr. Mendez-Lagunas' deportation, and she was in extremely ill health. As such, he facially qualified for relief.

1    *Cf. United States v. Flores-Rodriguez*, 236 Fed.Appx. 338 (9th Cir. 2007) (unpublished) (Remanding due

2    to IJ's erroneous advice that respondent was ineligible for INA § 212(h) relief, even though relief would

3    not be available until mother naturalized).

4         Finally, because Mr. Mendez-Lagunas was denied the right to counsel at his deportation proceeding,

5    he does not have to make the same showing of prejudice he ordinarily would.  As discussed above, Mr.

6    Mendez-Lagunas need only show that some relief was possible; he "need not explain exactly what evidence

7    he would have presented in support of his application." Hernandez-Gil v. Gonzalez, 476 F.3d 803, 808 (9th

8    Cir. 2007).

9    **G.    Mr. Mendez-Lagunas Was Eligible For Pre-Conclusion Voluntary Departure, And It Is At
          Least Plausible That He Would Have Received It.**

10

11        Mr. Mendez-Lagunas was eligible for voluntary departure, and denial of the right to seek it

12   prejudiced him. Basuto-Pulido, 219 Fed. Appx. 717.  IIRIRA's enactment of § 1229c(a) in 1996 created

13   a new form of voluntary departure whose primary focus was minimizing administrative burdens associated

14   with lawful physical expulsion of illegal aliens—by requiring waiver of the right to a complete hearing,

15   eliminating the availability of judicial review and stays of the time period for departure—rather than

16   rewarding the deserving with a means of avoiding formal deportation. Compare 8 U.S.C. § 1229c(a) (relief

17   available "in lieu of being subject to proceedings under section 1229a of this title or prior to the completion

18   of such proceedings") with § 1254 (1995) (repealed by Pub. L. 104-208 (Sept. 30, 1996)) (requiring a

19   showing of good moral character but not waiver of proceedings).  Mr. Mendez-Lagunas was eligible for

20   this relief, contrary to the IJ's claim that he was not.   The simple prerequisites for eligibility are that the

21   relief be granted prior to the conclusion of proceedings, and that the individual not be deportable for

22   conviction of an aggravated felony following admission. 8 U.S.C. § 1229c.  As discussed above, no federal

23   or immigration court has ever held a violation of California Penal Code § 11377(a) to be an aggravated

24   felony.  While the immigration judge in Mr. Mendez-Lagunas' case did consider it to be an aggravated

25   felony, that decision was legally erroneous.  Therefore, Mr. Mendez-Lagunas was eligible for pre-

26   conclusion voluntary departure.

27        Within the current immigration scheme, pre-conclusion voluntary departure "reveals Congress'

28   intention to offer an alien a specific benefit—exemption from the ordinary bars on subsequent lawful

admission—in return for a quick departure." Banda-Ortiz v. Gonzales, 445 F.3d 387, 390 (5th Cir. 2006). In effecting this contract-like exchange, the IJ may exercise discretion to grant voluntary departure even in the face of multiple immigration violations and fraud. See e.g. Matter of Polanco-Davila, 2006 WL 901504 (BIA 2006) (unpublished).

Mr. Mendez-Lagunas is precisely the person for whom pre-conclusion voluntary departure was designed. He was an LPR of 12 years. He had an ailing mother, also an LPR, who was then 78 years of age and suffering from (ultimately fatal) heart disease.[7] He had four siblings who were LPRs, and over 25 nieces and nephews. Further, he had a strong and documentable work history, as well as the support of his family. In addition, both parties had legitimate interests in the speedy resolution of Mr. Mendez-Lagunas' immigration case before the IJ: Mr. Mendez-Lagunas had an interest in obtaining prompt release from immigration detention by exchanging his right to seek 212(h) relief, while retaining the right to seek admission through the consulate abroad without the normal time bars on readmission. The government had an interest in conserving resources. And all parties and the IJ would give meaning to the stated purpose of the Immigration and Naturalization Act: the preservation of family unity. See Watkins v. I.N.S. 63 F.3d 844, 851 (9th Cir. 1995) ("The favored status given to the family is firmly entrenched in immigration law: 'The legislative history of the Immigration and Nationality Act clearly indicates that the Congress intended to provide for a liberal treatment of children and was concerned with the problem of keeping families of United States citizens and immigrants united.'") (citing H.R.Rep. No. 1199 , 85th Cong., 1st Sess. 7, reprinted in 1957 U.S.Code, Cong. & Admin.News 2016, 2020.").[8]

Interestingly, this particular IJ specifically mentioned that he could not grant Mr. Mendez-Lagunas "even voluntary departure," a statement that carries an inference that he would have considered it if he

---

[7] This and the following family- and work-related facts will be supported by a declaration from Mr. Mendez-Lagunas' brother, Jesus Mendez. The declaration will be submitted to the court as soon as signed Spanish and English copies are available.

[8] Furthermore, as noted above, Mr. Mendez-Lagunas' alleged conviction does not bar this relief. Pre-conclusion voluntary departure contains no requirement that the applicant demonstrate good moral character or demonstrate the financial means to depart the country. See Matter of Cordova, 22 I & N. Dec. 966 (BIA 1996). Indeed, by specifically omitting a "good moral character" requirement from pre-conclusion voluntary departure, Congress indicated that it preferred any potential moral character bar be dealt with via a waiver filed with the future application for admission.

believed he had the discretion to do so.[9]  Because (1) this was Mr. Mendez-Lagunas' first and only deportation; (2) he had been admitted to the United States over 12 years before the date of the hearing; (3) the vast majority of his family was in the United States; and (4) an application for 212(h) relief in immigration court would result in time-consuming litigation, it is at least plausible that government counsel would not have opposed his application for voluntary departure.  Even if government counsel had opposed, it is at least "plausible" under the circumstances that an immigration judge would have granted the relief.  See, e.g., Matter of Polanco-Davila, 2006 WL 901504 (BIA 2006) (unpublished) (IJ grant of voluntary departure affirmed, despite fraudulent testimony before same IJ, because IJ properly weighed these negative factors with any equities, including the respondent's United States citizen wife and three children and pending petition for an immigrant visa).

### III.

### CONCLUSION

For these and all the foregoing reasons, the defendant, Mr. Mendez-Lagunas respectfully requests that this Court grant his motions and grant any and all other relief deemed proper and fair.

Respectfully submitted,

Dated: August 25, 2008

*/s/ David M.C. Peterson*
**DAVID M.C. PETERSON**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Mendez-Lagunas

---

[9]Mr. Mendez-Lagunas offers this description of his proceedings to show that voluntary departure was "plausible." Of course, the issue now is not how this particular IJ would have decided the case had he applied the correct standard.

1

## **<u>CERTIFICATE OF SERVICE</u>**

2      Counsel for Defendant certifies that the foregoing is true and accurate to the best information and

3   belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

4      Courtesy Copy to Chambers

5      Copy to Assistant U.S. Attorney

6      Copy to Defendant

7   Dated:  August 25, 2008                                      /s/ DAVID M. PETERSON
                                                        Federal Defenders of San Diego,
8                                                       225 Broadway, Suite 900
                                                        San Diego, CA  92101-5030
9                                                       (619) 234-8467  (tel)
                                                        (619) 687-2666  (fax)
10                                                      david_peterson@fd.org (email)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PARTIAL TRANSCRIPT OF 2/20/03 DEPORTATION PROCEEDINGS**

IJ:    **Immigration Judge**
MM:  **Martin Mendez-Lagunas**
*UI*:    **Unintelligible**

**Mass Advisal of Rights**
[*Approximately 13 respondents present*]

IJ:    Gentlemen, you're in removal proceedings.

[. . .]

IJ:    If you're found subject to removal, I will also let you know that I will conduct an examination to see if you might qualify for any relief under immigration law or the law of [*UI*] that if granted to you  could prevent you from being removed to the United States. If it appears that you're eligible for relief, you'll be given the opportunity to apply for it.

[. . .]

IJ:    So gentlemen the purpose of the hearing is to determine if these allegations are true or not, if you're subject to removal or not, and if you are subject to removal whether you're eligible to relief or not, and if you are whether it should be granted or not [*UI*].  So you know why you're here now.  You know the purpose of the hearing.  I'm going to go over the rights with you that you have in this hearing.

You have the right to examine any document that the government attorney offers against you.  If the immigration service calls any witnesses to testify against you, you have the right to cross-examine witnesses.  You have the right to object to the immigration service's [*UI*].  You also have the right to present evidence to this court, on any relevant issue. You have the right to produce documentary evidence [*UI*], you have the right to call witnesses to testify on your behalf, and you have the right to testify yourself.

Now at the end of the case, after I have considered everything that I have to consider, I have to issue an order.  If you disagree with my order, or if it's adverse to you, you have the right to appeal my order to a higher court [*UI*] in Washington D.C. [*UI*] to appeal [*UI*] to determine if it's correct or not.  Each one of you has the right to appeal the order I make in your case [*UI*].

You also have the right to be represented by an attorney of your choice, or other qualified representative of your choice.  At your expense.  There are no court-appointed attorneys in immigration court.  Each of you has the right to be represented by an attorney, or other qualified representative, that you pick out [*UI*].  So gentlemen, these are the rights that you have in your hearing.

1

[. . .]

IJ:       Have [each of] you received a copy of the list of lawyers?  All hands are raised.

[. . .]

IJ:       The next form I'm showing, it's called a 441, it sets forth your appellate rights.  If you have received this document, raise your hand.  All hands are raised.

[. . .]

IJ:       Gentlemen, the attorneys on this list are not court-appointed, and are not paid for by the court.  These are private attorneys, [*UI*] for pay.  [*UI*].  It's your right to be represented by an attorney or qualified representative of your choice at your expense.  That includes these people if you choose to contact them [*UI*].  My obligation is to make sure that you understand the right to be represented, and that you have the list, and if you need some time to find an attorney, to give you a reasonable amount of time to do that.

So gentlemen, we've gone through now why you're here, the purpose of the hearing, and your rights.  Is there anybody present that has hired an attorney and for some reason your attorney's not here today?  No hands are raised.

IJ:       Is there anyone here that [UI] to give you chance to hire an attorney [UI] the list of attorneys, or to [UI] your family is going to hire an attorney, raise your hand and I'l postpone your case for a reasonable period of time [*UI*].  No hands are raised.

**Individual Hearing**
[*approximately minute 24 of the tape*]

[Calls case of Martin Mendez-Lagunas]

IJ:       Is that your true name?

MM:    Yes.

IJ:       OK, let's wait til the interpreter finishes the translation before you respond, do you understand?

MM:    Si.

IJ:       Is Martin Mendez-Lagunas, is that your true name?

MM:    Yes.

IJ:    Did you receive a copy of the notice to appear?

MM:    Yes.

IJ:    Do you understand understand the purpose of the hearing?

MM:    Yes.

IJ:    Do you understand rights that you have at this proceeding?

MM:    Yes.

IJ:    Sir, [*UI*] alleges that you are not a citizen and national of United States, you are native
       and citizen of Mexico, that you've been a lawful permanent resident on February 28,
       1991 as an immigrant, you received that status [*UI*] San Francisco.  They allege you were
       convicted January 13 of 2000 in Kern County Superior Court for possession of
       Methamphetamine in violation of  section [*UI*] 11377(a) of California Health and Safety ,
       and that you received a sentence of 4 years.  Do you understand these allegations?  The
       immigration services alleges that [these are true] you're subject to removal for two
       reasons.  First that after your admission, you've been convicted of trafficking in
       controlled substance, that's an aggravated felony.  And secondly, that you've been
       convicted of a violation of California Law involving a controlled substance.  Do you
       understand those charges?

MM:    Yes.

IJ:    Have you hired an attorney?

MM:    I don't want an attorney.

IJ:    You want to give up your right to be represented by an attorney?

MM:    Yes.

IJ:    Are you a citizen or national of the United States?

MM:    Just a resident.

IJ:    Did you become a LPR on February 28, 1991 in San Francisco [*UI*] amnesty.

MM:    Yes.

IJ:    Are you a native and citzen of Mexico?

MM:   Yes.

IJ:   Were you born in Mexico?

MM:   Yes.

[*UI*]

IJ:   Are either one of your parents United States citizens?

MM:   No.

IJ:   Based upon this testimony I find that you are not a citizen or national of the United
      States.  Were you convicted January 13 of 2000 in the Kern County California Superior
      Court for possession of methamphetamine as charged in [*UI*] sentence of 4 years?

MM:   Yes.

IJ:   Sir, did you file an appeal on your conviction following [*UI*]

MM:   No.

IJ:   [*UI*] country [*UI*] removed to?

MM:   Mexico.

IJ:   Do you have any fear [*UI*]?

MM:   I don't understand.

IJ:   [*UI*]

MM:   No.

IJ:   Is there anything you want to tell the court today about your case?

MM:   No, thank you.

IJ:   Well sir, based on what you've told me you are subject to removal as charged by the
      immigration service.  With this conviction on your record and what you've explained to
      me, your testimony, you are not eligible to any other means of relief [*UI*] even voluntary
      departure from the United States.  At this time I order your deportation from the United
      States to Mexico, as charged by the immigration service.  Sir do you understand that?

4

MM:     Yes.

IJ:     You have the right to appeal my decision.  Do you wish to appeal my decision?

MM:     No. Sir.

[Service also waives].

IJ:     [*UI*] Legal Permanent Resident, do you understand?

MM:     Yes.

U.S. Department of Justice
Immigration and Naturalization Service

Notice to Appear

---

**In removal proceedings under section 240 of the Immigration and Nationality Act**

File No: A92 834 210
CDC: P74610
Rel Date: 2/25/2003

In the Matter of:

Respondent:     MENDEZ-Lagunas, Martin  AKA: MENDEZ, Martin
currently residing at: California Department of Corrections, Calipatria State Prison, 7018 Blair Road, Calipatria, California 92233 (760) 348-7000
                      (Number, street, city, state and ZIP code)                                                                                      (Area code and phone number)

☐ 1. You are an arriving alien.

☐ 2. You are an alien present in the United States who has not been admitted or paroled.

☒ 3. You have been admitted to the United States, but are deportable for the reasons stated below.

The Service alleges that you:

☒ 4. You are not a citizen or national of the United States.

☒ 5. You are a native of Mexico and a citizen of Mexico.

☒ 6. You were admitted to the United States at San Francisco, California on or about 2/28/1991 as an immigrant;

☒ 7. You were, on 1/13/2000, convicted in the Superior Court of California, County of Kern, for the offense of Possession of Methamphetamine, in violation of Section 11377(a) of the California Health and Safety Code;

☒ 8. For that offense, you were sentenced to confinement for a period of 4 years.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

237(a)(2)(A)(iii) of the Immigration and Nationality Act, as amended, in that, at any time after admission, you have been convicted of an aggravated felony as defined in Section 101(a)(43)(B) of the Act, an offense relating to the illicit trafficking in a controlled substance, as described in Section 102 of the Controlled Substance Act, including a drug trafficking crime as defined in section 924(c) of Title 18, United States Code.

237(a)(2)(B)(i) of the Immigration and Nationality Act, as amended, in that, at any time after admission, you have been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in Section 102 of the Controlled Substances Act [21 U.S.C. 802]), other than a single offense involving possession for one's own use of 30 grams or less of marijuana.

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution.

☐ Section 235(b)(1) order was vacated pursuant to: ☐ 8 CFR 208.30(f)(2) ☐ 8 CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

To be set

(Complete Address of Immigration court, Including room Number, if any)

on 02/20/03 at 0830 to show why you should not be removed from the United States based on the charge(s) set forth above.
(Date)              (Time)

Daniel Banda
Assistant Officer In Charge

(Signature and Title of Issuing Officer)
El Centro, California

(City and State)

Date:

FEB 1 0 2003    **See reverse for important information**    Form I-862 (Rev. 4-1-97)

43

ice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 3.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this Notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents which you desire to have considered in connection with your case. If any document is in a foreign language, you must bring the original and a certified English translation of the document. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all the allegations in the Notice to Appear and that you are inadmissible or deportable on the charges contained in the Notice of Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government.

You will be advised by the immigration judge before whom you appear, of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the INS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

### Request for Prompt Hearing

To expedite a determination in my case, I request an immediate hearing. I waive my right to have a 10-day period prior to appearing before an immigration judge.

_____
(Signature of Respondent)

Before:

_____  D-960
(Signature and title of INS Officer)

Date: _____ FEB 1 1 2003 _____

---

### Certificate of Service

This Notice to appear was served on the respondent by me on ___ FEB 1 1 2003 ___, in the following manner and in
                                                              (Date)
compliance with section 239(1)(1)(F) of the Act:
                                                              Aliens right index print

☒ in person  ☐ by certified mail, return receipt requested    ☐ by regular mail

☒ Attached is a list of organizations and attorneys which provide free legal services.

☒ The alien was provided oral notice in the ENGLISH / SPANISH language of the time
  and place of his or her hearing and of the consequences of failure to appear as provided in
  section 240(b)(7) of the Act.

_____
(Signature of Respondent if Personally Served)

_____  D-965
(Signature and Title of Officer)

44